```
UNITED STATES BANKRUPTCY COURT            NOT FOR PUBLICATION
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In re:                        :
                              :           Chapter 11
     BEST PAYPHONES, INC.,    :           Case No. 01-15472(SMB)
                              :
          Reorganized Debtor. :
------------------------------X
```

### MEMORANDUM OPINION AWARDING
### LEGAL FEES AND EXPENSES TO THE
### MANHATTAN TELECOMMUNICATIONS CORPORATION

**A P P E A R A N C E S:**

DUANE MORRIS LLP
Attorneys for Manhattan
   Telecommunications Corporation
380 Lexington Avenue
New York, New York 10168

    Fran M. Jacobs, Esq.
        Of Counsel


LARRY I. GLICK, ESQ.
1305 Franklin Avenue
Suite 180
Garden City, New York 11530


**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

      Manhattan Telecommunications Corporation ("MetTel") is a creditor of the reorganized debtor, Best Payphones, Inc. By virtue of an earlier order of the Court, MetTel is entitled to recover its legal fees and expenses incurred in connection with certain state court litigation described below. It seeks the aggregate amount of $53,308.40. The debtor filed objections, and contends that the fees and expenses should be reduced by $17,050.00. For the reasons

that follow, the objections are overruled.

**BACKGROUND**

At all relevant times, the debtor owned and operated pay telephones at various locations in the New York metropolitan area. By Agreement dated September 24, 1999 (the "Agreement"), MetTel agreed to provide local and regional exchange service to the debtor's phones.[1] The Agreement was be governed by New York law, and provided that "[i]n the event that any action is brought by either party to enforce any term or condition of this Agreement, the prevailing party shall be entitled to recover its actual legal cost, including attorney's fees, court costs and costs of collection . . . ." (Agreement, at § 6.1.)

In February 2001, MetTel sued the debtor in state court to recover unpaid charges under the Agreement. MetTel moved for summary judgment on an "account stated" theory, and the state court granted the motion from the bench. On May 9, 2001, the state court entered judgment in favor of MetTel, and awarded damages in the amount of $185,205.68, plus interest and costs, for a total

---

[1] A copy of the Agreement is attached as Exhibit A to the Affidavit [of Fran M. Jacobs, Esq.] in Support of Fee Application, sworn to September 30, 2004)(ECF Doc. # 338)("Jacobs Affidavit").

judgment of $189,320.39.[2]

**A.   Post-Judgment Litigation**

MetTel immediately took steps to enforce the judgment, serving executions and restraining notices in several New York counties. (See Declaration [of Donald J. Tobias, Esq.] in Response to Debtor's Objections to Damage Award, sworn to Mar. 25, 2005 ("Tobias Declaration"), at ¶¶ 3, 4)(ECF Doc. # 390.)  Three weeks after the entry of judgment, the debtor deposited $190,300.71 with the clerk of the state court to stay enforcement of the judgment. (Jacobs Affidavit, ¶ 8.)  The debtor also moved in state court to enjoin enforcement.

MetTel opposed the stay, arguing that the bond was insufficient to cover the judgment, interest and the sheriff's 5% poundage fee.  The state court granted the debtor's motion on the condition that it increase its deposit by $12,000.00, a condition with which the debtor complied.  (Id., at ¶ 9.)

The debtor filed a notice of appeal from the judgment to the Appellate Division.  It failed, however, to prosecute the appeal,

---

[2] On June 29, 2001, the state court entered a second judgment awarding attorneys' fees to MetTel in the amount of $20,140.00.  The fees and expenses sought in the current application relate to a different stage of the litigation.  They were not considered by the Special Referee, and they are not part of the second judgment.

and MetTel moved to dismiss it. The Appellate Division directed MetTel to perfect the appeal for the Court's December 2001 term, but the debtor filed its bankruptcy petition on October 23, 2001, before the deadline. (Id., at ¶ 10.)

MetTel then moved for relief from the stay in this Court so that the appeal could proceed. The Court granted the motion, and directed the debtor to perfect its appeal by March 18, 2002. (See id., at ¶ 11 & Ex. D.) The debtor failed to comply with the order, and instead, moved in the Appellate Division on March 18, 2002, for additional time. MetTel opposed the motion, and cross-moved to dismiss the appeal. The Appellate Division ultimately granted the debtor's motion, but directed the debtor to perfect the appeal for the September, 2002 term. (Id., at ¶ 12.)

