UNITED STATES BANKRUPTCY COURT          **NOT FOR PUBLICATION**
SOUTHERN DISTRICT OF NEW YORK
------------------------------X
In re:                        :
                              :         Chapter 11
      BEST PAYPHONES, INC.,   :         Case No. 01-15472(SMB)
                              :
                  Debtor.     :
------------------------------X

**OPINION AND ORDER REGARDING**
**MOTION FOR DISCRETIONARY ABSTENTION**

**A P P E A R A N C E S:**

CHARLES H. RYANS, ESQ.
Attorney for Debtor
1674 Broadway – 7th Floor
New York, New York 10019


MICHAEL A. CARDOZO
Corporation Counsel for the
   City of New York
Attorney for the New York City Department
   of Information Technology &
   Telecommunications the New York City
   Department of Transportation
100 Church Street
New York, New York 10007-2601

      Gabriela P. Cacuci
      Assistant Corporation Counsel
         Of Counsel


**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

      The  New  York  City  Department  of  Information  Technology  &

Telecommunications  ("DoITT")  and  the  New  York  City  Department  of

Transportation  ("DOT")  filed  claims  in  this  confirmed  chapter  11

case  for  fees  and/or  fines  arising  from  the  debtor's  operation  of

public  payphones  ("PPTs").   The  debtor  objected  to  the  claims,

DoITT withdrew the claim for fees, and with one exception, DoITT and DOT have moved for discretionary abstention on the remaining objection to the fines. The debtor opposes abstention. For the reasons that follow, the motion is granted.

## BACKGROUND

### A. The Denial of the Franchise

The facts are set forth in greater detail in In re Best Payphones, Inc., 279 B.R. 92 (Bankr. S.D.N.Y. 2002). I assume familiarity with that opinion, and highlight only the facts that concern the current matter. At all relevant times, the debtor was engaged in the business of operating PPTs in New York City (the "City"). Over the years, the City, through DoITT, administered various regulatory schemes to control such services.

On or about March 2, 1996, the City adopted a new regulatory scheme that established a franchise system. During the transition period, existing PPT operators, including the debtor, were placed on an interim registry, and allowed to continue to operate. The PPT operator remained on the interim registry until, inter alia, the Commissioner of DoITT decided not recommend the award of a franchise to the PPT operator or the New York City Franchise & Concession Review Committee (the "Franchise Committee") decided not to approve a proposed franchise agreement. In either case, the PPT

2

operator was entitled to appropriate notification of the adverse decision.  See N.Y. R. & REGS. tit. 67, § 6-23 (2004); accord N.Y. City Local Law 68/1995 § 6(a)(limiting notification period to 30 days).

By resolution dated August 11, 1999, the Franchise Committee approved the grant of a franchise to the debtor, as well as to other PPT operators.  The approval required the debtor to execute and deliver the franchise agreement as a condition to the award, but the debtor failed to return the completed materials.  On January 13, 2000, Assistant Corporation Counsel Bruce Regal wrote to the debtor (the "Regal Letter"), stating that the Franchise Committee's approval of the franchise had been conditioned on the execution and delivery of the franchise agreement and other required closing documents, and the debtor had failed to meet the condition.  As a result, the Franchise Committee "can therefore be deemed to have determined not to approve a franchise for [the debtor]."

The Regal Letter granted the debtor a final, sixty day period to submit the franchise documentation.  If it did not, "[the debtor's] opportunity to become a franchise holder during the current phase of franchise grants will end."  The January 13 Letter reiterated this warning in its conclusion:

3

> If [the Debtor] fails within sixty days to (1) enter into an agreement to sell its public pay telephones as described above, or (2) to remove all its public pay telephones from City property, or (3) submit executed copies of the Franchise Agreement and all associated closing documents (complete, accurate and in acceptable form) as described above, then any and all of [the Debtor's] phones located on City property shall be subject to removal by the City, pursuant to Section 6-26(c) of Title 67 of the Rules, and [the Debtor] shall be considered for all purposes a non-holder of a City franchise.

