```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
In re:                                                 :
                                                       :        Chapter 11 (Confirmed)
           BEST PAYPHONES, INC.,                       :        Case no. 01-15472(SMB)
                                                       :
                      Debtor.                          :
-------------------------------------------------------X
```

## POST-TRIAL FINDINGS OF FACT
## AND CONCLUSIONS OF LAW

**A P P E A R A N C E S:**

ARNALL GOLDEN GREGORY LLP
Attorneys for Verizon New York, Inc.
171 17th Street – Suite 2100
Atlanta, Georgia 30363

       Darryl S. Laddin, Esq.
             Of Counsel

MAYNE MILLER, ESQ.
Attorney for Debtor
P.O. Box 8050 G.P.O.
New York, New York 10116

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge:**

       This opinion relates to the August 22, 2007 trial of an issue remanded by the District Court, and concerns the construction of the setoff provisions contained in a settlement agreement between the debtor, Best Payphones, Inc. ("Best") and Verizon New York, Inc. ("Verizon"). For the reasons discussed below, the Court concludes that it properly applied the setoff provisions in its earlier decision, and Verizon's withdrawal of the balance of its claim moots Best's remaining setoff claims.

## BACKGROUND[1]

### A.   The Initial Bankruptcy Court Litigation

The background leading up to the trial is set forth in this Court's <u>Opinion Resolving Debtor's Objection To Claim No. 12 Filed By Verizon New York Inc.</u>, dated November 4, 2005 ("Bankruptcy Court Opinion") (ECF Doc. # 456) and the District Court's decision on appeal, <u>In re Best Payphones, Inc.</u>, No. 05 Civ. 6531(GEL), 2006 WL 647618 (S.D.N.Y. Mar. 14, 2006) ("District Court Opinion"). Familiarity with each is assumed. In brief, Best was formerly engaged in the business of owning and operating public pay telephones. It filed this chapter 11 case on October 23, 2001, and confirmed a 100% plan (the "Plan") in December 2002. The Plan required Best to escrow the funds needed to pay the disputed claims, pending the resolution of those disputes. Larry Glick, Esq. acted as the escrow agent.[2]

One of the disputed claims belonged to Verizon. Verizon had filed a claim in the sum of $75,962.14, reflecting unpaid prepetition phone charges, and Best had objected to it. Best's objection contended, <u>inter alia</u>, that Verizon had injured Best in a variety of ways, and as a result, Verizon owed Best more than Best owed Verizon. Significantly, Best did not seek any affirmative relief beyond expungement of the Verizon claim. Thus, if Best prevailed, Verizon would not receive a distribution under the Plan, but Best would not receive any further relief, such as a payment, from Verizon. Best escrowed the full amount of Verizon's disputed claim, nearly $76,000.

---

[1]   In this opinion, "Tr." refers to the <u>Corrected Transcript of Hearing Held on 8/22/07</u> (ECF Doc. # 703), and "VX" refers to Verizon's trial exhibits. Best offered one exhibit at trial, but it was not relevant to the disposition of the dispute, and is not referred to in this opinion.

[2]   Glick may have been misidentified in prior opinions as Best's attorney. He represented Michael Chaite, Best's sole shareholder and a co-proponent of the plan. Mayne Miller, Esq. represented Best.

The Court decided to liquidate the Verizon claim before addressing any of Best's setoffs, and conducted a trial on April 20, 2005. By then, Verizon had voluntarily reduced its claim to $35,307.76. After hearing the witnesses and considering the documentary evidence, the Court dictated a decision into the record allowing the Verizon claim in the reduced amount. To understand what happened next, it is necessary to take a step back.

At the same time that the bankruptcy case was going forward, Best and Verizon were also involved in proceedings before the New York State Public Service Commission ("PSC"). The dispute concerned municipal surcharge payments incorrectly billed to and paid by Best. Best claimed it was entitled to a refund. (See Tr. at 11.) The PSC entered an <u>Order Granting Partial Refunds</u>, which gave Best some but not all that it was seeking. (See <u>id.</u> at 12.) As a result, it filed an Article 78 proceeding in state court to review the PSC decision. (<u>Id.</u>)

In the course of that litigation, Verizon and Best entered into a Stipulation, dated September 19, 2003 (the "Stipulation"). The Stipulation fixed Best's refund claim at $25,285.08, but did not require Verizon to pay it right away, if ever. Paragraph 2 of the Stipulation provided:

