UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
In re:                                              :
                                                    :     Chapter 11 (Confirmed)
    BEST PAYPHONES, INC.,            :     Case no. 01-15472(SMB)
                                                    :
             Debtor.          :
------------------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## DENYING MOTION FOR REARGUMENT

**A P P E A R A N C E S:**

DUANE MORRIS LLP
Attorneys for Manhattan Telecommunications
Corporation d/b/a MetTel
380 Lexington Avenue
New York, New York 10168

      Fran M. Jacobs, Esq.
           Of Counsel

GEORGE M. GILMER ESQ.
Attorney for Debtor
943 Fourth Avenue
Brooklyn, New York 11232

**STUART M. BERNSTEIN**
**Chief United States Bankruptcy Judge**

      On March 20, 2008, the Court entered a final judgment in the sum of $388,988.76 in favor of Manhattan Telecommunications Corporation d/b/a MetTel ("MetTel") and against the debtor, Best Payphones, Inc. ("Best"). The judgment did not resolve any issues. Instead, it aggregated a series of awards and credits based on prior decisions and one stipulation, and fixed the allowed amount of MetTel's claim in this case. Best filed a notice of appeal to the District Court from the final judgment, and also filed a motion for

reargument in this Court. For the reasons that follow, the motion for reargument is denied.

## BACKGROUND

The background and the issues between the parties have been discussed in the prior decisions of this Court, familiarity with which is assumed. E.g. In re Best Payphones, Inc., No. 01 B15472, 2007 WL 1388103 (Bankr. S.D.N.Y. May 8, 2007)("Lost Profits Decision"). I highlight only those facts necessary to the disposition of Best's motion.

Best operated payphones in the metropolitan area. At various times, it purchased dial tone services from MetTel, but the relationship between Best and MetTel was a stormy one. Best first entered into a service contract with MetTel in September 1999. In December 2000, however, Best left MetTel and entered into a service contract (the "Natelco Agreement") with another dial tone service provider, the North American Telecommunications Corporation ("Natelco").

In February 2001, Natelco commenced its own chapter 11 case in this Court. On April 25, 2001, and over Best's objection, the Bankruptcy Court approved the sale of substantially all of Natelco's assets to MetTel, including the assignment of the Natelco Agreement. The Bankruptcy Court issued a bench order authorizing the immediate transfer, or migration, of Natelco's customers to MetTel.

On May 8, 2001, MetTel sent Best a Notice of Disconnection. The notice stated that MetTel intended to suspend Best's service, unless Best paid MetTel $267,328.61 by May 18, 2001. The notice invited Best to contact MetTel if it had any questions about

2

the bill.  Best did not pay anything or contact MetTel; instead, it signed a new service agreement with BridgeCom Co. on May 15, 2001.

Best filed this chapter 11 case on October 23, 2001, and confirmed a plan that paid 100%, plus post-petition interest, to creditors holding allowed unsecured claims.[1] MetTel filed an amended proof of claim (the "Claim") dated February 11, 2002, seeking $406,157.00 plus an unliquidated amount.  The unliquidated portion pertained to MetTel's claim for lost profits arising from Best's breach of the Natelco Agreement.  Best filed an objection to the Claim on August 2, 2002 (ECF Doc. # 88), which it subsequently amended, asserting various defenses and setoffs.  The Court disposed of the issues raised by the Claim, defenses and setoffs over the ensuing years.  At the conclusion, it entered the final judgment.  Best then moved for reargument and also filed a notice of appeal.

**B.     Best's Motion for Reconsideration**

For the most part, Best's motion challenges the Court's post-trial decision fixing MetTel's lost profits in the amount of $238,082.43, plus statutory interest calculated from October 1, 2001.  Lost Profits Decision, 2007 WL 1388103, at *24.  Best contends that the Natelco Agreement, the basis of the lost profits claim, was not properly assigned because (a) it was not assignable without Best's consent, (b) MetTel failed to obtain advance regulatory approval from the New York Public Service Commission ("NYPSC") prior to migrating Natelco's customers, and (c) MetTel failed to comply with the limited FCC waiver order issued by the FCC before the sale.  In addition, Best maintains that MetTel's lost profits claim is barred as a matter of law because MetTel did not prove that

---

[1]     Shortly thereafter, Best sold all of its assets, and no longer operates.

