UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                       :
                                             :          Chapter 11 (Confirmed)
        BEST PAYPHONES, INC.,                :          Case no. 01-15472 (SMB)
                                             :
                Debtor.                      :
--------------------------------------------------------X

### MEMORANDUM DECISION AND ORDER REGARDING OBJECTIONS TO CLAIM FILED BY THE DEPARTMENT OF INFORMATION TECHNOLOGY AND COMMUNICATIONS AND CROSS-MOTION TO ENTER A FINAL DECREE

**A P P E A R A N C E S:**

MICHAEL CHAITE, *Pro Se*
70 Roselle Street
Mineola, NY 1150

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for the City of New York and Its Agencies*
100 Church Street, Room 5-223
New York, New York 10007

        Gabriela P. Cacuci, Esq.
            Of Counsel

GEORGE M. GILMER, ESQ.
26 Court Street, Suite 312
Brooklyn, NY 11242

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        Over twelve years have elapsed since the New York City Department of

Information Technology and Telecommunications (the "City") filed its claims in this

case and the Court confirmed the plan jointly proposed by the debtor Best Payphones,

Inc. ("Best") and its sole shareholder Michael Chaite. Since then, the City and Best have been litigating with each other regarding issues that affect the allowance of the City's claims before the New York City Environmental Control Board ("ECB"), the New York courts and several federal courts. Some of these litigations were resolved long ago while others remain alive.

Last spring, Chaite and Best filed yet another set of objections to the City's administrative claim. The City vehemently opposed the objections and cross-moved for an order directing the entry of a final decree in this thirteen year old case. For the reasons that follow, the Court concludes that it has jurisdiction to decide the objections and there is no bar to asserting them. They cannot, however, be decided on the state of the current record and require further briefing and proceedings. And because this case must remain open to resolve the objections, the cross-motion is denied without prejudice.

## BACKGROUND

The background to the current motions has been the subject of numerous opinions by this Court. *See, e.g., In re Best Payphones, Inc.*, 279 B.R. 92 (Bankr. S.D.N.Y. 2002) ("*Best Payphones I*"); *In re Best Payphones, Inc.*, No. 01-15472, 2014 WL 5507618 (Bankr. S.D.N.Y. Oct. 31, 2014) ("*Best Payphones II*"). I assume familiarity with these opinions and limit the discussion, which nonetheless involves a lengthy recitation of over twelve years of litigation, to the facts necessary to explain this decision.

2

A.     The Origin of the Dispute

Prior to the petition date, Best operated public pay telephones ("PPTs") in various locations throughout the City of New York.  In 1996, the City adopted a new regulatory scheme based on franchises and placed existing operators like Best on an Interim Registry ("IR").  The PPT operators on the IR could continue to operate until, *inter alia*, the Franchise and Concession Review Committee ("FCRC") determined not to approve a proposed franchise agreement and sixty days had elapsed after the FCRC had advised the proposed franchisee of its decision.

In August 1999, the FCRC approved Best as a franchisee, but Best did not return the signed franchise agreement because it refused to accede to some of its provisions.  By letter dated January 13, 2000 (the "January 13 Letter"),[1] an Assistant Corporation Counsel advised Best that the FCRC had disapproved Best as a franchisee because Best had failed to execute and return the franchise agreement as well as the other closing documents.  The letter offered Best one last chance.  If, within sixty days, it did not return the signed franchise agreement, enter into a contract to sell the PPTs or remove the PPTs from City property, the phones would be subject to removal by the City.  The effect of the January 13 Letter would spawn years of litigation.

---

[1]     The full text of the January 13 Letter is set forth in the decision of administrative law judge ("ALJ") Bernard Twomey. (*Decision and Order*, dated November 7, 2001 ("*Twomey Decision*"), at ¶ 4.)  A copy of the *Twomey Decision* is attached as Exhibit 1 to Best's objection to the City's Prepetition and Administrative Claims. (*Memorandum of Law in Support of Motion to Deny Pre-Petition and Administrative Claims of Claimant City of New York*, dated June 26, 2014, (ECF Doc. # 890).)

3

Best did not comply with any of the conditions, the City took the position that

the Debtor lacked the authority to operate the PPTs and, between May 8 and May 10,

2000, issued twenty-three notices of violation (the "Prepetition NOVs") charging Best

with operating PPTs without a permit.  The City initiated an administrative proceeding

before the ECB to collect the fines.   ALJ Twomey conducted four days of hearings and

reserved decision.

**B.**      **The Bankruptcy Case**

Best commenced this chapter 11 case on October 23, 2001, and following the

commencement of the case, ALJ Twomey issued his decision.  He concluded that Best

was a member in good standing on the IR, and was not, therefore, operating its PPTs

without a permit.  Accordingly, he dismissed the violations.  (*Twomey Decision* at ¶ 45.)

The decision rested on the determination that the January 13 Letter did not revoke the

FCRC's prior approval of Best as a franchisee.  (*Id.* at ¶ 44.)

The City moved for relief from the automatic stay to appeal ALJ Twomey's

decision and argued, among other things, that the issuance of his decision postpetition

violated the automatic stay and was void.  The Court agreed, and because the decision

was void, there was nothing to appeal from and the City's motion was denied as moot.

*Best Payphones I*, 279 B.R. at 98-99.

4

1.    **The Proofs of Claim**

While ALJ Twomey's decision was still *sub judice*, Best applied to establish a bar

date for prepetition claims.  By order dated January 8, 2002 (ECF Doc. # 14), the Court

established a February 22, 2002 deadline for filing prepetition claims (the "Prepetition

Bar Date").  On February 4, 2002, the City filed Claim no. 4 (the "Prepetition Claim") in

the amount of $60,048.15, consisting of $37,048.15 in unpaid IR fees and $23,000.00 in

fines pertaining to twenty-three Prepetition NOVs.  The Prepetition Claim did not

attach the NOVs to the claim.

Thereafter, by amended order dated October 11, 2002 (ECF Doc. # 161), the Court

fixed November 18, 2002 as the deadline for filing administrative claims (the

"Administrative Bar Date").  The City filed Claim no. 16 (the "Administrative Claim")

on November 13, 2002, prior to the Administrative Bar Date.  The Administrative Claim

sought $105,789.35 consisting of $69,789.35 in unpaid IR fees and $36,000.00 relating to

thirty-six additional NOVs that were served postpetition (the "Postpetition NOVs").[2]

The face of the Administrative Claim alleged that the entire debt was incurred

postpetition between October 23, 2001 and December 14, 2002.  The attachment to the

claim confirmed that the fees arose postpetition but did not identify the dates that the

thirty-six violations occurred or attach copies of the corresponding Postpetition NOVs.

---

[2]    Some documents refer to thirty-seven Postpetition NOVs.  The difference is immaterial to this
decision.

Best contends that these NOVs were served postpetition but listed dates of violation that pre-dated the bankruptcy case.  The City has never disputed this assertion.

The claims for IR fees and fines were mutually exclusive.  Best owed the fees if it remained on the IR and was authorized to operate the PPTs and owed the fines if it was not.  The City subsequently withdrew its claim for fees, (*Letter from Gabriela P. Cacuci, Esq. to Court*, dated Oct. 7, 2005 (ECF Doc. # 438)), and its claims are now limited to the fines.

### 2.    The Plan

The Court confirmed the *Third Amended Plan of Reorganization Jointly Proposed by Best Payphones, Inc., Debtor and Debtor-in-Possession, and Michael Chaite,* dated October 8, 2002 ( the "*Plan*") (ECF Doc. # 155)) on December 26, 2002.  (*Order Confirming Third Amended Plan of Reorganization Jointly Proposed by Best Payphones, Inc., Debtor and Debtor-In-Possession, and Michael Chaite, dated October 8, 2002, as Modified,* dated Dec. 26, 2002 ("*Confirmation Order*") (ECF Doc. # 219).)  The *Plan* left all classes unimpaired, called for the payment of administrative claims on the effective date and provided that allowed unsecured claims would be paid in full on the effective date together with postpetition interest computed at the annual rate of 9%.  Finally, Chaite would retain his 100% equity interest in Best.  (*Plan* at Art. III.)

When the *Plan* and disclosure statement were filed, Best had not yet objected to the City's claims.  The disclosure statement indicated, however, that Best disputed the

6

City's claims and intended to pursue pending and potential claims against the City.