When the debtor finally served its brief and the record on appeal, the record omitted crucial documents and included others that were illegible. In addition, the brief raised new arguments. (Id., at ¶ 13.) MetTel had to file a supplemental appendix, and research and respond to the new arguments. (Id.) The Appellate Division unanimously affirmed the judgment on November 11, 2002. (Id., at ¶ 15 & Ex. E.)

The debtor moved for reargument, again raising new arguments.

The debtor also made a separate motion for leave to appeal. (Id., at ¶¶ 16-17.) MetTel opposed both motions. The Appellate Division initially rejected the motion to reargue based on procedural deficiencies, (id., at ¶ 17), and eventually denied both motions on the merits. (Id., at ¶ 18.)

Following the Appellate Division's decision, the debtor moved for leave to appeal to the Court of Appeals. The Court of Appeals denied the motion on July 2003, (id.), ending the state court phase of the litigation between the parties. In the process, MetTel had to oppose five separate post-judgment motions by the debtor, and make its own motion to compel the debtor to prosecute its appeal. (Id.)

B.  **Bankruptcy Court Litigation**

The litigation eventually shifted to this Court. Although this has been an extremely litigious case that has resulted in several reported and unreported decisions, only one aspect of the litigation is important for now. In July 2002, the debtor objected to MetTel's proof of claim. (Id., at ¶ 19.) MetTel moved for partial summary judgment. In a decision dated December 11, 2002, the Court, inter alia, awarded partial summary judgment to MetTel on the issue of the debtor's liability for attorney's fees and legal expenses incurred by MetTel in connection with the state

5

court litigation.[3]  The amount of the fees and expenses would be decided in a later proceeding.  See In re Best Payphones, Inc., Case No. 01-15472, 2002 WL 31767796, at *10 (Bankr. S.D.N.Y. Dec. 11, 2002.)

**C.    The Current Application**

MetTel now seeks fees and expenses in the sum of $53,308.40. Duane Morris LLP, MetTel's principal counsel, billed $39,458.00 during the approximate two year period spanning June 2001 through May 2003, and also incurred $4,701.48 in expenses.[4]  (Id., at ¶ 44 & Ex. U; see id., ¶¶ 21-38 & Exs. F-T.)  The supporting affidavit of Fran M. Jacobs, Esq. attested that the firm billed for services at its usual and customary rates and charges, the bills were prepared from contemporaneous time records, and the services were reasonable and necessary in light of the extensive post-judgment motion practice and the appeals.  (See id., ¶ 20.)  Finally, MetTel actually paid Duane Morris the aggregate sum of $44,159.48 in fees and expenses sought in the current application.  (Jacobs Reply

---

[3]   As noted, this did not include the fees subsumed within the earlier state court judgment.

[4]   In its reply papers, MetTel asked for an additional $7,573.50 to cover the fees incurred in responding to the debtor's objections to the current application.  (Reply Affidavit [of Fran M. Jacobs, Esq.] in Response to Debtor's Objections to Damage Award, sworn to Mar. 25, 2005 ("Jacobs Reply Affidavit"), at ¶ 20.)   This request, raise for the first time on appeal, was procedurally improper.  Furthermore, the Court's earlier award of partial summary judgment did not encompass these fees, and no determination has been made that the debtor is liable for them.  Accordingly, the supplemental request will not be considered on the current motion.

Affidavit, at ¶ 2.)

MetTel also seeks to recover $8,865.00 in fees and $283.92 in expenses paid to Donald J. Tobias, Esq. (Jacobs Affidavit, ¶ 7.) Tobias is an attorney who specializes in collection work, and provided all of his services in May and June 2001.