The debtor did not comply with any of the conditions in the Regal Letter. As a result, DoITT removed 23 of the debtor's public payphones from City property between May 8 and May 10, 2000, and issued 23 Notices of Violation ("NOV"). Post-petition, the City issued an additional 36 NOVs for operating PPTs without a permit.[1] Each NOV carried a $1,000 fine, and all were based on the same theory; the debtor lost its right to operate PPTs because it failed to comply with the Regal Letter and return the signed franchise agreement.

**B.  The DoITT and DOT Claims and the Debtor's Objections**

The debtor filed this chapter 11 case on October 23, 2001.[2] DoITT filed a claim, dated February 1, 2002, for pre-petition fines ($23,000) and fees ($37,048.15). (<u>Declaration of Michael Chaite</u>

---

[1]    The debtor alleges that DoITT also reissued the first 23 NOVs post-petition.

[2]    It confirmed a 100% plan in late 2002, and subsequently sold all of its assets to a third-party.

4

[etc.], dated Apr. 1, 2005, Ex. D)(ECF. Doc. # 395.)  DoITT also filed an administrative claim, dated November 13, 2002, covering post-petition fines ($36,000) and fees ($69,789.35).  (Id., Ex I.) Lastly, DOT filed an administrative claim, dated November 13, 2002, for fines totaling $8,000.  The DOT fines corresponded to eight NOVs issued against eight PPTs allegedly installed without the required permit.  DoITT subsequently withdrew the portions of its pre-petition and post-petition claims seeking fees, leaving only pre-petition and post-petition claims for fines.  (Opinion and Order Regarding DoITT Claim for Interim Registry Fees, dated Oct. 21, 2005)(ECF Doc. # 445.)

      The debtor filed a series of objections to the DoITT claims, culminating in the Amended Objection to Proof of Claim of [DoITT], dated July 17, 2003 ("Amended Objection")(ECF Doc. # 273.)  The Amended Objection argued that the fines were unenforceable on several grounds.  At its core, the Amended Objection asserted that the debtor remained on the interim registry despite its refusal to execute the franchise agreement, and could not be fined for operating without a permit.  The debtor raised a host of regulatory, statutory and Constitutional arguments, relying heavily on the Telecommunications Act of 1996.  In addition, the debtor maintained that the NOVs were not attached to the DoITT claims, (Amended Objection, at ¶ 47), the NOVs are too vague and imprecise

5

to apprise the debtor of the charges and allow it to prepare a
defense, (id., ¶¶ 73-74, 84), the Regal Letter did not provide
sufficient notice of the termination of the debtor's right to
maintain its listing on the interim registry, (id., at ¶¶ 77-79),
and DoITT selectively enforced its rules and regulations with the
intent to discriminate against the debtor and retaliate against the
debtor for challenging DoITT.  (Id., at ¶¶ 81-82, 86-87, 90.)

The debtor also filed an <u>Objection to Proof of Administrative
Claim Filed by [DOT]</u>, dated Dec. 3, 2002 (ECF Doc. # 202.)  The
debtor asserted the same objections raised against the DoITT claims
for fines.  (Id., at ¶ 4.)  In addition, the debtor contended that
it had obtained permits to move the PPTs at issue.  (Id., at ¶ 5.)
Finally, the debtor insisted that virtually every other PPT
operator had moved phones without being fined, and the imposition
of fines constituted selective enforcement and a violation of the
Telecommunications Act of 1996 by imposing charges in a
discriminatory manner.  (Id., at ¶ 7.)

## C.   The First Abstention Ruling

On or about December 27, 2002, DoITT and DOT moved for
discretionary abstention, 28 U.S.C. § 1334(c)(1), with respect to
the issues raised by the objections.  At the time, proceedings
between the parties were pending in the United States District

6

Courts in Manhattan and Brooklyn, the New York State Appellate Division, Second Department, the New York Civil Court and the New York City Environmental Control Board ("ECB"), as well as this Court.