> By this Stipulation, Verizon agrees that Best Payphones' escrow agent in its bankruptcy case ... may release to Best Payphones $25,285.08 from amounts being held in escrow on Verizon's behalf. If it is determined at some later date by the Bankruptcy Court that the <u>total amount of Verizon's prepetition charges owed by Best Payphones to Verizon for any period prior to October 23, 2001 (the "Verizon Prepetition Charges")</u> is less than $25,285.08, Verizon will pay directly to Best Payphones the difference between (x) $25,285.08, less (y) the total amount of the Verizon Prepetition Charges, plus 4% interest per annum accruing from the date that is 10 days from the date of this Stipulation,

3

>     within 10 days of the entry of a final, non-appealable Order determining
>     the amount of the Verizon Prepetition Charges.

(VX 17) (emphasis added.) In other words, payment would await the entry of a final, non-appealable order by this Court determining the amount of "Verizon's Prepetition Charges," a defined term. If the charges were less than $25,285.08, Verizon would pay the difference to Best.

After its proof of claim was liquidated in this Court at the April 20, 2005 trial, Verizon maintained that the $25,285.08 refund claim should be setoff against its liquidated claim, leaving an unpaid balance of approximately $10,000. The Court agreed. The order dated May 4, 2005 (the "May Order")(ECF Doc. # 405), fixed Verizon's claim in the amount of $35,307.76 and setoff $25,285.08, leaving a "Remaining Claim Amount" of $10,102.68, subject, however, "to setoff claims to the extent such setoff claims are valid and were properly raised by the Debtor in the Objection."

The parties continued to contest whether Best had any other valid setoffs, and in the course of those proceedings, Best identified two: a claim relating to "dial around compensation" and another claim concerning Verizon's negligent handling of "migration" orders when Best switched local phone carriers. Verizon decided that it was not worth litigating the setoffs. Consequently, it withdrew the balance of its claim, zeroing it out, and argued that the withdrawal of the balance of the claim mooted the setoff litigation. Best disagreed, contending that it was entitled to liquidate its remaining setoffs in the Bankruptcy Court. Agreeing with Verizon, the Court entered an order on November 4, 2005, which terminated the litigation, and preserved Best's right to payment under the Stipulation if the order fixing Verizon's claim was modified or reversed on

4

appeal. (ECF Doc. # 457.) Best also filed a notice of appeal from the November 4, 2005 order.

**B.    The District Court Appeals**

The two appeals were consolidated before District Judge Lynch. The District Court affirmed the portion of the May Order that liquidated Verizon's claim in the sum of $35,307.76, but reversed and remanded on the question of how to apply the setoff provisions in the Stipulation. As noted, the Stipulation required Verizon to pay Best the difference between $25,285.08 and "total amount of Verizon's prepetition charges owed by Best Payphones to Verizon for any period prior to October 23, 2001 (the "Verizon Prepetition Charges") . . . within 10 days of the entry of a final, non-appealable Order determining the amount of the Verizon Prepetition Charges." Judge Lynch concluded that the setoff provision was ambiguous. Specifically, "Verizon Prepetition Charges" could have two meanings. First, it could simply refer to the unpaid usage and other charges identified in Verizon's proof of claim. Under this interpretation, the order of proceedings would be the following: (1) liquidate the Verizon claim, (2) apply the Stipulation setoff, and (3) liquidate the other setoff claims to the extent necessary. This is what I did. After determining the allowed amount of the Verizon charges, I setoff the $25,285.08. Once Verizon withdrew the balance of its claim, the remaining setoffs became moot.

Second, "Verizon Prepetition Charges" could refer to the allowed amount of Verizon's claim, <u>net</u> of all other offsets. Under this interpretation, this Court would have to (1) liquidate the Verizon claim, (2) liquidate the remaining offsets, and (3) then apply the Stipulation setoff. If the other setoffs reduced the Verizon claim below $25,285.08,

5

Best would be entitled to a payment under the Stipulation for the difference. The second interpretation was the only one that held out the possibility of an affirmative recovery by Best.

Judge Lynch remanded the issue to this Court for the purpose of conducting additional proceedings to resolve the ambiguity.[3] The District Court entered a single judgment in both appeals on March 17, 2006. (ECF Doc. # 21, in <u>In re Best Payphones, Inc.</u>, No. 05 Civ. 6531 (S.D.N.Y.).) Best filed an appeal to the United States Court of Appeals for the Second Circuit, (<u>id.</u>, ECF Doc. # 22), but its appeal was dismissed on June 1, 2007, based upon its default under the Court of Appeal's scheduling order. (<u>Id.</u>, ECF Doc. # 23.)