3

Natelco, as opposed to MetTel, was ready, willing and able to perform prior to the migration of its customers. (Best Payphones, Inc.'s Memorandum of Law in Support of Motion for Reargument and Reconsideration in Relation to the Final Judgment Entered on March 20, 2008, dated Mar. 31, 2008, at 4-8 ("Best Reargument") (ECF Doc. # 781).) Best also challenges the finding that Natelco was providing service exclusively through UNE-P. (Id. at 8-9.) Finally, Best contends that it should not have to pay pre-petition interest on the bills dated April 1, 2001 (the "April Invoice") and May 1, 2001 (the "May Invoice"). (Id. at 9.)

## DISCUSSION

Best's motion for reargument invokes Rules 59 and 60 of the Federal Rules of Civil Procedure (and the corresponding Federal Bankruptcy Rules) as well as Local Bankruptcy Rule 9023-1. Since, however, Best seeks consideration of the allowance of MetTel's Claim, the motion is governed by 11 U.S.C. § 502(j)[2], FED. R. BANKR. P. 3008[3], and Local Bankruptcy Rule 3008-1.[4] The Court may reconsider the allowance or disallowance of a claim "for cause," but "[r]econsideration of a claim that has been previously allowed or disallowed after objection is discretionary with the court." FED. R.

---

[2] Section 502(j) states, in pertinent part that "[a] claim that has been allowed or disallowed may be reconsidered for cause. A reconsidered claim may be allowed or disallowed according to the equities of the case."

[3] Rule 3008 states:

    A party in interest may move for reconsideration of an order allowing or disallowing a claim against the estate. The court after a hearing on notice shall enter an appropriate order.

[4] Rule 3008-1 provides:

    No oral argument shall be heard on a motion to reconsider an order of allowance or disallowance of a claim unless the Court grants the motion and specifically orders that the matter be reconsidered upon oral argument. If a motion to reconsider is granted, notice and a hearing shall be afforded to parties in interest before the previous action taken with respect to the claim may be vacated or modified.

4

BANKR. P. 3008 advisory committee's note (1983); accord Colley v. National Bank of Texas (In re Colley), 814 F.2d 1008, 1010 (5th Cir.)("[T]he bankruptcy court's discretion in deciding whether to reconsider a claim is virtually plenary, as the court may decline to reconsider without a hearing or notice to the parties involved."), cert. denied, 484 U.S. 898 (1987).

Best did not brief the standard that governs its motion, but both parties appear to agree that Local Bankruptcy Rule 9023-1 prescribes the appropriate one. Local Bankruptcy Rule 9023-1(a) states:

> A motion for reargument of a court order determining a motion shall be served within 10 days after the entry of the Court's order determining the original motion, or in the case of a court order resulting in a judgment, within 10 days after the entry of the judgment, and, unless the Court orders otherwise, shall be made returnable within the same amount of time as required for the original motion. The motion shall set forth concisely the matters or controlling decisions which counsel believes the Court has not considered. No oral argument shall be heard unless the Court grants the motion and specifically orders that the matter be re-argued orally.

On a motion for reargument, the movant must show that the court overlooked controlling decisions or factual matters "that might materially have influenced its earlier decision." Anglo American Ins. Group, P.L.C. v. CalFed Inc., 940 F. Supp. 554, 557 (S.D.N.Y. 1996)(quoting Morser v. AT & T Info. Sys., 715 F. Supp. 516, 517 (S.D.N.Y. 1989)); accord Banco de Seguros del Estado v. Mut. Marine Offices, Inc., 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002), aff'd, 344 F.3d 255 (2d Cir. 2003); Griffin Indus., Inc. v. Petrojam, Ltd., 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); Farkas v. Ellis, 783 F. Supp. 830, 832-33 (S.D.N.Y.), aff'd, 979 F.2d 845 (2d Cir. 1992). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." Griffin

5

Indus., 72 F. Supp. 2d at 368 (internal quotation marks and citations omitted); accord Banco de Seguros del Estado, 230 F. Supp. 2d at 428.[5]

The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered. Griffin Indus., 72 F. Supp. 2d at 368; Monaghan v. SZS 33 Assocs., L.P., 153 F.R.D. 60, 65 (S.D.N.Y. 1994); Farkas, 783 F. Supp. at 832. In addition, the parties cannot advance new facts or arguments; a motion for reargument is not a vehicle for "presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)(discussing Rule 59); accord Griffin Indus., 72 F. Supp. 2d at 368 (discussing motions for reargument).