(*Third Amended Disclosure Statement Pursuant to Section 1125 of the Bankruptcy Code for Third Amended Plan of Reorganization Jointly Proposed by Best Payphones, Inc., Debtor and Debtor-In-Possession, and Michael Chaite*, dated Oct. 8, 2002, at 4, 5, 6 (ECF Doc. # 156).) The *Plan* provided that the money needed to cover disputed claims would be held in escrow and paid to the creditor to the extent the claim was allowed or to Best or Chaite, as the case might be, to the extent the claim was disallowed.  (*See* Plan at Arts. V, VII.) [3] Following confirmation, Best sold all of its assets to Universal Telecommunications, Inc. for $1,015,000, (*see Notice of Hearing on Motion for Authority to (1) Sell Property Free and Clear of Claims, Liens and Encumbrances and (2) Assume and Assign Executory Contracts and/or Leases*, dated Dec. 7, 2002, at 2 (ECF Doc. # 244-1)), presumably netting Chaite a return on his equity over and above his contingent interest in the escrow covering the payment of disputed claims.

### 3.    The Claims Objections

Best filed objections to the City's Prepetition and Administrative Claims shortly before the *Plan* was confirmed.  (See *Objection to Proof of Claim of New York City Department of Information Technology and Telecommunications*, dated Nov. 29, 2002 ("*Prepetition Objection*") (ECF Doc. # 191)); *Objection to Proof of Administrative Claim of*

---

[3]     The original escrow agent was Larry I. Glick, P.C., one of Best's former attorneys. (*Confirmation Order* at ¶ 9.) By order dated December 30, 2013 (ECF Doc.  # 873), Best's current attorney, George M. Gilmer, Esq., replaced Glick as escrow agent.  At the present time, the escrowed funds total roughly $76,000.

*New York City Department of Information Technology and Telecommunications*, dated Dec. 12, 2002 ("*Administrative Objection*") (ECF Doc. # 205).) [4]  The *Administrative Objection* asserted that the imposition of the fees violated the Telecommunications Act of 1996 by discriminating against Best and in favor of other telecommunications providers. (*Administrative Objection* at ¶ 4.)  Best objected to the postpetition claim for fines on the ground that it had the necessary permits to move its PPTs to the curb and did not receive notice that the removal of PPTs to the curb would remove Best from the IR.  (*Id.* at ¶ 7.)  Best also incorporated the same objections asserted against the Prepetition NOVs.  (*Id.* at ¶ 6.)   Neither the *Prepetition Objection* nor the *Administrative Objection* asserted that the service of the Postpetition NOVs violated the automatic stay or that the underlying fines actually constituted prepetition claims.

Best subsequently filed an amended objection, (*see Amended Objection to Proof of Claim of New York City Department of Information Technology and Telecommunications*, dated July 17, 2013 ("*Amended Objection*") (ECF Doc. # 273)), to amend and supplement its objection to the City's Prepetition Claim "to reflect subsequent events and to adumbrate its objections based on Constitutional and federal pre-emption principles." (*Id.* at ¶¶ 1, 3.)  The *Amended Objection* did not refer to the issues relating to the Postpetition NOVs except in a footnote regarding counterclaims concerning lost profits. (*Amended Objection* at ¶ 91 n.11.)

---

[4]     Best also objected to the administrative claim filed by the Department of Transportation.  *Objection to Proof of Administrative Claim of New York City Department of Transportation*, dated Dec. 3, 2002, (ECF Doc. # 202).)

4.      Abstention

In addition to the litigation in this Court, Best and the City were or had been

engaged in litigation before the ECB, the New York state courts and the United States

District Courts for the Southern and the Eastern Districts of New York.  Best raised

many of the same issues in the various litigations.  In fact, Best's propensity for

overlapping litigation against the City and others became so pronounced, *see New Phone*

*Co. v. City of New York*, No. 00 CV 2007 (JG), 2005 WL 1902119, at *1 (E.D.N.Y. Aug. 5,

2005) (describing the "multiple lawsuits and overlapping claims"), *vacated and remanded*

*in part on other grounds*, 498 F.3d 127 (2d Cir. 2007), that this Court issued an order

directing Best to show cause why it should not be required to take certain actions with

respect to its overlapping litigations, identify certain information relating to each

proceeding and explain why the proceeding should not be consolidated or dismissed.

(*Order to Show Cause Why the Court Should not Direct the Debtors to Dismiss, Consolidate or*

*Prosecute Certain Proceedings*, dated Jan. 23, 2003 (ECF Doc. # 243).) [5]  At the hearing on

the order to show cause, the Court also raised the prospect of appointing a litigation

---

[5]      The order to show cause was vacated after the Court was satisfied that it had served its intended purpose. (*See Order Vacating This Court's Order to Show Cause Dated January 23, 2003*, dated Oct. 7, 2004) (ECF Doc. # 336.)  District Judge Gleeson subsequently enjoined Best and its affiliate, New Phone Company, from filing without leave of the District Court, "any new action arising from or related to the enactment and enforcement of the City's regulatory system with respect to public pay telephones in New York City and defendants' alleged conspiracy to discriminate against plaintiff and other public pay telephone providers."  *New Phone Co. v. City of New York*, 2005 WL 1902119, at *4.  Best did not appeal from the injunction order, *New Phone Co. v. City of New York*, 498 F.3d at 130-31, and as far as I know, it remains in place.

trustee to manage Best's pending lawsuits.  (*See Order Vacating this Court's Order to Show Cause Dated January 23, 2003*, dated Oct. 7, 2004 (ECF Doc. # 336).)

### a.    The 2003 Abstention Order

During the next two years, the Court and the parties addressed the overlapping litigation to the extent Best's lawsuits duplicated the issues raised in the claims objections.  In response to a motion by the City, the Court abstained from hearing issues pending before the ECB to the extent that Best alleged that the City had failed to follow its own rules and regulations when it issued the Prepetition and Postpetition NOVs. (*Order Granting Abstention Pursuant to 28 U.S.C. § 1334(c)(1) with Respect to the Regulatory Law Aspects of the Debtor's Objections to Claims Filed by the New York City Department of Information Technology and Telecommunications and the New York City Department of Transportation*, dated Aug. 18, 2003 ("*2003 Abstention Order*") (ECF Doc. # 280).) [6]  The *2003 Abstention Order* further provided that it did not apply to the other grounds asserted by Best in its objections, including "late filing of proof(s) of claim."  (*2003 Abstention Order* at 2.)

---

[6]    The abstention extended:

to the claims of DoITT and DOT for violations pending before the Environmental Control Board ("ECB") concerning (a) DoITT's claim for twenty-three (23) pre-petition notices of violation issued for operating and maintaining public phones without a permit, (b) DoITT's claim for thirty-six (36) notices of violation issued for operating and maintaining public pay telephones without a permit, and (c) DOT's claim for eight (8) notices of violation issued for opening of the street without a permit (collectively, the "Violations") solely to the extent that the Debtor's grounds for objecting to the Violations are based on the failure of DoITT and/or DOT to comply with the specific rules and regulations relating to the issuance by DoITT and DOT of the Violations.

(*2003 Abstention Order* at 2.)

Following the *2003 Abstention Order*, the City renewed the proceedings before the

ECB, and Best renewed its challenge to the effectiveness of the January 13 Letter.  Best

had previously challenged the January 13 Letter in a proceeding brought pursuant to

Article 78 of New York's Civil Practice Law and Rules, N.Y.C.P.L.R. §§ 7801 *et seq.*, but

the New York Supreme Court dismissed Best's petition as untimely, and the Appellate

Division affirmed.  *See Best Payphones, Inc. v. Dep't of Info. Tech. & Telecomms. of the City of*

*New York*, 767 N.Y.S.2d 650 (N.Y. App. Div. 2003).  On appeal, the New York Court of

Appeals affirmed the Appellate Division, ruling that the January 13 Letter was a final

and binding agency determination, Best had failed to file its Article 78 proceeding

within four months of that date and, accordingly, Best's Article 78 proceeding was

untimely.  *Best Payphones, Inc. v. Dep't of Info. Tech. & Telecomms. of the City of New York*,

832 N.E.2d 38, 40 (N.Y. 2005).

Notwithstanding these rulings, Best challenged the January 13 Letter in the

renewed ECB proceedings, but ALJ Helaine Balsam held that the Court of Appeals'

decision barred Best's challenge.  (*Decision and Order*, dated Oct. 25, 2005 ("*Balsam*

*Decision*"), at 5-6.) [7]  She also rejected Best's argument that service of the Postpetition

NOVs on its bankruptcy counsel, Leo Fox, Esq., was improper.  (*Id.* at 6-7)  Next, she

declined to decide Best's contention that the service of the Postpetition NOVs violated

the bankruptcy automatic stay and suggested that Best seek relief on that score in the

bankruptcy court.  (*Id.* at 7-8.)  Turning to the merits and relying on the same record

---

[7]        A copy of the *Balsam Decision* is annexed to the *Best Objection* as Exhibit 3.