**D.   The Debtor's Opposition**

The debtor asserts that the Court should reduce the award by $17,050.00, and makes four arguments. First, Tobias spent substantial time preparing a motion to appoint a receiver and researching the adequacy of the appeal bond.[5] (Debtor's Objection to Application of Manhattan Telecommunications Corporation for Attorney's Fees and Expenses, dated Feb. 22, 2005 ("Debtor's Objection"), at ¶ 7.) These services did not benefit MetTel, and those that did (the filing of executions and the issuance of restraining notices in three counties), were worth no more than $3,000.00. (Id., at ¶ 8.) Second, Fran Jacobs's hourly billing rate should be reduced by $40.00 to the amount allowed by the Special Referee during the earlier fee litigation. (Id., at ¶¶ 9, 16-17.) Third, Francine Nisim, Esq., an associate, spent an

---

[5] The debtor also pointed out that Tobias was retained six days before the service of the notice of entry of the judgment. (Debtor's Opposition, at ¶ 6.) It did not explain why this was significant since Tobias was retained after the state court awarded summary judgment from the bench. Obviously, MetTel began thinking about the problems with collection immediately.

7

excessive amount of her time duplicating what Jacobs did, (Id., at ¶¶ 11-13), and also spent an unreasonable amount of time (three hours) preparing for and attending a motion for an adjournment. (Id., at ¶ 14.) Fourth, the Court should not award the fees attributable to the managing clerk's office. The Special Referee disallowed similar fees in their entirety. (Id., at ¶ 15.)

**DISCUSSION**

**A.    Introduction**

The criteria for measuring reasonable attorneys fees[6] under New York law is summarized in Disciplinary Rule 2-106(B), N.Y. COMP. CODES R. & REGS., tit. 22, § 1200.11(B)(McKinney 2003).[7] The eight

---

[6] The Agreement allows the prevailing party – here, MetTel – to recover its "actual legal cost, including attorney's fees, court costs and costs of collection." (Agreement, § 6.1.) MetTel apparently concedes that its fees and expenses must also be reasonable.

[7] DR 2-106(B) states:

A fee is excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) The time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly.

(2) The likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer.

(3) The fee customarily charged in the locality for similar legal services.

(4) The amount involved and the results obtained.

factor test set out in the Disciplinary Rule is consistent with the twelve factor approach adopted by the court in Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 718-19 (5th Cir. 1974); accord Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 562 n. 7 (1986)(the Johnson factors are taken from DR 2-106); Hensley v. Eckerhart, 461 U.S. 424, 430 n.3 (1983)(the Johnson factors "derive directly from" DR 2-106). The same general principles also apply to compensation awards under § 330 of the Bankruptcy Code. In re Manoa Fin. Co., 853 F.2d 687, 690-91 (9th Cir. 1988); In re Cena's Fine Furniture, Inc., 109 B.R. 575, 580 & n.12 (E.D.N.Y. 1990); see In re Apex Oil Co., 960 F.2d 728, 731 (8th Cir. 1992).

To facilitate the consideration of the relevant factors, courts have adopted the "lodestar" approach. This involves multiplying the reasonable attorney billing rate by the reasonable number of hours expended. See Savoie v. Merchants Bank, 166 F.3d 456, 460 (2d Cir. 1999); In re Cena's Fine Furniture, Inc., 109

---

(5) The time limitations imposed by the client or by circumstances.

(6) The nature and length of the professional relationship with the client.

(7) The experience, reputation and ability of the lawyer or lawyers performing the services.

(8) Whether the fee is fixed or contingent.

B.R. at 581. The "lodestar" includes "most, if not all" of the factors relevant to determining a reasonable fee. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 566; see Blum v. Stenson, 465 U.S. 886, 898-900 (1984)(the "lodestar" incorporates most of the Johnson factors). Adjustments to the "lodestar" amount are proper only in rare and exceptional cases supported by specific evidence and detailed findings. Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. at 565; see Blum v. Stenson, 465 U.S. at 898-901.

The fee applicant has the burden of proving the reasonableness of the billing rates and the number of hours expended, and must submit contemporaneous time records that support the hours worked and rates claimed.[8] Toys "R" Us, Inc. v. Abir, No. 97 Civ. 8673, 1999 WL 61817, at *1 (S.D.N.Y. Feb. 10, 1999); see New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1147-48 (2d Cir. 1983); Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302 (S.D.N.Y. 1999). The reasonable hourly rates are the prevailing rates for similar services by lawyers of reasonably comparable skill, experience and reputation in the relevant market--here, New York City. Id.; Sucre v. MIC Leasing Corp. (In re Sucre), 226 B.R. 340, 352 (Bankr. S.D.N.Y. 1998); see Blum v.