The Court conducted a hearing on July 24, 2003, and granted the motion in part. (See Order Granting Abstention [etc.], dated Aug. 18, 2003)(ECF Doc. # 280.) The Court abstained from hearing the violations asserted by DoITT and DOT pending before the ECB "solely to the extent that the Debtor's grounds for objecting to the Violations are based on the failure of DoITT and/or DOT to comply with the specific rules and regulations relating to the issuance by DoITT and DOT of the Violations." In other words, the ECB would decide the "regulatory aspects" of the disputes, i.e., whether the agencies followed their own procedures in assessing the fines.[3] The remaining claims, including violations of the Telecommunications Act of 1996, preemption by federal and state law, due process, First Amendment and equal protection violations, selective enforcement, late filed claims and improperly documented claims, would be heard and determined by a court having jurisdiction over such claims.

---

[3]    The ECB rendered its decision on or about October 25, 2005, sustaining 51 NOVs and dismissing nine others based on a failure of proof. A copy of the ECB Decision and Order is attached to the letter dated Nov. 18, 2005, from Gabriela P. Cacuci, Assistant Corporation Counsel, to the Court. (ECF Doc. # 461.)

7

**D.    The Litigation in Other Courts**

The abstention motion brought to light the host of lawsuits commenced by the debtor against DoITT, the City and numerous City officials.  Concerned about the proliferation of litigation, and the apparent failure by the debtor to prosecute these lawsuits, the Court issued an order sua sponte, directing the debtor to show cause why it should not be compelled to dismiss, consolidate or prosecute these cases.  (See Order to Show Cause Why the Court Should Not Direct the Debtors to Dismiss, Consolidate or Prosecute Certain Proceedings, dated Jan. 23, 2003)(ECF Doc. # 243.)  The order identified three cases pending in the Eastern District of New York, and two cases, an Article 78 proceeding and a Civil Court action, pending in state court.  In addition, an adversary proceeding and a claim objection were pending in this Court.

During the ensuing 18 months, the Court conducted conferences and set deadlines for the prosecution of the non-bankruptcy court litigation.  Eventually, all of the Eastern District litigation was consolidated before Judge Gleeson.  The New York Court of Appeals eventually concluded that the debtor's Article 78 proceeding, which challenged the Regal Letter, was time-barred.  In re Best Payphones, Inc., 832 N.E.2d 38 (N.Y. 2005).  The Civil Court action was apparently discontinued.  Finally, this Court granted DoITT's motion for summary judgment dismissing the debtor's adversary

8

proceeding.[4]   (See Transcript of Hearing, held June 21, 2005 ("Tr."), at 13)(ECF Doc. # 448.)   The order to show cause had served its purpose, and the Court vacated it nearly two years after it was issued.   (See Order Vacating This Court's Order to Show Cause Dated January 23, 2003, dated Oct.7, 2004)(ECF Doc. # 336.)

In the Eastern District, Magistrate Judge Matsumoto supervised pre-trial matters in the various litigations commenced against DoITT, the City, and various City officials by the debtor and its affiliate, New Phone Company ("New Phone").   The debtor was a plaintiff in four lawsuits,[5] and New Phone was a plaintiff in at least two others.   All of the litigation shared a common theme – the defendants had enforced the City's regulations in an unlawful and discriminatory manner, either against New Phone and Best Payphones or in favor of Verizon.   New Phone Co. v. City of New York, No. 00 CV 2007, 2005 WL 1902119, at *1 (E.D.N.Y. Aug. 5, 2005)("New Phone".)

On October 14, 2004, Magistrate Judge Matsumoto conducted a

---

[4]     The amended complaint in the adversary consisted of three claims for relief.  The District Court had withdrawn the reference with respect to the third claim, and Judge Hellerstein subsequently dismissed the claim as moot.  The Court of Appeals affirmed.  See Best Payphones, Inc. v. City of New York, 128 F.App'x 176 (2d Cir. 2005).  This Court's dismissal pertained to the two other claims.

[5]     The debtor's lawsuits bear the Civil Nos. 01-CV-3934, 01-CV-8506, 03-CV-00192 and 04-CV-3541.

conference with the parties, the results of which are reflected in a Minute Entry, filed Oct. 16, 2004. (See Best Payphones, Inc. v. City of New York, No. 03-CV-00192 (ECF Doc. # 25.) The debtor had filed an amended complaint in Case no. 03-CV-00192 in August 2004, and one of the issues addressed at the conference was whether the debtor could file an amended consolidated complaint without leave of the court. Magistrate Judge Matsumoto determined that the debtor would have to seek leave of the court, and directed it to file the motion by December 27, 2004.