**C.    The Proceedings on Remand**

The Court conducted a trial on August 22, 2007, at which it heard the testimony of two witnesses, Michael Chaite and Thomas Farrelly, and received numerous documents into evidence. The trial disclosed the following regarding the Stipulation:

Even after the PSC had issued its <u>Order Granting Partial Refund</u>, the parties apparently disputed the actual amount of the refund. They resolved their dispute in September 2003, and sought to memorialize the resolution in a written stipulation.

---

[3]    Best's post-trial brief indicates that it has withdrawn the municipal surcharge refund from its objection to Verizon's claim, and apparently reasons that since the refund claim is no longer before this Court, I must decide the other setoff claims. (<u>See</u> <u>Proposed Findings of Fact and Conclusions of Law Retrial of Effect of Stipulation With New York State Public Service Commission</u>, dated Sept. 20, 2007, at 4) ("Any contention that since Best included the municipal surcharge in its Objection meant that the amount of the Stipulation was a part of the total setoff claim in the Objection evaporated when Best withdrew, without objection, that element of its Objection and proceeded to attempt to try its setoffs based on DAC and faulty migration.")(ECF Doc. # 700.)

This is utter nonsense, assuming it is even true. Best did not mention at the trial that it had withdrawn the right to setoff the municipal overcharge refund claim. But even if Best withdraws the refund claim from its objection, it is still bound by the Stipulation.

6

Farrelly, Verizon's in-house counsel, and Darryl Laddin, Esq., its outside counsel, represented Verizon during those negotiations. Michael Chaite, Best's president, represented Best, and Diane T. Dean, Esq., a PSC assistant counsel, facilitated the negotiations. Most of the negotiations were conducted through e-mail. (See Tr. at 23, 70.)

Initially, the proposed stipulation drafted by Ms. Dean simply liquidated the overcharge claim at $25,285.08, and required Verizon to pay it.[4] (VX 1.) This was unacceptable to Verizon. Its claim in the bankruptcy exceeded the refund, and Verizon objected to paying Best anything while Best still owed Verizon money. (See Tr. at 66, 72, 74.) Verizon proposed instead to hold on to the refund until the Court decided the dispute surrounding its proof of claim.

Verizon's proposal triggered two concerns by Best. The first involved interest rates, and is not germane. The second is. Best had escrowed the full amount of the disputed claims with Glick. Verizon's approximate $76,000 claim was, therefore, already fully secured. On September 17, 2003, Chaite sent an e-mail,[5] (VX 4), to Darryl Laddin, Esq., Verizon's outside counsel, complaining that it was unfair for Verizon to have the security of both the bankruptcy escrow and the right to setoff the $25,285.08. In essence, this amounted to double security for the same debt:

---

[4] The draft stipulation also included two paragraphs (paragraphs 3 and 4) that, in general, stated that the stipulation did not constitute a waiver by either party of their other rights. (Tr. at 40.) These clauses are not relevant to the pending dispute.

[5] The sender of the e-mail is identified by the address "Bpayphones101@aol.com," Best's e-mail address. (Tr. at 50-51.) The e-mail was sent to Mr. Laddin, and copies were sent to Diane Dean, Thomas Farrelly and to "Waywilman@aol.com," the e-mail address of Mayne Miller, Esq., Best's attorney. I assume that the author was Michael Chaite, the president and sole shareholder of Best. See In re Best Payphones, Inc., No. 01-15472 (SMB), 2007 WL 1388103, at *1 (Bankr. S.D.N.Y. May 08, 2007). Chaite was the only Best employee directly involved in the negotiations with Verizon.

7

> [T]he issue of Verizon already having 100% of its stated claim, along with an allowance for interest, in Mr. Glick's account remains unaddressed. Verizon has already commented or admitted that its actual claim is at least somewhat less than the amount on its proof of claim. If the amount relating to the Municipal Surcharge is also allowed to be put in escrow, Verizon will have far greater than 100% of its stated claim, which I have said is substantially, if not, completely overstated.

(VX 4.)