**A.    The Validity of the Assignment**

  **1.    Best's Consent**

The Court decided at the conclusion of the lost profits trial that the order approving the sale of the Natelco assets and 11 U.S.C. § 365(f) foreclosed Best's argument that the Natelco Agreement could not be assigned without Best's consent, or that the assignment allowed it to terminate the Natelco Agreement. Lost Profits Decision, 2007 WL 1388103, at *12-15. Best continues to dispute the Court's findings and conclusions. The current motion rehashes its "slamming" argument, which the Court

---

[5] The same general rules apply to motions for reconsideration under FED R. BANKR. P. 9023 and 9024. "Generally, motions for reconsideration are not granted unless 'the moving party can point to controlling decisions or data that the court overlooked-matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" Key Mech., Inc. v. BDC 56 LLC (In re BDC 56 LLC), 330 F.3d 111, 123 (2d Cir. 2003)(quoting Shrader v. CSX Transp., Inc., 70 F.3d 255, 257 (2d Cir.1995)).
.

considered at great length, and rejected. Best fails to point to any controlling authority that was overlooked.

### 2. The Effectiveness of the Assignment

The Court previously concluded that the assignment of the Natelco Agreement was approved and effected by Bankruptcy Judge Bohanon's bench order on April 25, 2001, and did not depend on regulatory approval. Lost Profits Decision, 2007 WL 1388103, at *16-17. Nevertheless, MetTel had already obtained the limited waiver order from the FCC. The FCC order permitted the assignment of the Natelco customer contracts, subject to the duty to give post-transfer notice to the customers. MetTel had neither sought nor obtained a waiver from the NYPSC until later. By the time that the NYPSC issued a prospective waiver, Best had already left MetTel for BridgeCom.

Best now maintains that Judge Bohanon's bench order did not relieve MetTel of any regulatory obligations. According to Best, Judge Bohanon said he "would" waive the stay requirements under Federal Bankruptcy Rule 6004 and 6006, but did not waive them at the time. In any case, the waiver of the bankruptcy stay did not waive the need to obtain the prior approval of the NYPSC to the assignment.

The Court previously recounted the urgency of migrating the Natelco customers to MetTel. Natelco could no longer provide the service, and the Natelco customers might lose telephone service unless MetTel took over at once. Lost Profits Decision, 2007 WL 1388103, at *2. The transcript of the hearing before Judge Bohanon, at pages 80 through 83, shows that the parties requested a waiver of the 10-day stay, and Judge Bohanon granted it, to allow the speedy transfer of the Natelco customers. Best's argument comes

7

down to the implausible notion that Judge Bohanon granted this emergency relief to allow the immediate migration, but implicitly required MetTel to obtain regulatory approval from the NYPSC before migrating any customers.

Moreover, the Court previously rejected the contention that transaction depended on the NYPSC's approval. The assumption, assignment and sale were approved by the Natelco sale order, which pre-dated the NYPSC's prospective approval of the transaction. The Natelco sale order declared the full force and effectiveness of the transaction, and specifically, declared the legality, validity and effectiveness of the transfer of the Natelco service contracts to MetTel. Lost Profits Decision, 2007 WL 1388103, at *15-17. Best continues to argue that transaction required the approval of the NYSPC, but has failed to identify any controlling authority that the Court overlooked the first time.[6]

Next, Best maintains that MetTel failed to comply with the FCC limited waiver order. The FCC had directed MetTel to provide notice of the assignment to the Natelco customers, including Best. Best received the notice with the bill dated April 1, 2001 (the "April Invoice"). Id., 2007 WL 1388103, at *15. Best now asks the Court to "re-evaluate" that finding based on the supposed lack of credibility of Andoni Economou, MetTel's chief operating officer, but fails to identify any evidence that was overlooked.

Finally, Best contends that MetTel cannot recover lost profits unless the migration occurred while Natelco was still able to perform. It cites Penthouse Int'l, Inc. v. Dominion Fed. Sav. & Loan Ass'n, 855 F.2d 963, 979 (2d Cir. 1988) and Hodes v.

---

[6] This argument also amounts to a collateral attack on the proceedings in the Natelco bankruptcy court. If, as Best contends, the assignment was not valid without NYPSC approval, Best should have appealed from the bench order and sale order. Best did file a notice of appeal from Judge Bohanon's bench order, but that appeal was dismissed for failure to prosecute. See Lost Profits Decision, 2007 WL 1388103, at *2. The electronic docket in the Natelco case does not reflect that Best appealed from the sale order.