11

developed during the four days of trial before ALJ Twomey years earlier, she sustained

the entire prepetition claim for fines and the claim based on twenty-eight of the thirty-

seven Postpetition NOVs.  (*Id.* at 8-9.)  On administrative appeal, the ECB affirmed the

City's claim for fines against Best in the total amount of $45,900 (the "ECB Judgment"). [8]

Best brought a new Article 78 proceeding to challenge the ECB Judgment.  The

New York Supreme Court affirmed the administrative decision and order and

dismissed the petition in an unreported decision.  The Appellate Division unanimously

affirmed the supreme court, ruling, *inter alia*, that *res judicata* barred Best from arguing

that the January 13 Letter did not constitute final agency action disapproving Best's

proposed franchise and the service of the Postpetition NOVs was proper.  *Best*

*Payphones, Inc. v. Envtl. Control Bd. of the City of New York*, 931 N.Y.S.2d 64, 65 (N.Y. App.

Div. 2011).  The New York Court of Appeals later denied Best's motion for leave to

appeal.  973 N.E.2d 204 (N.Y. 2012).

### b.    The 2005 Abstention Order

Following the issuance of the *2003 Abstention Order*, the Court conducted

numerous conferences and set deadlines relating to the prosecution of the non-

bankruptcy litigation.   (*Opinion and Order Regarding Motion for Discretionary Abstention*,

dated Nov. 29, 2005 ("*2005 Abstention Order*"), at 8 (ECF Doc. # 466).)  As part of the

---

[8]        A copy of the ECB Judgment is annexed as Exhibit A to the *Reply of the New York City Department of Information Technology and Telecommunications ("DoITT") to Debtor's Response to DoITT's Motion to Strike Best's Remaining Objection to its Proof of Claim for Fines*, dated Feb. 26, 2008 (ECF Doc. # 772).

process, the Court attempted to pin down the remaining objections that were not the

subject of the litigation that was eventually consolidated before Judge John Gleeson of

the United States District Court of the Eastern District of New York.

The City filed a response to Best's claims objections, arguing that, with one

exception, Best's objections duplicated issues raised in litigations pending in other

courts and resolution of the City's claims should be held in abeyance pending the

disposition of those lawsuits.  (*See Response of the New York City Department of*

*Information Technology and Telecommunications ("DoITT") and the New York City*

*Department of Transportation ("DOT") to the Debtor's Objections to DoITT's and DOT's*

*Proofs of Claim*, dated Dec. 22, 2004 (ECF Doc. # 355).)  The only exception concerned the

charge that the claims for fines were invalid because the City failed to attach the NOVs

to the claims.  (*Id.* at ¶ 41.)

Best's reply took issue with the City's contention that the issues pending in other

courts duplicated the issues raised in Best's objections.  (*See Reply to the Response of the*

*New York City Department of Information Technology and Telecommunications ("DoITT") and*

*the New York City Department of Transportation ("DOT") to the Debtor's Objections to*

*DoITT's and DOT's Proofs of Claim*, dated Mar. 30, 2005 ("*Best Abstention Reply*") (ECF

Doc. # 394).)  In addition, Best argued that "the Bankruptcy Court is the proper forum

for determination of DoITT's violation of the automatic stay by prosecuting prepetition

NOVs after the filing date of Best's bankruptcy petition, an issue raised in no other

13

proceeding." (*Id.* at 4 [9]; *accord Declaration of Michael Chaite in Support of the Debtor's Reply to the Response of the New York City Department of Information Technology and Telecommunications ("DoITT") and the New York City Department of Transportation ("DOT") to the Debtor's Objections to DoITT's and DOT's Proofs of Claim*, dated Apr. 1, 2005 ("*Chaite Abstention Declaration*"), at ¶ 15 (ECF Doc. # 395) ("The second set of NOVs, that had a 'Date of Occurrence' in August of 2001, but were not served until November (when they were served, it was not on Best, only its bankruptcy attorney), a few weeks after Best had filed bankruptcy, had the same language written in the 'Detail of Violation' section (i.e. 'operate/maintain telephone on City property w/o a permit') (See exhibit H).")

The City filed a supplemental response on May 20, 2005. (*See Supplemental Response of the City Of New York to the Debtor's Objections to the City's Claims*, dated May 20, 2005 (ECF Doc. # 408).) The City continued to argue that the issues raised by the claims objections were being litigated in other proceedings. Although the City ticked off the issues, it did not respond to Best's contention that this Court should determine whether the City served the Postpetition NOVs in violation of the automatic stay or that the Postpetition NOVs actually asserted prepetition claims.

---

[9]    A footnote stated that the "NOVs that are the subject of its Administrative Proof of Claim had a 'Date of Occurrence' before the petition date, but were served after the petition date." (*Id.* at 4 n.9.)

The Court conducted a hearing on June 21, 2005.  Based on its understanding, it identified the following issues that Best contended were not the subject of non-Bankruptcy Court litigation: (1) the ambiguous nature of the NOVs, (2) the City's change of theory before the ECB regarding the justification for the issuance of the NOVs, (3) and the selective enforcement argument that Best had continually raised. (Transcript of H'rg, June 21, 2005, at 15-16 (ECF Doc. # 470).)  The Court then asked Best's counsel if there was "anything else I'm missing here?" and counsel responded: "No, I believe that capsulizes it, Judge."  (*Id.* at 16.)  Counsel did not correct the Court or mention the automatic stay or late claim issues surrounding the Postpetition NOVs.

Best's lawyer conceded that the issues relating to the vagueness of the NOVs and the City's change of theories were raised before the ECB and had been rejected.  (*Id.* at 21-22.)  The Court ruled from the bench that it would abstain from deciding those issues, (*id.* at 57; *2005 Abstention Order* at 14), and reserved decision on the remaining questions.

Following the hearing, the Court received a flurry of letters from the lawyers for each side.  The City wrote first to express its view of the remaining issues pertaining to the allowance of the prepetition and postpetition fines.  (*See Letter from Gabriela P. Cacuci, Esq. to the Court*, dated Oct. 26, 2005 (ECF Doc. # 447).)  Focusing on the June 21, 2005 hearing transcript, the City identified the issues that had been discussed.  The

15

alleged violation of the automatic stay had not been raised during the June 21 hearing, and hence, went unmentioned in the City's letter.

Best's attorney responded, *inter alia*, that the specific bankruptcy issues before this Court included Best's contention that the Administrative Claim sought to collect fines for prepetition violations and the Postpetition NOVs were served in violation of the automatic stay. (*Letter from Charles H. Ryans, Esq. to the Court*, dated Nov. 15, 2005, at 3 (ECF Doc. # 459).) Responding to these arguments for the first time, the City maintained that the operation of the PPTs without a permit continued beyond the petition date and the issuance of the Postpetition NOVs was excepted from the automatic stay under 11 U.S.C. § 362(b)(4). (*Letter from Gabriela P. Cacuci, Esq. to the Court*, dated Nov. 18, 2005, at 3 (ECF Doc. # 461).)

Best got the last word. Its counsel insisted that the continuing nature of the violation was irrelevant; the "Date of Occurrence" listed on the postpetition NOVs determined whether they related to prepetition or postpetition claims, and referring to *Best Payphones I*, implied that the service of Postpetition NOVs violated the automatic stay and was a void act. (*See Letter from Charles H. Ryans, Esq. to the Court*, dated Nov. 21, 2005, at 2 (ECF Doc. # 462).)

The Court rendered its decision on November 29, 2005. (*See 2005 Abstention Order*.) After recounting the history of the dispute and various litigations, (*see id.* at 2-12), the Court focused on the formal objections and the June 21, 2005 hearing and

16

concluded that, of the abstention issues identified by Best's counsel at the June 21,

hearing, only the issue concerning the City's alleged selective enforcement of its

regulations regarding PPTs remained to be decided. (*Id.* at 12-15.) The Court observed

that it was not the Court's job to search through the substantial amount of paper in the

case to identify other issues and quoted the concession by Best's counsel at the June 21

hearing that there were no other issues. (*Id.* at 13 n.8.) The Court ruled that it would

abstain in the exercise of its discretion under 28 U.S.C. § 1334(c)(1) from deciding the

selective enforcement issues because they had been raised in several lawsuits pending

primarily in the United States District Court for the Eastern District of New York. (*Id.* at

15-21.)