---

[8] The actual time slips need not be produced; "an affidavit attaching a computerized printout of the pertinent contemporaneous time records is acceptable." Tri-Star Pictures, Inc. v. Unger, 42 F. Supp. 2d 296, 302 (S.D.N.Y. 1999).

Stenson, 465 U.S. at 895 & n.11.  If the applicant carries its burden, the "lodestar" amount is presumed to be the reasonable fee. Blum v. Stenson, 465 U.S. at 897.

**B.   MetTel's Application**

MetTel has proven the reasonableness of the fee and expenses sought.  Its submissions demonstrate that its attorneys (and non-attorneys) actually performed the services identified in the time records, that the work was reasonable and necessary and that it was billed at the usual rates.

**1.   Duane Morris**

**a.   Fran M. Jacobs**

The debtor objected to Ms. Jacobs's hourly billing rate.  The debtor does not contend that her rate is above market or unreasonable, considering that she has practiced as an attorney for over twenty years, and is a partner in a substantial firm. Instead, the objection is based on the billing rate allowed by the Special Referee.  The Special Referee took no evidence regarding billing rates.  Instead, he reasoned that "[c]alling upon my own experiences in hearing very many cases of this nature, I believe that a proper hourly rate for the entire period for the lead counsel is $350.00."  (Debtor's Objection, Ex. A, at 3.)

11

Initially, I should reiterate that I am not being asked to review the Special Referee's recommendations, but rather, later services relating to the same state court case. The Special Referee's determination, in this regard, is neither binding nor persuasive. He took no evidence on the appropriate fee, and did not identify the facts that supported his conclusion. Furthermore, the debtor declined my offer of an evidentiary hearing, and did not submit any evidence regarding a different rate for Ms. Jacobs. Duane Morris billed MetTel at the firm's usual and customary rates, and there is no basis to deviate from the "lodestar" amount.

### b. Francine Nisim

The debtor challenged Ms. Nisim's time charges on two grounds; she duplicated what Ms. Jacobs did, and spent too much time dealing with an adjournment. The debtor failed, however, to rebut MetTel's proof, or show that Nisim performed unreasonable or unnecessary services.

The duplication argument is based on the fact that Nisim and Jacobs worked together on the same sets of papers. Yet it is not unusual for more than one attorney to participate in the drafting of a brief, see Bleecker Charles Co. v. 350 Bleecker St. Apt. Corp., 212 F. Supp. 2d 226, 230 n.5 (S.D.N.Y. 2002), particularly where the younger attorney does the research and initial drafting

12

and the senior attorney reviews and edits her work. See Ursa Minor Ltd. v. Aon Fin. Prods., No. 00 Civ. 2474, 2001 WL 1842042, at *6 (S.D.N.Y. May 30, 2001); Harb v. Gallagher, 131 F.R.D. 381, 387 (S.D.N.Y. 1990). In one instance cited by the debtor, Nisim spent seven hours drafting an affidavit in opposition to the debtor's motion for leave to appeal to the Court of Appeals. Jacobs then spent four hours reviewing and editing it. (Jacobs Reply Affidavit, at ¶ 8.) As noted, this is an appropriate division of labor.

In the other example identified by the debtor, Nisim billed $3,220.00 researching and drafting the response to a specific issue first raised on appeal by the debtor concerning the primary jurisdiction of the New York Public Service Commission. (Id., at ¶¶ 5-6.) Jacobs spent three-tenths of one hour reviewing Nisim's work, and the rest of her time dealing with the balance of the debtor's brief. (Id., at ¶ 6.) As MetTel correctly observed, much of Nisim's fees could have been avoided entirely if the debtor had not belatedly raised a meritless primary jurisdiction argument, forcing MetTel to respond.