The debtor failed to obey the direction. Instead, by letter dated April 4, 2005, the debtor requested a pre-motion conference with a view toward seeking leave to amend and supplement its complaints.[6] It sought to add four new contentions, two of which related to the debtor: (1) DoITT had raised the fee to apply for a permit to install a PPT, but exempted Verizon and (2) DoITT changed an advertising rule, and the change unfairly benefitted Verizon. New Phone, 2005 WL 1902119, at *4 (Report & Recommendation of Matsumoto, M.J.). In addition, the debtor and New Phone filed yet another complaint that incorporated three of the four new claims that formed the basis of the motion to amend the six other complaints. Id. at *5. Magistrate Judge Matsumoto recommended

---

[6]     According to the docket in Case no. 03-CV-00192, the debtor filed a motion to amend its four complaints on or about May 11, 2005. (See ECF Doc. # 55.) The docket does not reflect a disposition of that motion.

that the motions for leave to amend be denied and that the
plaintiffs be enjoined from filing further duplicative actions
without leave of that court. Id. at *8.

The plaintiffs objected to the report and recommendation, but
Judge Gleeson overruled the objection and dismissed the complaint
filed on April 4, 2005, as duplicative of the earlier complaints.
Id. at *1. The Court left open the possibility that the plaintiffs
could file new complaints raising matters that arose after the
earlier complaints. Id. at *2.

In addition, Judge Gleeson adopted Magistrate Judge
Matsumoto's recommendation to enjoin future filings absent leave of
the court, a measure usually reserved for vexatious pro se
litigants. See, e.g., Iwachiw v. New York State Department of
Motor Vehicles, 396 F.3d 525 (2d Cir. 2005); Sassower v. Sansverie,
885 F.2d 9 (2d Cir. 1989); Safir v. United States Lines, Inc., 792
F.2d 19 (2d Cir. 1986); Martin-Trigona v. Lavien, 737 F.2d 1254 (2d
Cir. 1984). According to Judge Gleeson:

> Plaintiff[7] has filed eight overlapping complaints on
> the same subject matter, unnecessarily burdening this
> Court's ability to manage its docket and to adjudicate
> the asserted claims. For the reasons set forth in the
> R[eport] & R[ecommendation], the plaintiff is hereby
> enjoined from filing, without leave of the court, any new

---

[7]    "Plaintiff" referred to both New Phone and the debtor. New Phone, 2005 WL
1902119, at *1 n.2.

action arising from or related to the enactment and
enforcement of the City's regulatory system with respect
to public pay telephones in New York City and defendants'
alleged conspiracy to discriminate against plaintiff and
other public pay telephone operators.

New Phone, 2005 WL 1902119, at *4.


**E.    The Further Litigation In This Court**

While matters proceeded in Brooklyn, the City renewed its

efforts in this Court to consolidate the disposition of the

debtor's overlapping claims.   In late December 2004, DoITT and DOT

filed their Response of [DoITT] and the [DOT] to the Debtor's

Objections to DoITT's and DOT's Proofs of Claim, dated Dec. 22,

2004 (the "City's Response")(ECF Doc. # 355.)  The City's Response

renewed the request for abstention, arguing that all of the

debtor's remaining claims (other than the sufficiency of the proofs

of claim) were presently pending in other courts.


The debtor responded, identifying four issues that were not

pending in any other court:

> Issues related to the DoITT NOV's that are not being
> considered in any other proceeding, include but are not
> limited to: 1. how DoITT filled the "Detail of Violation"
> section of the NOV itself (the NOV is ambiguous and
> vague) 2. how the hearings at the [ECB] are conducted
> (the ECB allowed DoITT to change its theory for the same
> NOV once DoITT realized its prior theory would be
> defeated) 3. the failure of DoITT to apply a policy to
> Best that afforded other similarly situated [PPT]
> providers an opportunity to avoid the NOVs and 4. DoITT's
> lack of enforcement on Verizon for identical alleged
> infractions.