Ms. Dean attempted another redraft that, she thought, met each party's concerns. In substance, Verizon could hold on to the refund, the bankruptcy escrow agent would release a like amount from his escrow to Best, and the payment of the refund claim would await further proceedings between Verizon and Best in this or another court. The balance of ¶ 2 now stated:

> By this Stipulation, Verizon agrees that Best Payphones' escrow agent in Bankruptcy may release to Best Payphones $25,285.08 from the amounts being held in escrow on Verizon's behalf. If it is determined at some later date, by the Bankruptcy Court or some other judicial forum, that Best Payphones in fact does not owe Verizon the funds being held in escrow on Verizon's behalf, Verizon will pay directly to Best Payphones the $25,285.08 within 10 days.

(VX 4.)

Farrelly categorically rejected the language. In his view, the Stipulation was intended to deal with two amounts that were fairly straightforward and easily determinable: Verizon's unpaid prepetition charges, i.e., its unpaid bills, and the municipal surcharge refund. (Tr. at 47-48.) He was concerned that the language could be interpreted to cover more than just these two amounts, and wanted to nail down his understanding. (See Tr. at 48.)

8

Verizon redrafted ¶ 2, interjecting language that restricted the setoff to Verizon's unpaid prepetition charges:

> If it is determined at some later date by the Bankruptcy Court that the total amount of Verizon's prepetition charges owed by Best Payphones to Verizon for the period prior to October 23, 2001 (the "Verizon Prepetition Charges") is less than $25,285.08, Verizon will pay directly to Best the difference between (x) $25,285.08, less (y) the total amount of the Verizon Prepetition Charges, within 10 days of entry of a final, non-appealable order determining the amount of the Verizon Prepetition Charges.

(VX 5.) Farrelly intended "Verizon Prepetition Charges" to refer to the charges that Best had incurred but not paid for Verizon's services. (See Tr. at 72-73.) If the refund exceeded the allowed amount of Verizon's prepetition charges, Verizon would pay the difference to Best.

The parties exchanged several more drafts, (see VX 6-9, 12, 14), but the substance of paragraph 2 did not change: if this Court determined that "the total amount of Verizon's prepetition charges" was less than $25,285.08, Verizon would pay Best the difference within 10 days of a "final, non-appealable order." The Stipulation was signed on September 19, 2003, after a negotiation process that lasted not much more than three days.

## DISCUSSION

The Stipulation is a contract, and the rules governing the interpretation of a contract are familiar. The primary objective is to give effect to the parties' intent. Sayers v. Rochester Tel. Corp. Supplemental Mgmt. Pension Plan, 7 F.3d 1091, 1094 (2d Cir. 1993); Seiden Assocs., Inc. v. ANC Holdings, Inc., 959 F.2d 425, 428 (2d Cir. 1992). Where the parties' intent is not plain from the language they used, a court may look to the objective manifestations of intent gathered from the parties' words and deeds. Brown

9

Bros. Elec. Contractors, Inc. v. Beam Construction Corp., 361 N.E.2d 999, 1001 (N.Y. 1977); Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 301 (S.D.N.Y. 1997). "The secret or subjective intent of the parties is irrelevant." Klos v. Polskie Linie Lotnicze, 133 F.3d 164, 168 (2d Cir. 1997).

The principal ambiguity in ¶ 2 concerns the phrase "Verizon Prepetition Charges," and whether, as Best argues, it referred to Verizon's allowed bankruptcy claim, net of all setoffs. A critical question, in the Court's view, was whether anyone even mentioned Best's other setoffs during the negotiations. Chaite's testimony was inconsistent. He first testified that he did not recall any discussions about Best's other setoff claims during the negotiations. (Tr. at 23-24.) He subsequently reversed himself, and testified that he discussed the other setoffs with Darryl Laddin, (Tr. at 24-27), and understood that the $25,000 would be applied only after all of the setoffs were resolved. (Tr. at 26-27.)

Farrelly's recollection was much clearer. He testified that the only two amounts ever discussed during the negotiations involved Verizon's unpaid charges for the services provided to Best and the municipal surcharge refund. (See Tr. at 47-48, 56, 60, 62, 69, 72-73.). No one ever suggested that the "Verizon Prepetition Charges" would be subject to reduction for any other reason. (Tr. at 73.) Farrelly was aware that Best had setoff claims against Verizon, but the Stipulation was not intended to address those other claims. (Tr. at 69-70.)