8

Hoffman Int'l Corp., 280 F. Supp. 252, 258-59 (S.D.N.Y. 1968). These decisions stand for the general proposition that a party aggrieved by an anticipatory breach must show that it is ready, willing and able to perform in order to recover damages. Where the contract has been assigned, the assignee must demonstrate its own readiness, willingness and ability to perform, not that of the assignor. E.g., Herbst v. 1514 Eastern Parkway, Ltd., 848 N.Y.S.2d 343, 343-44 (N.Y. App. Div. 2007). Best has not cited any authority to support the suggestion that to recover damages, the assignee must show that the assignor was ready, willing and able to perform at an earlier time when the assignment occurred.

Best's argument also ignores Bankruptcy Code § 365. Section 365 authorizes a trustee to assume and assign executory contracts, including those the estate cannot perform. The estate must, however, provide adequate assurance of future performance of the contract by the assignee. 11 U.S.C. § 365(f)(2)(B). If the Court approves the assignment, the estate is relieved of future liability for breach, id., § 365(k); the obligation to perform passes to the assignee. This is precisely why the estate must show the assignee's ability to perform at the time it seeks the Court's approval. Yet according to Best, if the non-debtor party subsequently breaches the contract and the assignee sues to recover damages, the assignee must show what amounts to adequate assurance of future performance by the assignor at the time of the assignment, in direct contravention of § 365(f)(2)(B). It is sufficient to say that Best has failed to identify any authority that supports this unusual argument.

9

**B.    UNE-P**

The Court previously found that Natelco provided services to Best through its unbundled network elements platform, or UNE-P. MetTel continued to provide services through UNE-P, and based its calculation of lost profits on that form of service. Lost Profits Decision, 2007 WL 1388103, at *19. At trial, Best had contended that Natelco provided services through a different method resulting in lower lost profits, but the Court concluded that Best's position was refuted by "substantial, credible evidence." That evidence included Economou's testimony, statements made by MetTel to the NYPSC and certain provisions of the Asset Purchase Agreement between Natelco and MetTel. The Court expressly rejected certain inferences that Best asked it to draw from the contents of Natelco telephone bills. Id., 2007 WL 1388103, at *19-20.

Best now raises three challenges to the Court's findings. First, it contends that no evidence was offered to prove that Natelco intended to provide services through UNE-P. It is not clear why Natelco's unstated intention would be relevant; the Natelco Agreement did not specify the form of service, and the evidence of the parties' course of dealing showed that Natelco and MetTel provided the services under the Natelco Agreement through UNE-P. Accordingly, it was reasonable for MetTel to compute its lost profits based on the assumption that it would have continued to provide services through UNE-P if Best had not repudiated the Natelco Agreement.

Second, Best argues that Economou lacked credibility. (Best Reargument, at 8-9.) During the lost profits trial, Economou testified that the April Invoice was sent in the middle of May, but at a trial held several months later on August 7, 2007, he testified that he did not recall when MetTel sent the April Invoice (or the May Invoice). (Id., at 6 n.4.)

10

Best never confronted Economou at the later trial with this inconsistency, yet it now contends that I should re-evaluate his testimony because of it.

Economou's faulty recollection at the later trial may be explained by the passage of time. In any event, it does not undercut the testimony he gave during the earlier lost profits trial. The supposed inconsistency did not pertain to UNE-P, which Economou remembered clearly and about which he testified credibly. Best had ample opportunity to cross-examine Economou at the lost profits trial, and failed to impeach his testimony. Economou's failure to recall at a subsequent trial the precise date that the April Invoice was mailed does not supply a reason to re-evaluate the earlier credibility findings.

Third, Best refers to the "glaring absence of documentary evidence" supporting the UNE-P findings. (Best Reargument, at 8-9.) This apparently refers to missing bills sent by Verizon to MetTel that MetTel used to prepare the April and May Invoices. According to Best, the Verizon bills would have also shown whether Natelco provided service to Best exclusively through UNE-P. (See id., at 8-9.) Best's speculation about the contents of the Verizon bills, which Best failed to subpoena, could not have been overlooked and does not supply "cause" for reconsideration.

C.  **The Pre-Petition Interest**

MetTel's right to recover certain pre-petition interest involves a more complex history. After Best objected to MetTel's Claim, MetTel moved for partial summary judgment.[7] MetTel argued, inter alia, that an account had been stated based on Best's

---

[7]   Actually, the Court converted MetTel's response to Best's claim objection to a motion for partial summary judgment, informed the parties, and allowed them to submit additional pleadings.