The Court also identified the only remaining issue it had to decide before it –

Best's contention that claims should be expunged based on the City's failure to attach

the NOVs to the claims. (*Id.* at 21.) The Court directed Best to file a motion by

December 30, 2005, if it believed that this provided a basis to defeat the claims. (*Id.* at

21-22.) Best never sought reconsideration of the *2005 Abstention Order* or argued that

the Court had overlooked any of its arguments.

### 5.    The City's Motion to Strike

Best also never filed the motion or followed up on its remaining objection in this

Court that the City had failed to attach the NOVs to its claims. In January 2008, over

two years after the *2005 Abstention Order* was issued, the City moved to strike Best's

17

remaining objection.  (*See Motion of New York City Department of Information Technology and Telecommunications to Strike Best's Remaining Objection to its Proof of Claim for Fines*, dated Jan. 18, 2008 (ECF Doc. # 754).)  It argued that Best had failed to comply with the December 30, 2005 deadline for filing a motion and pointed to the ECB's conclusion that the NOVs were valid.  (*Id.* at 5-6.)

Best responded, *inter alia*, that the Postpetition NOVs concerned prepetition violations, were served in violation of the automatic stay and the ECB never decided these issues.  (*Debtor's Memorandum of Law in Response to Motion of New York City Department of Information Technology and Telecommunications to Strike a Particular Objection to Its Proofs of Claim for Fines*, dated Feb. 20, 2008, at 1, 4 (ECF Doc. # 771).)  The City's reply erroneously contended that the ECB had decided and overruled objections based on alleged violations of the automatic stay.  (*Reply of the New York City Department of Information Technology and Telecommunications to Debtor's Response to Strike Best's Remaining Objection to its Proof of Claim for Fines*, dated Feb. 26, 2008, at 2 (ECF Doc. # 772).)  The Court ultimately granted the City's motion on consent and struck Best's objection "that DoITT's proof of claim for Fines was invalid for failure to annex to said claim copies of the Notices of Violation (the 'NOV Objection')."  (*Order Striking "NOV" Objection*, dated Mar. 17, 2008 (ECF Doc. # 776).)

6.      **Interregnum**

Four more years passed without any activity in this Court relating to the City's

claims.  In April 2012, the City's counsel wrote to the Court expressing a concern that

the escrow established under the *Plan* to cover disputed claims was insufficient to pay

the City's claims.  (*Letter from Gabriela P. Cacuci, Esq. to the Court*, dated Apr. 18, 2012, at

2 (ECF Doc. # 850).)  It appears that the issue was resolved because the docket sheet

does not reflect any further activity on this matter.

Another year passed.  In June 2013, Best filed a motion to substitute George

Gilmer, Esq., Best's current attorney, for Larry Glick, Esq., as escrow agent of the

disputed claims fund.  (*Notice of Motion for an Order Approving a Transfer of Escrow

Account to a New Escrow Agent*, dated June 7, 2013 (ECF Doc. # 856).)  The City objected,

but the Court granted the motion on December 30, 2013.  (*See Order*, dated Dec. 30, 2013

(ECF Doc. # 873.)

C.      **The Pending Motions**

On or about March 26, 2014, Chaite served but did not file a motion objecting to

the City's Administrative Claim.  (*See Memorandum of Law in Support of Motion to Dismiss

Administrative Claim of Claimant City of New York Department of Information Technology

and Telecommunications*, dated Mar. 26, 2014 ("*Unfiled Chaite Motion*").) [10]  He followed it

---

[10]      A copy of the *Unfiled Chaite Motion* is annexed as Exhibit A to the *Objection of the City of New York
and Its Agencies to Chaite's Pro Se Motion to Dismiss DoITT's Administrative Claim for Fines*, dated May 15,
2014 (ECF Doc. # 883).)

up with a substantially identical motion [11] that was filed on June 25, 2014.

(*Memorandum of Law in Support of Motion to Dismiss Administrative Claims of Claimant City of New York*, dated June 12, 2014 ("*Filed Chaite Objection*") (ECF Doc. # 889-1).)  The *Filed Chaite Objection* argued three points: (1) the City had failed to prove its Administrative Claim, (2) the attempt to collect what amounted to a prepetition claim violated paragraph 5 of the *Confirmation Order*, and (3) the service of the Postpetition NOVs violated the automatic stay.

Best also filed a motion to disallow the City's claims.  (*See Memorandum of Law in Support of Motion to Deny Pre-Petition and Administrative Claims of Claimant City of New York*, dated June 26, 2014 ("*Best Objection*") (ECF Doc. # 890).)  It objected to the Prepetition Claim and the Administrative Claim on the ground that the City failed to produce credible evidence that a violation had occurred.  (*Id.* at ¶¶ 7-9.)  The balance of Best's objection was virtually identical to the *Filed Chaite Objection*, suggesting that Mr. Gilmer, the author of the *Best Objection*, ghost-wrote the *Filed Chaite Objection* or Chaite ghost-wrote the *Best Objection*.  (*Compare Best Objection* at ¶¶ 10-20 *with Filed Chaite Objection* at ¶¶ 5-15.)

---

[11]  The City compared the *Unfiled Chaite Motion* to the *Filed Chaite Motion* and identified three differences, (*The City Of New York's Comparison of the Two Versions of the Motion to Dismiss Served by Michael Chaite*, dated July 3, 2014 (ECF Doc. # 891)), but only one requires discussion.  The *Unfiled Chaite Motion* objected to the DoITT's Administrative Claim while the title of the *Filed Chaite Objection* directed the objection at the "Claims of the City of New York."  This arguably encompassed the administrative claim filed by the New York City Department of Transportation.  However, the body of the *Filed Chaite Objection* did not mention the DOT claim and ended that "DoITT's Administrative Claim should be dismissed."  (*Filed Chaite Objection* at 6.)  Accordingly, I conclude that the *Filed Chaite Objection* only covers the Administrative Claim.

The City responded.  Citing provisions of the *Plan*, it argued that the Court lacked subject matter jurisdiction to consider the belated claims objections filed nearly twelve years after the confirmation.  (*Objection of the City of New York and Its Agencies to Chaite's Pro Se Motion to Dismiss DoITT's Administrative Claim for Fines*, dated May 15, 2014 ("*City Response*"), ¶¶ 36-43 (ECF Doc. # 885).)

The City also argued that the objections were barred by various doctrines of preclusion including "law of the case," collateral estoppel, and judicial estoppel. Specifically, the City contended that Best had raised the same three arguments in 2005, (*see id.* at ¶¶ 49-51, 55), and the Court had expressly or impliedly rejected these arguments in its *2005 Abstention Order* when it concluded that the only remaining bankruptcy issue to be decided was whether the City's claims should be dismissed because they had not attached the NOVs to its claims.  (*Id.* at ¶¶ 52, 60).  The Court thereafter struck that objection, and the City contended that there were no remaining objections.  (*Id.* at ¶ 52.)

In support of its judicial estoppel argument, the City maintained that Best had taken an inconsistent position on three occasions.  First, its attorney stated that the City had filed a Proof of Administrative Claim on November 13, 2002. (*Id.* at ¶ 66.)  Second, Best had bypassed the requirement to post a bond as a condition to the prosecution of its administrative appeal from the ECB Judgment by successfully arguing that there was sufficient money held in escrow to pay the fines if Best lost.  After the ECB Judgment

21

was affirmed, Best failed to pay it, sought judicial review, lost, and still refused to pay

the ECB Judgment.  If Best had bonded the administrative appeal, the City could have

looked to the bond to pay the ECB Judgment after it prevailed.  (*Id.* at ¶ 67.)  Third, Best

and Chaite should not be permitted to prolong the Eastern District litigation to avoid

the allowance and payment of the City's claims and simultaneously seek to disallow the

City's claims in this Court based on "bankruptcy issues."  (*Id.* at ¶ 68.)  Finally, the City

argued that Chaite was bound to the same extent as Best by the various preclusion

doctrines and lacked standing to object to the City's claims.  (*Id.* at ¶¶ 69-71.)  In

addition, the City cross-moved to enter a final decree and close the case.