Finally, Nisim did not spend an excessive amount of time grappling with an adjournment. After the debtor filed a brief and a defective record on appeal, MetTel submitted a supplemental

13

appendix to cure the defects.  (<u>Id.</u>, at ¶ 10 & Ex. B.)  Best then moved, on an emergency basis, to strike the supplemental appendix or to serve a new brief.  (<u>Id.</u>, at ¶ 11.)  Nisim spent three hours addressing the debtor's emergency motion, and appearing in the Appellate Division to respond to it.  (<u>Id.</u>, at ¶ 12.)

### c.  The Managing Clerk

Finally, the debtor objected to the award of $1,400.00 for the services performed by Duane Morris' managing clerk's office.  Once again, the sole ground for the objection was the Special Referee's refusal to award the managing clerk costs.  The Special Referee reasoned that "I never in all my years of experience in handling cases of this nature ever heard a claim for services by a managing clerk."  (<u>Debtor's Objection</u>, Ex. A, at 3-4.)

With respect, I reach a different conclusion.  Here, the managing clerk's office checked the court file for the status of pending matters, and retrieved copies and filed papers.  (<u>Jacobs Reply Affidavit</u>, at ¶ 17.)  Paralegals and even lawyers do the same, and there is no reason to deny compensation for a managing clerk's activities that are performed for a specific client and are reasonable and necessary, as these services were.  Finally, Duane Morris routinely bills its clients directly for the work performed by the managing clerk, and this occasion was no exception.  (<u>Id.</u>,

14

at ¶ 19.)

In summary, the objections to Duane Morris's fees and expenses are overruled. If it appears to the debtor that the firm spent too much time performing legal services, it is only because of the post-judgment litigation, largely meritless, that the debtor initiated. Perhaps the debtor's litigation strategy should have factored in the fee-shifting provisions of the Agreement when it made so many motions. Its failure to do so foisted additional work on Duane Morris, and it is obligated to pay for that work.

**2.  Tobias's Fees**

Tobias provided collection services and advice during the approximate three week gap between the docketing of the money judgment and the posting of the appeal bond. The debtor did not contest his $225.00 per hour billing rate. Instead, the debtor argued that Tobias performed unreasonable and unnecessary services in two instances. First, Tobias prepared a motion to appoint a receiver, but did not file it. Second, Tobias worked with Duane Morris to oppose the debtor's motion, brought on by order to show cause, to stay further collection <u>after</u> the debtor had posted the undertaking.   (<u>Tobias Declaration</u>, at ¶ 8.)

The Court concludes that the receiver-related work was both

15

reasonable and necessary. Although Tobias had served property executions, (id., at ¶ 3), he was worried that they would not be effective. The debtor's assets consisted of 900 payphones scattered throughout the City, and the coins in the phones did not pass through the debtor's bank accounts. (Id., at ¶¶ 4-5.) Consequently, he prepared a motion to appoint MetTel to act as receiver of the debtor's business. (Id., at ¶ 6 & Ex. A.) The application was not filed because the debtor posted the undertaking on or about May 30, 2001. (Id., at ¶ 6.)

The reasonableness and necessity of the attorneys' services must be viewed in foresight, not hindsight. The test is "what services a reasonable lawyer or legal firm would have performed in the same circumstances." In re Ames Dep't Stores, Inc., 76 F.3d 66, 72 (2d Cir. 1996)(discussing fee awards under the Bankruptcy Code). Tobias identified unique problems with enforcing the judgment in light of the nature of the debtor's assets and its business, and drafted the receiver motion with those problems in mind. The debtor never told MetTel that it intended to file a bond, or provided MetTel with a reason to believe that it would pay the judgment or that it would be collectible without the need to take the steps contemplated by Tobias.

Similarly, Tobias's work researching the adequacy of the

16

debtor's undertaking was reasonable and necessary because the debtor had posted an inadequate appeal bond.  In fact, MetTel's opposition led to an increase of $12,000.00 in the bond.

Accordingly, the debtor's objections are overruled, and MetTel is awarded $53,308.40 in fees and expenses as requested in its application.  Settle order on notice.

Dated:    New York, New York
          April 21, 2005

                                        /s/ *Stuart M. Bernstein*
                                     STUART M. BERNSTEIN
                              Chief United States Bankruptcy Judge