12

_Reply to the Response of [DoITT] and the [DOT] to the Debtor's_
_Objections to DoITT's and DOT's Proofs of Claim_, dated Mar. 30,
2005, at 2 ("_Debtor's Reply_") (ECF Doc. # 395)(footnote omitted.)[8]

The first two points were based on due process.  The debtor
contended that the NOVs failed to specify the facts of the
violations or allow the debtor to prepare a defense.  (_Id._, at 6.)
In addition, the ECB allowed DoITT the opportunity to change its
rationale for issuing the NOVs.  (_Id._)

The other two items involved new allegations of selective
enforcement.  First, the debtor contended that DoITT had failed to
follow an unwritten policy under which it issued a written warning
(a "Five-Day Letter") before imposing a fine.  The Five-Day Letter
granted the PPT operator five days to contest the allegation.  An
NOV would not issue until a final determination was made.  (_Id._, at

---

[8]      Although the _Debtor's Reply_ used the phrase "include but are not limited to,"
these were the only issues that the debtor identified.  It is not the Court's job to search through
the substantial amount of paper in this case to find other issues the debtor did not identify.  In
addition, the debtor's counsel agreed at the oral argument that these were the only issues.  After
the Court summarized its view of the issues raised in the _Debtor's Reply_, the following colloquy
took place:

> THE COURT: . . . That's my understanding of what you contend are not the
> subject of litigations elsewhere.  Is there anything else I'm missing here?

> MR. GLICK (the debtor's attorney): No, I believe that capsulizes it, Judge.

(Tr. at 16) (emphasis added.)

13

7-8.)  According to the debtor, DoITT issued the pre-petition NOVs before writing a Five-Day Letter, and issued the post-petition NOVs before making a final determination.  (<u>Id.</u>, at 7-8.)  Second, DoITT allowed Verizon to operate all of its PPTs without a permit.  (<u>Id.</u>)

The Court held a hearing on June 21, 2005, to consider whether it should abstain from deciding the four issues highlighted in the <u>Debtor's Reply</u>.  At oral argument, the debtor's counsel admitted that the first two issues, the vagueness of the notice provided by the NOVs and DoITT's change in theory, were raised before the ECB administrative law judge, and rejected.  (Tr. at 21-22.)  Accordingly, the Court ruled from the bench that it would abstain from deciding those same issues.  (<u>See</u> <u>id.</u> at 57.)

The Court did not decide the other two issues at that time.  The attorney for DoITT and DOT argued that the decision by the New York Court of Appeals affirming the dismissal of the debtor's Article 78 proceeding foreclosed any further challenge to the fines reflected in the NOVs.  I responded – repeatedly –  that the City had moved for abstention, and I would not hear a challenge on the merits.  I adjourned the abstention motion, and offered the City the chance to move for summary judgment based on the Court of Appeals decision.  (Tr. at 55-57).  The City decided not to move for summary judgment, and instead, chose to press the balance of

14

the abstention motion relating to the remaining issues.[9]  (<u>Letter
from Gabriela P. Cacuci, Assistant Corporation Counsel to the
Court</u>, dated June 28, 2005)(ECF Doc. # 465.)


## DISCUSSION

Pursuant to 28 U.S.C. § 1334(c)(1), a court may abstain from
hearing a proceeding within its jurisdiction "in the interest of
justice, or in the interest of comity with State courts or respect
for State law."   Permissive or discretionary abstention was
intended to codify non-bankruptcy judicial abstention doctrines.
<u>Coker v. Pan American World Airways (In re Pan American Corp.</u>), 950
F.2d 839, 845 (2d Cir. 1991).  The factors that generally govern
discretionary abstention include the following:

> (1) the effect or lack thereof on the efficient
> administration of the estate if a Court recommends
> abstention, (2) the extent to which state law issues
> predominate over bankruptcy issues, (3) the difficulty or
> unsettled nature of the applicable state law, (4) the
> presence of a related proceeding commenced in state court
> or other nonbankruptcy court, (5) the jurisdictional
> basis, if any, other than 28 U.S.C.
> § 1334, (6) the degree of relatedness or remoteness of
> the proceeding to the main bankruptcy case, (7) the
> substance rather than form of an asserted 'core'
> proceeding, (8) the feasibility of severing state law
> claims from core bankruptcy matters to allow judgments to
> be entered in state court with enforcement left to the
> bankruptcy court, (9) the burden of [the court's] docket,

---

[9]      Despite its decision, DoITT and DOT have continued to argue the preclusive
effect of the decision of the New York State Court of Appeals.  (<u>See</u> Letter from Gabriela P.
Cacuci, Assistant Corporation Counsel to the Court, dated October 26, 2005) (ECF Doc. # 447.)
The Court will not consider the argument.

(10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of nondebtor parties.

Peterson v. 610 W. 142 Owners Corp. (In re 610 W. 142 Owners Corp.), 94 B 44488, 1999 WL 294995, *3 (May 11, 1999 S.D.N.Y.)(quoting In re Craft Architectural Metals Corp., 115 B.R. 423, 432 (E.D.N.Y. 1989) ); accord Rahl v. Bande, 316 B.R. 127, 135 (S.D.N.Y. 2004); Masterwear Corp. v. Rubin Baum Levin Constant & Friedman (In re Masterwear Corp.), 241 B.R. 511, 520 (Bankr. S.D.N.Y. 1999).


This case is somewhat unusual because the movants have asked me to abstain in favor of another federal court, not a state court. Several of the abstention factors focus on the relationship between the state and federal courts, i.e., comity, and do not apply. Furthermore, the debtor's chapter 11 case was confirmed three years ago. While the dispute before me concerns the allowance of three proofs of claim, the resolution of the dispute will have little impact on the debtor and no impact on its creditors or, for that matter, on an estate that ceased to exist when the property of the estate vested in the debtor. See 11 U.S.C. § 1141(b). Accordingly, judicial economy and judicial efficiency should drive the Court's decision. See Mt. McKinley Ins. Co. v. Corning Inc., No. 02 Civ. 5835, 2003 WL 1482786, at *7 (S.D.N.Y. Mar. 21,

16

2003)("Comity and federalism, judicial economy, and efficiency are among the considerations relevant to a decision to abstain.").

The question comes down to which federal court should decide the parties' disputes. At present, litigations are pending in this Court and in the Eastern District of New York. In addition, the debtor has moved to withdraw the reference of the part of its objection based on the Telecommunications Act of 1996. The motion implicitly acknowledges that this Court cannot resolve all of the issues raised by the debtor's objection. At a minimum, the debtor believes that at least two courts – this Court and the United States District Court for the Southern District of New York – should consider its objections. DoITT, on the other hand, insists that all of the issues (if not the specific factual contentions) are raised in the Eastern District, and should be decided by Judge Gleeson.

I do not presume to invade the territory of our own District Court where the debtor's motion to withdraw the reference is pending but remains undecided. Moreover, that motion centers on the provisions of the Telecommunications Act of 1996, and the debtor has understandably not argued that I should decide those issues. Nevertheless, the new allegations of selective enforcement raised by the debtor relate to the discrimination issues that form

17

the crux of the Eastern District complaints.[10]

The remaining issues identified in the <u>Debtor's Reply</u> fall into two general categories: (1) DoITT discriminated in favor of Verizon, or (2) DoITT discriminated against the debtor by treating it differently and less favorably than other PPT operators. Several types of pro-Verizon discrimination are alleged in the amended complaint in Case no. 03-CV-00192.[11]  These include the following: DoITT went out of its way to maintain the pre-eminent position of Verizon, to the exclusion and detriment of other non-favored companies like the debtor (¶ 4); curb-side locations of PPTs, the most lucrative locations, were exclusively licensed to Verizon (¶ 31); Verizon was not subject to the restrictions on advertising (¶ 68); the requirement that the building owner or commercial lessee consent to the placement of a PPT within six feet of the building line had a disproportionate impact on the PPT providers, other than Verizon, that had the majority of their PPTs near the building line (¶ 72); certain City regulations set forth a "special and favorable process" that benefitted on Verizon (¶ 77); Verizon was exempted from siting criteria governing operation

---

[10]    Since the debtor has not filed a consolidated complaint in Brooklyn federal court, I am left with the latest versions of the complaints filed in that court.  However, it is unnecessary to look beyond the amended complaint in Case no. 03-CV-00192.