Having had the opportunity to observe the witnesses and consider their demeanor, I believe Farrelly. The parties were focusing on two amounts when they negotiated the

10

Stipulation. The "Verizon Prepetition Charges" referred to the unpaid amounts that Best owed for using Verizon's services – Verizon's unpaid bills. Indeed, this is the natural reading of the reference to "charges." The charges were subject to only one setoff under the Stipulation – the $25,285.08 municipal surcharge refund. The parties never discussed any other reductions.

I find, in this regard, that Chaite's contrary (and equivocal) testimony was not credible, and I discount it. This finding is not limited to the impression he made while testifying during the trial. In contrast to Farrelly, Chaite did not give any reason, much less any evidence, to explain why the parties would understand "unpaid charges" to encompass a reduction for unrelated, unliquidated counterclaims, such as those arising from Best's "migration" claims.

Chaite's September 17, 2003 e-mail, quoted above, also undercuts his testimony. Chaite was concerned about the double security, and wanted to release $25,285.08 from the escrowed sums held by Glick. Chaite argued that Verizon had filed a $76,000 claim but "already commented or admitted that its actual claim is at least somewhat less than the amount of its proof of claim." He then went right to the double escrow issue, noting that "if the [$25,285.08] is also allowed to be put in escrow, Verizon will have far greater than 100% of its stated claim" which was overstated.

If the other setoffs were on Chaite's mind, one would think that Chaite would have mentioned them as an additional reason to release funds from the bankruptcy escrow. Chaite never said to Verizon, in words or substance, "your claim is overstated and will be reduced by the other offsets before we even get to the escrow." Instead, Best

11

focused solely on the overstated amount of the claim, and the availability of the bankruptcy escrow to pay that claim.

Best also relies heavily on the phrase "final, non-appealable Order" that appears in ¶ 2 of the Stipulation. According to ¶ 2, the setoff would be triggered by "a final, non-appealable Order determining the amount of the Verizon Prepetition Charges." Best contends that none of the parties knew when they signed the Stipulation that I would separately try the amount of Verizon's disputed claim and Best's setoffs. Hence, the reference to a "final, non-appealable Order" fixing the "Verizon Prepetition Charges" had to refer to an order that adjudicated all of the objections, including the setoffs. Until then, the piecemeal determination of the issues would be interlocutory.

Best may be correct as a matter of federal procedure, but that is not the question. Rather, the question is what the parties meant when they referred to a "final, non-appealable Order." Farrelly, an attorney, testified that he understood it to refer to what they had been discussing, the liquidation of Verizon's unpaid charges. (Tr. at 78.) It was not intended to reflect any other setoffs. (Tr. at 79.) Chaite is a layman who negotiated the Stipulation on Best's behalf, and offered no evidence, other than self-serving testimony, (see Tr. at 13), that he understood the phrase to have any particular meaning. Moreover, they could not have intended "final, non-appealable Order" to refer to one entered after the resolution of the other setoffs because the resolution of the other offsets never entered into their negotiations.

In addition, Best's own actions contravene the meaning it now ascribes to "final, non-appealable Order." Best filed and thereafter prosecuted an appeal from the May

12

Order.  The May Order liquidated the "Verizon Prepetition Charges," without regard to any setoffs other than the municipal surcharge refund.  It did not "finally" adjudicate the allowed amount of Verizon's claim because it recognized the possibility of additional setoffs.  In short, it was precisely the type of order that Best now argues was non-final and non-appealable.  Yet Best apparently understood the May Order to be final and appealable because it filed and prosecuted an appeal from it. [6]

In conclusion, the parties never intended to setoff the $25,285.08 refund against any amount other than Verizon's claim for unpaid charges.  They did not intend that Verizon's claim would be subject to reduction based on other setoffs before the refund was applied.  Once the refund was setoff against the $35,307.76 due on account of Verizon's Prepetition Charges, and Verizon withdrew the balance of its claim, the balance of Best's objection to that claim, including its setoffs, became moot.

The foregoing constitutes the Court's findings of fact and conclusions of law. FED. R. CIV. P. 52(a).  Settle an order on notice.

Dated: New York, New York
       October 17, 2007

                                        /s/ *Stuart M. Bernstein*
                                        STUART M. BERNSTEIN
                                        Chief United States Bankruptcy Judge

---

[6] In light of the Second Circuit's disposition of Best's appeal, the May Order may be final and non-appealable at this point.

14