11

failure to object to the April and May Invoices.[8]  In support, MetTel submitted the Declaration [of David Aronow] in Support of Objection of Manhattan Telecommunications Corp., dated Sept. 9, 2002 (see ECF Doc. # 122).  The Aronow declaration stated that MetTel had sent the April Invoice on April 1, 2001, (id., at ¶ 12), and the May Invoice on May 1, 2001.  (Id., at ¶ 13.)

Best did not take issue with MetTel's evidence that it sent the April Invoice on April 1, 2001.  To the contrary, Best embraced it, asserting that MetTel "rendered a bill to the Debtor on April 1, 2001, when it did not even take over the account until April 4."  (Reply [of Michael Chaite] to Declaration of David Aronow Deemed Motion for Summary Judgment on Debtor's Objection to Mettel's Proofs of Claim, dated Oct. 11, 2002, at ¶ 27 (see ECF Doc. # 158).)  From this "undisputed fact," Best argued that April Invoice was invalid because it was dated prior to the date that the Natelco Agreement was assigned to MetTel.  (Id., at ¶ 28.)

The Court nonetheless concluded that MetTel had demonstrated an account stated, and awarded partial summary judgment.  In re Best Payphones, Inc., 01 B 15472, 2002 WL 31767796, at *10 (Bankr. S.D.N.Y. Dec. 11, 2002).  Following the decision, each side submitted a proposed order.  (See ECF Doc. ## 208, 216.)  The MetTel order computed interest on the April and May Invoices at the annual rate of 18% from April 1, 2001 and May 1, 2001, respectively.  The Best order calculated interest at the annual rate of 9% from April 6, 2001 and May 6, 2001, respectively.  The Court signed the MetTel order with some modifications.  (See Order Granting in Part and Denying in Part Motion

---

[8]  When Natelco assigned the Natelco Agreement to MetTel, it also assigned its accounts receivable. Lost Profits Decision, 2007 WL 1388103, at *2.

of Manhattan Telecommunications Corporation for Summary Judgment, dated Dec. 30, 2002)(ECF Doc. # 224).)

Best subsequently moved for reconsideration, and argued, among other things, that the appropriate interest rate was 9%, not 18%. (Application for an Order Granting Reconsideration of Order Disposing of Motion for Summary Judgment and Allowing Claim of MetTel in Part, dated Jan. 9, 2003, at ¶ 22)(ECF Doc. # 230.) It did not question either accrual date. The Court denied the motion to reconsider, affirming the earlier interest computation. In re Best Payphones, Inc., 01 B 15472, 2003 WL 1089525, at *4-6 (Bankr. S.D.N.Y. Mar. 10, 2003).

Best now contends that subsequent evidence showed that the April Invoice was not sent out until early May 2001, and there is no evidence showing when MetTel sent the May Invoice. As a result, interest should not have accrued on these two bills commencing on April 1 and May 1, respectively.

A party seeking reconsideration based on new evidence must explain why it failed to discover or introduce the evidence earlier. Monaghan, 153 F.R.D. at 67; Atlantic States Legal Foundation, Inc. v. Karg Bros., Inc., 841 F. Supp. 51, 56-57 (N.D.N.Y. 1993). Best's new evidence consists of Economou's testimony at the lost profits trial to the effect that the April Invoice was sent in mid-May 2001. Best fails, however, to explain why it could not have discovered or presented this evidence in opposition to MetTel's partial summary judgment motion. Best was certainly in the position to know when it received the April Invoice. Furthermore, Best stated as a fact that it protested both bills, and referred to evidence of those protests, in its Statement Pursuant to Local

13

Rule 7056, dated Oct. 11, 2002, at ¶¶ 33, 35. (See ECF Doc. # 158.) Such evidence, if it existed, should have shed light on when it received the bills. Finally, under its own proposed order, interest started to accrue on April 6, 2001.

In truth, Best knew when it opposed the MetTel motion that the April Invoice could not have been sent on April 1, 2001. Its opposition papers fixed the transaction date as April 4, 2001, but Best knew that the sale had not been approved until April 25, 2001; it filed a notice of appeal from Judge Bohanon's bench order. In either case, the Natelco sale occurred after April 1, 2001. Best nevertheless stuck with the April 1, 2001 date for the tactical reasons described above. It has little cause to complain that the Court fixed April 1, 2001, as the interest accrual date.

As for the May Invoice, the Aronow declaration stated that it was mailed on May 1, 2001. Best did not offer evidence of another mailing date even though it knew or should have known when it received the May Invoice.

Based on the foregoing, Best's motion for reargument is denied.

So ordered.

Dated: New York, New York
July 3, 2008

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
Chief United States Bankruptcy Judge

.