The City thereafter filed an amended objection that responded to the *Filed Chaite

Objection* and the *Best Objection*.  *(See (I) Amended Objection of the City of New York

("City") to Chaite's Pro Se Motion(s) to Dismiss the City's Claims, and (II) City's Objection to

Debtor's Motion to Deny the City's Claims for Fines*, dated July 3, 2014 ("*City Amended

Response*") (ECF Doc. # 892).)  The City reiterated the same arguments made in the *City

Response*.  (*Id.* at 4-6.)  It also contended, in essence, that the claims allowance process

did not implicate the discharge or injunction in the *Confirmation Order* but confirmed

that it would not seek to collect from the escrow until the resolution of the Eastern

District proceedings.  (*Id.* at 6-8.)  Finally, the City responded to Best's argument that it

had failed to prove that a violation had occurred, emphasizing that Best relied on the

void decision of the first ALJ and ignored the decision of ALJ Balsam and subsequent

state court proceedings.  These decisions affirmed the ECB Judgment and the

22

prohibition against further challenges to the determination that Best did not have a
franchise based on its failure to file a timely challenge to the January 13 Letter.  (*Id.* at 8-
11.)

Chaite filed a short reply, arguing, *inter alia*, that the Court had subject matter
jurisdiction and the preclusion doctrines asserted by the City did not apply because the
Court had never considered or decided the issues raised in his objection.  (*Reply of
Michael Chaite to Objection and Amended Objection of the City of New York and Its Agencies
to Motions of Michael Chaite and Best Payphones, Inc. to Dismiss DoITT'S Claims*, dated
Aug. 18, 2014 (ECF Doc. # 913).)  Best also filed a reply that contained the same
arguments.   (*Reply of Debtor Best Payphones, Inc. to Objections of the City of New York to
Debtor's Motion Denying the City's Pre-Petition and Administrative Claims*, dated Aug. 27,
2014 (ECF Doc. # 916).)  In response to the preclusion doctrines asserted by the City,
Best suggested that the decision by the New York Court of Appeals did not prevent it
from arguing that it held a franchise.  (*Id.* at 4.) [12]

## DISCUSSION

### A    Subject Matter Jurisdiction

A bankruptcy court may exercise post-confirmation jurisdiction over a
proceeding if the matter has a close nexus to the plan and the plan provides for the

---

[12]    By order dated July 15, 2014, the Court deemed the motions and cross-motions fully briefed and reserved
decision.  (*Order Regarding Pending Motions*, dated July 15, 2014 (ECF Doc. # 896).)  In the interest of a complete
record, the Court will accept the reply briefs.  This moots Best's motion for reconsideration of the July 15 order.
(*See* ECF Doc. # 906.)

23

retention of jurisdiction.  *Ace Am. Ins. Co. v. DPH Holdings Corp.* (*In re DPH Holdings Corp.*), 448 F. Appx 134, 136 (2d Cir. 2011).  Best's and Chaite's motions challenge the Administrative Claim on two general bases.  First, the injunction provisions of Paragraph 5 of the *Confirmation Order* [13] prevent the City from collecting the Administrative Claim even if it is otherwise valid.[14]  (*Filed Chaite Objection* at ¶¶ 11-13; *Best Objection* at ¶¶ 16-18.)  Second, the Administrative Claim should be disallowed because it is based on NOVs that were served in violation of the automatic stay and the underlying fines represent a prepetition claim.  (*Filed Chaite Objection* at ¶¶ 14-15; *Best Objection* at ¶¶ 19-20.)  Since the Administrative Claim could still be allowed as a prepetition claim I read the objection to also contend that the Administrative Claim, which was served after the Prepetition Bar Date, should be disallowed as a late claim.  This interpretation is consistent with the "late claim" issue mentioned in the *2003*

---

[13]     Paragraph 5 of the *Confirmation Order* states:

Except as permitted and contemplated by the Plan, as modified by this Order, all persons are enjoined from commencing or continuing any action, the employment of process, and any other act to collect, recover or offset any Claims against the Debtor that arose prior to the Confirmation Date including, without limitation, directly or indirectly (a) commencing, conducting or continuing in any manner any action of any kind (whether in a judicial, arbitral, administrative or other forum) against the Debtor, any property of the Debtor, any successor of the Debtor, or any direct or indirect transferee of any property of the Debtor, or any property of such transferee, (b) enforcing, levying or attaching, collecting or otherwise recovering, by any manner or means any judgment, award, decree or order against the Debtor, any property of the Debtor, any successor of the Debtor, or any direct or indirect transferee of any property of the Debtor, or any property of such transferee, (c) creating, perfecting or enforcing in any manner, any Lien against the Debtor, any property of the Debtor, any successor of the Debtor, or any direct or indirect transferee of any property of the Debtor, or any property of such transferee or (d) asserting any setoff, right of subrogation or recoupment of any kind against the Debtor, any successor of the Debtor, or any direct or indirect transferee of any property of the Debtor, or any property of such transferee.

[14]     The motions may also be seeking to challenge the Prepetition Claim on this basis.

*Abstention Order* that apparently made its way into the case although never raised formally.

The Court plainly has jurisdiction to entertain the argument that the attempt to collect the claim violates the *Confirmation Order*. The objection obviously has a close nexus to the *Plan,* and the *Plan* reserves jurisdiction "to enforce any orders entered in connection with the Debtor's chapter 11 case including the Confirmation Order." (*Plan* at Art. VIII(g).)

The Court also has jurisdiction to decide the objections directed at the allowance of the City's Administrative Claim. These objections arise in Best's bankruptcy case, and the allowance or disallowance of the Administrative Claim is a core proceeding. 28 U.S.C. § 157(b)(2)(B). The *Plan* provided that all allowed administrative and unsecured claims would be paid in full on the effective date, (Plan at Arts. III, IV), and established an escrow reserve that would be used to satisfy a disputed claim once it became an allowed claim. The escrow cannot be released to the City or Chaite, as the case may be, in accordance with the terms of the *Plan* until the objections to the City's claims are finally determined. The resolution of the objections to the Administrative Claim bears directly on the consummation of the distributions established under the *Plan* as well as the distribution of the disputed claim reserve escrow established under the *Plan*.

Finally, the Plan reserves jurisdiction to resolve the claims objections. Article VIII states in pertinent part:

25

The Court shall retain exclusive jurisdiction for the following purposes:

 (a) to determine all objections to Claims;

. . . .

(c) to determine all Administrative Claims including, without limitation, applications for the allowance of compensation and reimbursement of expenses, provided that applications for allowance of compensation and reimbursement of expenses shall be filed within 60 days after the Confirmation Date;

. . . .

(e) to determine all applications and adversary proceedings pending on the Effective Date or filed or commenced within 60 days thereafter . . . .

Article VIII reserves jurisdiction to determine claims objections without regard to when they are filed, *cf. Hosp. & Univ. Prop. Damage Claimants v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 7 F.3d 32, 34-35 (2d Cir. 1993) (the bankruptcy court lacked subject matter jurisdiction to adjudicate the debtor's objection to a timely filed property damage claim because the plan excluded objections to such claims from the bankruptcy court's post-confirmation jurisdiction). ), and bankruptcy law does not impose a statute of limitations on claims objections. *In re Bryant*, No. 03-11034, 2004 WL 2201259, at *1 (Bankr. S.D. Ga. Mar. 24, 2004) ("No time limit for filing an objection to a claim is stated in that Rule, nor in 11 U.S.C. § 502(a), nor other provisions of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure."); *In re Presque Isle Apartments, L.P.*, 118 B.R. 331, 332 (W.D. Pa. 1990) ("Rule 3007 provides no time limits for filing objections to claims. An objection against a claim in bankruptcy may be lodged at any time during the pendency of the case."); *In re Tesmetges*, 87 B.R. 263, 269 (Bankr. E.D.N.Y. 1988) ("The

trustee may object to any proof of claim right up to the time the case is ready to be

closed in a Chapter 7 case."), *aff'd*, 95 B.R. 19 (E.D.N.Y. 1988).