[11]    The complaint in Case no. 04-CV-3541, filed on the same day as the amended complaint in Case no. 03-CV-00192, appears to be a carbon copy of the latter.

and advertising that applies to other PPT operators (¶ 78); the regulations allowed DoITT to give a competitive advantage to Verizon (¶ 80); and the security deposit requirements discriminated in favor of Verizon. (¶ 141.)

The allegation in the <u>Debtor's Reply</u> that Verizon is allowed to operated PPTs without a permit (while the debtor, and, presumably, other PPTs are not) is just another example of pro-Verizon discrimination that permeates the Eastern District pleadings. There is no reason to try this allegation of pro-Verizon discrimination in this Court, and all of the other pro-Verizon discrimination allegations in Brooklyn federal court. Accordingly, I will abstain in the interest of judicial economy and efficiency from hearing it. Whether the debtor can raise it in Brooklyn in light of that Court's injunction I leave to that Court. I only note that the debtor would also have to convince me that its assertion was timely.

The same conclusion applies to the allegations involving the failure to follow an unwritten policy relating to the issuance of NOVs. The amended complaint in Case no. 03-CV-00192 overflows with allegations that the defendants have discriminated against the debtor. The amended complaint includes the following averments: DoITT selectively enforced its regulations in ways that favored

19

former PPT operators' expansion and growth and penalized the debtor
(and New Phone) (¶ 6); DoITT's seizure of the debtor's PPTs
targeted the debtor while it allowed other PPT operators to operate
illegal PPTs (¶ 9); the defendants' conduct exhibited
discriminatory treatment of the debtor (¶ 26); no similar-situated
PPT operator (other than New Phone) was threatened with the removal
or destruction of its phones or the revocation of its franchise
simply because it did not execute the closing documents after
having been granted a franchise (¶¶ 159, 162, 181); the defendants
persecuted, harassed and subjected the debtor to discriminatory
treatment because the debtor challenged the City's actions and
asserted its rights (¶¶ 167-87); the defendants subjected the
debtor to "adverse," "disparate," "retaliatory," "vindictive" and
"differential" treatment "based on an irrational hostility towards
Best" that was not suffered by others similarly situated in
violation of the Equal Protection Clauses of the United States and
New York State Constitutions and 42 U.S.C. § 1983 (¶¶ 213-14, 222-
23); and the defendants' "unlawful and unreasonable removal of PPTs
owned by Best, and the targeted and discriminatory enforcement of
DoITT regulations against Best" prevented the debtor from competing
and violated 47 U.S.C. § 253(a). (¶ 281.)

The **Debtor's Reply** charges that DoITT failed to abide by an
unwritten policy that before issuing a violation, it would first

give the PPT operator a written warning and an opportunity to contest DoITT's position. In other words, the DoITT had a policy that it applied to other PPT operators, but not the debtor. This is another example of the type of selective enforcement alleged in the Eastern District complaints. Once again, it makes no sense for me to hear this one allegation (assuming it is timely) and for Judge Gleeson to hear all of the other anti-debtor discrimination claims. Accordingly, I will abstain from doing so in the exercise of my discretion.

In conclusion, the Court will abstain from hearing the issues raised by the debtor's <u>Amended Objection</u> with one exception. The debtor contends or implies that the DoITT claims should be dismissed because DoITT did not attach the NOVs to its claims. This is the only remaining issue that I must decide. If the debtor believes that it is entitled to relief based on that deficiency, it must file an appropriate motion with this Court by December 30,

2005.  The Court has considered the parties' other arguments, and

concludes that they lack merit.


        So ordered.



Dated:      New York, New York
            November 29, 2005


                        /s/ *Stuart M. Bernstein*
                        STUART M. BERNSTEIN
                Chief United States Bankruptcy Judge