The City makes several "anti-jurisdiction" arguments that lack merit. First, it

maintains that the identical issues were raised and rejected in the *2005 Abstention Order*

in which the Court held that the resolution of the objections would have little impact on

Best and no impact on the creditors, (*City Response* at ¶ 42), implying that they do not

have a close connection to the case. The City's reliance on the *2005 Abstention Order* is

misplaced. The Court stated that the resolution of the City's non-bankruptcy objections

in the Eastern District would not impact the creditors or the estate. (*2005 Abstention*

*Order* at 16.) That statement was made in the context of a motion seeking permissive

abstention. No one argued that the Court lacked jurisdiction over Best's objections to

the City's claims, and the *2005 Abstention Order* implicitly concluded that the Court had

jurisdiction but decided not to exercise most of it in deference to the pending Eastern

District litigation that raised the same issues. In fact, the resolution of the claims

pending in Eastern District that were the subject of the *2005 Abstention Order* bear

directly on the allowance or disallowance of the City's bankruptcy claims, and are,

therefore, core.

The City also contends, without much amplification, that the objections are

barred by the doctrines of laches and waiver. It states that Best confirmed at the June

21, 2005 hearing that the only remaining bankruptcy objection related to the failure to

27

attach the NOVs to the claims, Best sought to litigate the same objections unsuccessfully

through a motion to withdraw the reference, *see In re Best Payphones, Inc.*, No. 05 Civ.

8561 (RJH), 370 B.R. 532 (S.D.N.Y. 2007), this Court struck the NOV objection in 2008

and, between 2008 and 2014, Best never argued that any other bankruptcy issues

remained undecided.  (*City Response* at ¶ 43.)  The City's arguments regarding Best's

conduct during the case and the Court's prior determinations may be relevant to the

preclusion doctrines invoked by the City and discussed later, but the City does not

explain how they deprive the Court of subject matter jurisdiction.

Similarly, the City also fails to identify any facts supporting its invocation of

laches and waiver.  The party asserting the defense of laches must establish

unreasonable delay or lack of diligence by the other party and show that it has suffered

prejudice as a result of the delay.  *Cayuga Indian Nation of New York v. Pataki*, 413 F.3d

266, 283 (2d Cir. 2005), *cert. denied,* 547 U.S. 1128 (2006); *Thom v. Ashcroft*, 369 F.3d 158,

166 (2d Cir. 2004), *cert. denied*, 546 U.S. 828 (2005); *see Gucci v. Sinatra* (*In re Gucci*), 197 F.

Appx. 58, 60 (2d Cir. 2006) (party asserting laches must show "(1) that he lacked

knowledge that the claim might be asserted against him; (2) that the plaintiff delayed

asserting the claim despite the opportunity to do so; and (3) that he would be

prejudiced if the claim were now allowed to go forward.")

While the approximate twelve year lapse between the filing of the

Administrative Claim and the current motions is unreasonable, the City has not shown

28

that it has been prejudiced.  "Prejudice ensues where the party asserting laches has changed its position in such a way that would not have occurred if the party bringing the claim had not delayed."  *Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996); *Rapf v. Suffolk Cty. Of New York*, 755 F.2d 282, 292 (2d Cir. 1985) ("In order to show that he has been prejudiced, a defendant must show reliance and change of position resulting from the delay.") (quoting *Airco Alloys Div. v. Niagara Mohawk Power,* 430 N.Y.S.2d 179, 187 (N.Y. App. Div. 1980)).  Prejudice also occurs where a party's delay results in the loss of evidence, increased difficulties in discovery or greater opportunity for fraud and collusion.  *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (discussing "prejudice" as a factor on a motion to vacate default).

The City has not pointed to any change in its position or lost evidence during the delay or indicated how the delay has affected its ability to defend against the merits of the objections.  Furthermore, the delay has not affected the City's ability to receive payment on its claim because the necessary funds have been escrowed.  Moreover, allowance and payment must await the completion of the Eastern District proceedings, and the City has represented that it will not attempt to collect its claim until those proceedings have been completed.

The City has also failed to identify facts supporting its claim of waiver.  "Federal common law and New York common law both define waiver as an intentional relinquishment and abandonment of a known right or privilege."  *Chapman v.*

29

*ChoiceCare Long Island Term Disability Plan*, 288 F.3d 506, 510 (2d Cir. 2002); *accord Tencza v. TAG Court Square*, No. 10 Civ. 3752 (PAE); 2013 WL 2449178, at *11 (S.D.N.Y. June 6, 2013). A waiver cannot be lightly presumed. *Gilbert Frank Corp. v. Fed. Ins. Co.*, 520 N.E.2d 512, 514 (N.Y. 1988). It requires a clear manifestation of intent, *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey*, 448 F.3d 573, 585 (2d Cir. 2006), and cannot be created through negligence, oversight or thoughtlessness. *Edrei v. Copenhagen HandelsBank A/S*, No. 90 Civ. 1860 (CSH), 1991 WL 64201, at *11 (S.D.N.Y. Apr. 18, 1991); *Alsens Am. Portland Cement Works v. Degnon Contracting Co.*, 118 N.E. 210, 210 (N.Y. 1917). The burden of proving a waiver rests on the party claiming the waiver. *Price v. Cushman & Wakefield, Inc.*, 808 F. Supp. 2d 670, 705 (S.D.N.Y. 2011); *200 East 87th St. Assocs. v. MTS, Inc.*, 793 F. Supp. 1237, 1251 (S.D.N.Y. 1992).

The City has not pinpointed any facts indicating a *clear* manifestation that Best or Chaite intended to abandon their arguments that the service of the Postpetition NOVs violated the automatic stay or that the Administrative Claim actually constituted a prepetition claim filed after the Prepetition Bar Date. It is true that the defense to the City's claims was never formally asserted in any of Best's objections, and when pressed at the June 2005 hearing, Best's counsel did not identify the automatic stay or late claim issues as issues that the Bankruptcy Court must decide. In fact, he stated that the only remaining bankruptcy issue concerned the failure to attach the NOVs to the claims. The absence of an automatic stay or late claim objection in Best's *Administrative Objection* or *Amended Objection* and counsel's concession led the Court to conclude in the *2005*

30

*Abstention Order* that the only remaining bankruptcy issue involved the failure to attach the NOVs to the claims.  Furthermore, Best never sought reconsideration to argue that I had overlooked its other objections.

Nevertheless, Best had raised these issues in pleadings filed prior to the hearing on the abstention motion in 2005.  (*See Best Abstention Reply* at 4; *Chaite Abstention Declaration* at ¶ 15.)  It also reiterated these arguments after the June 2005 hearing and prior to the issuance of the *2005 Abstention Order*.  (*Letter from Charles H. Ryans, Esq. to the Court*, dated Nov. 15, 2005, at 3).)  In fact, the City replied to these specific contentions, and argued that the service of the Postpetition NOVs was excepted from the automatic stay under 11 U.S.C. § 362(b)(4).  *Letter from Gabriela P. Cacuci, Esq. to the Court*, dated Nov. 18, 2005, at 3.)

Notwithstanding the position that Best's counsel took at the June 2005 hearing, the record does not support the conclusion that Best intended to abandon its argument that the service of the Postpetition NOVs violated the automatic stay or the related argument that the Administrative Claim was an untimely prepetition claim.  Counsel simply overlooked these issues when he made his concession.  Further, the subsequent eight-and-one-half year delay in renewing the arguments does not reflect a clear manifestation of intent to abandon them.

Accordingly, I conclude that the Court has subject matter jurisdiction to determine the issues raised in the objections and proceed to the merits

B.      **The Merits of the Objections**

1.      **The Failure to Prove Violations.**

Relying on the void 2001 decision of ALJ Twomey, Best argues that its PPTs were on the IR and, consequently, there is no legal basis to impose fines for operating the PPTs without a permit. (*Best Objection* at ¶¶ 5, 8.)  ALJ Twomey concluded that Best remained on the IR because the FCRC never acted to revoke its offer of a franchise and the Assistant Corporation Counsel lacked the authority to act on the FCRC's behalf. (*Twomey Decision* at ¶¶ 44-45.)  Best also notes that ALJ Balsam agreed with ALJ Twomey's legal analysis. (*Best Objection* at ¶ 8 (citing *Balsam Decision* at 5).)  Best's argument lacks merit; it ignores ALJ Balsam's contrary conclusion, the New York Court of Appeals decision and evidence on which she based her contrary conclusion, and the subsequent judicial decisions affirming the ECB Judgment.

The *Twomey Decision* was not based on the merits but on the legal conclusion that the Assistant Corporation Counsel lacked the legal authority to disapprove the offer of franchise that the FCRC had made to Best.  In other words, ALJ Twomey concluded that the FCRC, not the Corporation Counsel, had to take further action to disapprove Best and revoke the franchise offer.  Hence, the January 13 Letter could not result in the disapproval of the franchise, and although Best was not a franchisee, it nonetheless remained on the IR and was permitted to operate its PPTs on New York City property.

Ironically, Best finally signed and returned the franchise agreement in May 2000, and commenced an Article 78 proceeding to compel the City to accept the franchise

32

agreement.  The New York Court of Appeals concluded that the January 13 Letter

constituted the City's final and binding agency action and Best failed to challenge it in a

timely manner.  *Best Payphones, Inc. v. Dep't of Info. Tech. & Telecomms. of the City of New

York*, 832 N.E.2d at 40.  In the second ECB proceeding, ALJ Balsam said she agreed with

ALJ Twomey's decision but concluded that the "logical consequence" of the Court of

Appeals' decision was that any claims regarding the effect of the January 13 Letter were

"time-barred and no longer adjudicable [sic]."  (*Balsam Decision* at 6 (citing *EFCO Corp.

v. U.W. Marx, Inc.*, 124 F.3d 394 (2d Cir. 1997).) [15]  The Appellate Division subsequently

upheld the ECB's determination that *res judicata* barred Best from arguing that the

January 13 Letter did not effectively disapprove Best's franchise.  *See Best Payphones, Inc.

v. Envtl. Control Bd. of the City of New York*, 931 N.Y.S.2d at 65.

The City also proved the amount of the fines in the course of the ECB

proceedings.  Relying on the evidence submitted in the first ECB litigation, ALJ Balsam

ruled that the City had proved the violations underlying the twenty-three Prepetition

NOVs and twenty-eight of the Postpetition NOVs and assessed the appropriate fine.

Her decision was affirmed on administrative appeal and by the Appellate Division.

Consequently, and subject to whatever arguments Best is pursuing in the Eastern

District, it lacked a franchise, it operated fifty-one PPTs without authority and the City

---

[15]    In *EFCO*, the Second Circuit concluded that an earlier state court order dismissing a claim based
upon the failure to bring the action before the statute of limitations had expired constituted a final
judgment on the plaintiff's remedy and a dismissal "on the merits" under New York law.  124 F.3d at 397-
98.

holds allowed claims in the amount of the ECB Judgment plus postpetition interest on the prepetition portion of its claim at the annual rate of 9%.

The one remaining issue is whether the City has demonstrated or can demonstrate that the Administrative Claim sets forth a claim for postpetition fines as opposed to prepetition fines, an issue the ECB did not decide.  Best has provided a barely legible copy of one Postpetition NOV that appears to bear a date of violation of August 19, 2001.  (*Best Objection*, Ex. 2.)  Because the issue of the administrative nature of the claim is closely tied to whether the City violated the automatic stay, I deal with these issues together shortly.

### 2.    Violation of the Confirmation Order

The argument that the City is violating paragraph 5 of the *Confirmation Order*, quoted in an earlier footnote, lacks merit.  The injunctive language in paragraph 5 begins with the proviso "[e]xcept as permitted and contemplated by the Plan."  The City is seeking to collect its Administrative Claim from the escrow through the bankruptcy claims allowance process, not outside of the bankruptcy case.  The *Plan* contemplated that the claims allowance process would continue and Best would ultimately pay the City's allowed claim from the escrow fund established under the *Plan*.  Hence, the City is not violating the *Confirmation Order*.

34

### 3.    Violation of the Automatic Stay

The charge that the City violated the automatic stay is based on the allegation

that the City served the Postpetition NOVs to collect prepetition violations.  For the

same reason, Best maintains that the Administrative Claim seeks to recover a

prepetition claim, was filed after the Prepetition Bar Date and is time-barred.  Assuming

that the Postpetition NOVs list prepetition dates of violation, it does not automatically

follow that the City violated the automatic stay.  Best was maintaining unauthorized

PPTs on New York City owned property, and the City arguably had the right to remove

them despite the filing of the bankruptcy petition.  The City contended in an earlier

letter submission that the service of the NOVs, a possible prelude to removal, fell within

the exception to the automatic stay in 11 U.S.C. § 362(b)(4).[16]  The City has also

maintained that the existence of unlicensed PPTs on City property was a continuing

violation, implying that it had the right to serve the Postpetition NOVs and the

prepetition date listed in the NOVs was essentially harmless.

Whatever the merits of the automatic stay objection, the City's contention that

Best and Chaite are precluded from asserting the objections lacks merit.[17]  The City

---

[16]    Under section 362(b)(4), the filing of a bankruptcy petition does not stay an action by a governmental unit "to enforce such governmental unit's or organization's police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's or organization's police or regulatory power."

[17]    The City maintains that the rationale for precluding Best also binds Chaite, its sole shareholder. (*City Response* at ¶¶ 56-57.)  In light of the Court's determination that the City has failed to substantiate its preclusion defenses, it is unnecessary to reach this issue.

invokes law of the case, collateral estoppel and judicial estoppel.  "Under the law of the

case doctrine, a decision on an issue of law made at one stage of a case becomes binding

precedent to be followed in subsequent stages of the same litigation. . . .  This doctrine is

a discretionary rule of practice and generally does not limit a court's power to

reconsider an issue."  *Liona Corp. v. PCH Assocs.* (*In re PCH Assocs.*), 949 F.2d 585, 592

(2d Cir. 1991).  The bar of collateral estoppel, or issue preclusion, "applies only if: (1) the

issues in both proceedings are identical, (2) the issue in the prior proceeding was

actually litigated and actually decided, (3) there was full and fair opportunity to litigate

in the prior proceeding, and (4) the issue previously litigated was necessary to support

a valid and final judgment on the merits."  *Id.* at 593.  Thus, the application of both

doctrines depends on a court's prior determination of an issue against which preclusion

is sought.

Contrary to the City's arguments, this Court never decided that the service of the

Postpetition NOVs was consistent with and did not violate the automatic stay.  It also

never decided that the Administrative Claim was based on postpetition violations.  It

overlooked these issues when it focused on the *Prepetition Objection*, *Administrative*

*Objection,* the *Amended Objection* and counsel's concession at the June 2005 hearing, none

of which mentioned these grounds for disallowance.  Accordingly, law of the case and

collateral estoppel do not apply.

The City's invocation of judicial estoppel also lacks merit.  Judicial estoppel is an

equitable doctrine that "generally prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another

phase." *Zedner v. United States*, 547 U.S. 489, 504 (2006) (internal citations and quotation

marks omitted).  The Supreme Court has outlined several factors to consider when

determining whether judicial estoppel should apply:

> First, a party's later position must be clearly inconsistent with its earlier
> position.  Second, courts regularly inquire whether the party has
> succeeded in persuading a court to accept that party's earlier position. . . .
> A third consideration is whether the party seeking to assert an
> inconsistent position would derive an unfair advantage or impose an
> unfair detriment on the opposing party if not estopped.

*Id*. (quoting *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)).  "Because the rule is

intended to prevent improper use of judicial machinery, judicial estoppel is an equitable

doctrine invoked by a court at its discretion."  *New Hampshire v. Maine*, 532 U.S. at 750

(internal quotation marks and citations omitted).

The City has pointed to three reasons for applying judicial estoppel. First, Best's

counsel stated in the *Administrative Objection* that "DoITT filed a Proof of

Administrative Claim on November 13, 2002, in the amount of $105,789.35." (*City

Response* at ¶ 66.)  The statement is consistent with the description that the City attached

to its Administrative Claim, and does not reflect Best's position that the Administrative

Claim was, in fact, an administrative claim.  Furthermore, the City has not shown that

the Court "accepted" this "position" or that Best gained an advantage in persuading the

37

Court to accept that "position" such that it would be unfair to permit Best and Chaite to now argue that the Administrative Claim was not really an administrative claim.

Second, the City contends that Best's current position is inconsistent with its earlier position that it should not have to post a bond to prosecute an administrative appeal from the ALJ Balsam's decision because funds had been placed in escrow to pay the fines in the event Best lost. (*Id.* at ¶ 67.) The argument implies that (1) Best convinced the ECB to waive the bonding requirement upon the representation that it would pay the fines if it lost the administrative appeal, (2) ECB waived the bonding requirement based on Best's representation, but Best refused to pay the fines after it lost, and (3) had the ECB required Best to bond the appeal, the City could have collected the ECB Judgment from the bond.

Assuming that the facts are as the City implies, and these facts would judicially estop Best from refusing to pay the City immediately from the escrow, the argument is moot. The City has conceded that it will not attempt to collect the fines until the proceedings in the Eastern District are completed. (*City Amended Response* at 7.)

Third, the City argues that Best successfully used the pendency of the Eastern District litigation as a ground to object to the allowance of the City's claims and should be judicially estopped from arguing that this Court can dismiss the Administrative Claim while the Eastern District litigation is still pending. (*Id.* at ¶ 68.) The argument is difficult to fathom. For at least ten years, Best and the City have been litigating issues

38

relevant to Best's objection before the Southern and Eastern Districts of New York, the state courts, this Court and the ECB.  While some of these litigations have been completed, others continue, and all of the issues surrounding the allowance of the Prepetition and Administrative Claims must be resolved before the claim will be allowed and paid.  Nothing prevents Best from pursuing a threshold bankruptcy issue in this Court that may dispose of the need to litigate issues pending in other courts.

Accordingly, Best and Chaite are not barred from objecting to the Administrative Claim on the ground that the service of the Postpetition NOVs violated the automatic stay or contending that the underlying claims for fines are actually prepetition claims that were filed after the Prepetition Bar Date.  In light of this determination, it is not necessary at this time to address the City's contention that Chaite is bound to the same extent as Best by the prior rulings of this and other courts made in connection with litigation between the City and Best.

While Best and Chaite may pursue their objections, the Court cannot decide the objections on the current state of the record because they raise issues that the parties have not fully addressed or addressed at all.  First, as noted, the City has contended that the exception to the automatic stay contained in 11 U.S.C. § 362(b)(4) applies to the service of the Postpetition NOVs.  There may be merit to this position.  Section 23-408(a) of the New York City Administrative Code makes it a misdemeanor to operate a PPT on New York City property without a permit, and subparagraph (i)(1)(aa) authorizes the

39

removal of such PPTs.  If the service of the Postpetition NOVs was a necessary

condition precedent to the removal of the PPTs, the service of the Postpetition NOVs

may fall within the automatic stay exception.  In addition, maintaining an unauthorized

PPT is a continuing violation, and "each day's continuance shall be a separate and

distinct offense."  N.Y.C. ADMIN. CODE § 23-408(c).  Consequently, Best committed

separate postpetition violations subjecting it to postpetition fines.

        Second, it is not clear that the service of the Postpetition NOVs is even necessary

to recover a fine.  Section 23-408(c) of the New York Administrative Code states that

"[a]n owner who violates any provision of this chapter, or any term or condition of a

permit issued pursuant thereto, or any rule promulgated by the commissioner pursuant

thereto shall be liable for a civil penalty of not more than one thousand dollars for each

violation. . . ."  Section 23-408(i)(3) provides:

> The procedures set forth in this subdivision shall be employed by the
> commissioner in addition to or in lieu of the other remedies set forth in
> this section and shall not be construed to limit the power of the
> commissioner to commence a civil action or proceeding before the
> environmental control board, *or to require that the commissioner resort to any
> procedure set forth in this subdivision as a prerequisite to the commencement of
> any such action or proceeding.*

N.Y.C. ADMIN. CODE § 23-408(i) (emphasis added).  The mere violation appears to

trigger the fine, and section 23-408(i)(3) suggests that the City may file a claim for fines

without regard to the procedures specified in section 23-408(i).  Thus, the

Administrative Claim could be subject to allowance even if the Postpetition NOVs were

never issued or were issued improperly.

                                            40

Third, if the Administrative Claim is actually an untimely prepetition claim, *i.e.*, an otherwise allowable claim filed after the Prepetition Bar Date, the objection to its timeliness arguably circumvents the best interest of creditors test imposed under 11 U.S.C § 1129(a)(7). Section 11 U.S.C. § 1129(a)(7) requires a creditor to receive or retain at least as much property under the plan as it would in a hypothetical chapter 7 liquidation. It is the lowest point below which a proposed distribution may not fall, and must be read together with 11 U.S.C. § 726(a), which governs the priority of distribution in a chapter 7 case. *See Kitrosser v. CIT Group/Factoring, Inc.*, 177 B.R. 458, 469 (S.D.N.Y. 1995) ("Section 726 does apply [to a chapter 11 case] through Section 1129."). In a chapter 7 case, late claims must be satisfied in full before equity may receive or retain any property. *See* 11 U.S.C. § 726(a)(3), (6); *ReGen Capital I, Inc. v. Halperin* (*In re U.S. Wireless Data, Inc.*), 547 F.3d 484, 495 (2d Cir. 2008) ("Under this provision [11 U.S.C. § 726(a)], allowed unsecured claims-even if filed out of time-must be paid before equity interest holders are permitted to recover from the debtor's estate."). Consequently, the best interest test hay require the *solvent* chapter 11 plan proponent to satisfy late claims, as the trustee would have to do in a chapter 7 case, before equity can receive or retain property. *See* Scott I. Davidson & Jennifer A. Bender, *Late-Filed Claims are not Always Excluded from the Distribution Party*, AM. BANKR. INST. J. 16, 62 (Jan. 2014) ("In the situation where a debtor is projected to pay unsecured creditors in full plus post-petition interest, the debtor will not be able to object to a proof of claim solely on the grounds that the proof of claim was filed after the bar

41

date."); *cf. In re Sheehan Mem'l Hosp.*, 507 B.R. 802, (Bankr. W.D.N.Y. 2014) (where the

chapter 11 estate is solvent, "the proper remedy for a late filing is not the expungement

of a claim, but its allowance as a tardily filed claim only"); *In re Washington Mutual, Inc.*,

442 B.R. 314, (Bankr. D. Del. 2011) (in applying best interest test to solvent chapter 11

estate, late-filed claims must be paid in full before payment of post-petition interest;  11

U.S.C. § 502(b)(9).[18]

Best was a solvent estate, and Chaite retained his 100% equity interest under the

*Plan.*  Accordingly, even if the Administrative Claim was actually a late prepetition

claim, it might still have to be paid in full, with interest, *see* 11 U.S.C. § 726(a)(5), before

Chaite could receive or retain any property under the *Plan*.  The Court does not decide

this difficult issue now but highlights it for further consideration and appropriate

briefing.

The foregoing discussion is not intended to foreclose other issues that may arise

in connection with Best's and Chaite's position that the City's Administrative Claim

should not be allowed because the service of the Postpetition NOVs violated the

automatic stay or the Administrative Claim is an untimely prepetition claim.

Nevertheless, the Court is concerned that this bankruptcy case has remained open for

more than thirteen years due, in large part, to Best's penchant for piecemeal litigation of

---

[18]     Section 502(b)(9) states, in substance, that the Court shall disallow a claim if "proof of such claim
is not timely filed, except to the extent tardily filed as permitted under paragraph (1), (2), or (3) of section
726(a) of this title or under the Federal Rules of Bankruptcy Procedure. . . ."  Section 502 applies in
chapter 11 cases.  11 U.S.C. § 103(a).

42

issues that are frequently set out, not in formal claims objections, but in pleadings filed in connection with collateral disputes such as abstention or in uninvited letters to the Court. The current claims objections are but one example, and the Court is concerned that it may face new claims objections filed years from now.

Accordingly, the Court will impose a deadline on any further objections, should they exist, to effectuate the disposition of all bankruptcy-related objections in this Court with a view toward entering a final decree as soon as possible. Chaite and Best must, therefore, file any additional objections to the City's claims based on issues that are not pending before the Eastern District of New York within thirty days of the date of this decision. In the event they do not, the Court will not entertain any objections other than the automatic stay and late-filed claim objections discussed in this decision, and Best and Chaite shall be prohibited from filing any further objections or pursuing any further objections in this Court regardless of whether Best believes it raised the issue in the past.

The Court has considered the remaining arguments made by the parties, and to the extent they are not expressly addressed concludes that they lack merit. The parties are directed to contact chambers to schedule a conference after the expiration of the thirty day deadline established in the preceding paragraph to discuss further proceedings. Lastly, in light of the disposition of the objections and the need for further

proceedings in this Court, the City's cross-motion to enter a final decree is denied

without prejudice.

So ordered.

Dated:   New York, New York
          January 14, 2015

/s/ *Stuart M. Bernstein*
STUART M. BERNSTEIN
United States Bankruptcy Judge