UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------X
In re:                                    :
                                          :        Chapter 11 (Confirmed)
        BEST PAYPHONES, INC.,             :        Case no. 01-15472 (SMB)
                                          :
                Debtor.                   :
--------------------------------------------X

## MEMORANDUM DECISION AND ORDER
## DENYING MOTIONS FOR RECONSIDERATION

**A P P E A R A N C E S :**

MICHAEL CHAITE, *Pro Se*
70 Roselle Street
Mineola, NY 1150

ZACHARY W. CARTER
Corporation Counsel of the City of New York
*Attorney for the City of New York and Its Agencies*
100 Church Street, Room 5-223
New York, New York 10007

        Gabriela P. Cacuci, Esq.
                Of Counsel

GEORGE M. GILMER, ESQ.
26 Court Street, Suite 312
Brooklyn, NY 11242

**STUART M. BERNSTEIN**
**United States Bankruptcy Judge:**

        The City of New York (the "City") and Best Payphones, Inc. ("Best") have

separately moved for reconsideration of the Court's decision and order

memorialized in *In re Best Payphones, Inc.*, 523 B.R. 54 (Bankr. S.D.N.Y. 2015)

("*Decision*").  (*See The City of New York's Motion for Reconsideration of the*

*Court's January 14, 2015 Memorandum Decision*, dated Jan. 28, 2015 ("*City*

*Reconsideration Motion*") (ECF Doc. # 929); *Notice of Motion by Debtor Best*

*Payphones for Reconsideration of the Court's Memorandum Decision and Order Dated January 14, 2015*, dated Jan. 28, 2015 and annexed *Declaration of George M. Gilmer*, dated Jan. 28, 2015 (ECF Doc. # 930).)  Best and Michael Chaite, Best's sole shareholder, have also moved for reconsideration of the Court's *Memorandum Decision and Order Denying Motion for Stay or an Extension*, dated February 10, 2015 ("*February 10 Order*") (ECF Doc. # 935), described below.  (*See Notice of Motion by Debtor Best Payphones for Reconsideration of the Court's Memorandum Decision and Order Dated February 10, 2015*, dated Feb. 24, 2015 (ECF Doc. # 940)); *Declaration of Michael Chaite*, dated Feb. 24, 2015 (ECF Doc. # 942).)

This decision will first address the *City Reconsideration Motion*, which primarily concerns its claims of waiver and laches, and then deal with Best's and Chaite's reconsideration motions.  For the reasons that follow, all of the motions are denied.

## BACKGROUND

The factual background to this fourteen year old case is discussed at length in the *Decision.*  The Court assumes familiarity with the *Decision*, particularly the history of litigation between the City and Best and limits the discussion to the facts relevant to the motions before it.

Prior to the filing of this chapter 11 case, Best operated public pay telephones ("PPTs") in various locations throughout the City of New York.  After Best lost the right to operate the PPTs on City-owned property, the City began

2

issuing Notices of Violation ("NOVs"), each carrying a $1,000 penalty. Between May 8 and May 10, 2000, the City issued twenty-three NOVs (the "Prepetition NOVs") charging Best with operating PPTs without a permit. After Best filed its chapter 11 case on October 23, 2001, the City issued thirty-six additional NOVs that were served postpetition (the "Postpetition NOVs"), but Best and Chaite argue that the Postpetition NOVs related to prepetition violations. The City subsequently filed prepetition and administrative claims corresponding to the Prepetition and Postpetition NOVs, and in 2002, Best filed objections to the City's claims.

While those objections (as well as other litigation) were pending, Best confirmed the *Third Amended Plan of Reorganization Jointly Proposed by Best Payphones, Inc., Debtor and Debtor-in-Possession, and Michael Chaite,* dated October 8, 2002 ( the "*Plan*") (ECF Doc. # 155) on December 26, 2002. (*See Order Confirming Third Amended Plan of Reorganization Jointly Proposed by Best Payphones, Inc., Debtor and Debtor-In-Possession, and Michael Chaite, Dated October 8, 2002, as Modified,* dated Dec. 26, 2002 ("*Confirmation Order*") (ECF Doc. # 219).) The *Plan* left all classes unimpaired, called for the payment of administrative claims on the Effective Date and provided that allowed unsecured claims would be paid in full on the Effective Date together with postpetition interest computed at the annual rate of 9%. Finally, Chaite would retain his 100% equity interest in Best. (*Plan* at Art. III.) The *Plan* also provided that the money needed to cover disputed claims would be held in escrow and paid to the creditor, to the extent the claim was allowed, or to Best

or Chaite, as the case might be, to the extent the claim was disallowed.  (*See Plan* at Arts. V, VII.)  George Gilmer, Esq., Best's current attorney, is presently holding roughly $76,000 in escrow.

The City's claims are the only remaining disputed claims.  During the years following confirmation, Best and the City litigated the legitimacy of the NOVs and the allowability of the City's claims before the New York Environmental Control Board ("ECB"), the New York state courts, this Court and the United States District Courts for the Southern and Eastern Districts of New York.  Most of the litigation was pending before the United States District Court for the Eastern District of New York (the "Brooklyn Court") and concerned various challenges to the City's actions under the Constitution and the Telecommunications Act of 1996 ("TCA").  Best also tried to raise the same Constitutional and statutory claims in this Court, but I abstained from deciding those claims in favor of the Brooklyn Court and also abstained from deciding issues before the ECB regarding charges that the City had failed to follow its own regulations in issuing the NOVs.

The Court retained the bankruptcy-related issues for itself.  By 2008, it appeared that the litigation before this Court was complete, and the only outstanding issues relating to the allowance of the City's claims were those pending before the Brooklyn Court.

## A.    The 2014 Objections

In March 2014, Chaite and Best initiated a new round of objections to the City's claims (collectively, the "2014 Objections").  Among other things, Best and Chaite argued that the Postpetition NOVs actually related to prepetition violations.  As a consequence, they were served in violation of the automatic stay, (*Memorandum of Law in Support of Motion to Dismiss Administrative Claim of Claimant City of New York Department of Information Technology and Telecommunications,* dated Mar. 26, 2014[1] ("*Chaite Unfiled Motion*"), at 5 (ECF Doc. # 883-1); *Memorandum of Law in Support of Motion to Dismiss Administrative Claims of Claimant City of New York,* dated June 12, 2014 ("*Chaite Filed Motion* "), at ¶¶ 4, 14 (ECF Doc. # 889–1); *Memorandum of Law in Support of Motion to Deny Pre–Petition and Administrative Claims of Claimant City of New York,* dated June 26, 2014 ("*Best Motion* "), at ¶¶ 6, 19-20 (ECF Doc. # 890)), and reflected prepetition claims that were filed after the bar date. (*Chaite Unfiled Motion* at 2; *Chaite Filed Motion* at ¶¶ 3, 9; *Best Motion* ¶ 6, 14.) These two aspects of the objections – that the Postpetition NOVs were issued in violation of the automatic stay and the City's administrative claim was, in reality, a prepetition claim filed after the bar date – are sometimes referred to collectively as the "Postpetition NOV Issues."

---

[1]    The Department of Information Technology and Telecommunications, or DoITT, is the City agency responsible for administering the PPT regulations.

The City filed two responses to the 2014 Objections. It initially answered the *Chaite Unfiled Motion*. (*Objection of the City of New York and Its Agencies to Chaite's Pro Se Motion to Dismiss DoITT's Administrative Claim for Fines*, dated May 15, 2014 ("*City Response*"), at ¶¶ 36-43 (ECF Doc. # 885).)[2] The *City Response* argued at length that the Court lacked subject matter jurisdiction to consider the 2014 Objections and the objections were barred by various doctrines of preclusion, including law of the case, collateral estoppel, judicial estoppel, waiver and laches. (*Id.*) The City did not take issue with the assertion that the Postpetition NOV's pertained to prepetition violations; the City only argued that Best and Chaite were now precluded from litigating the question.

The City thereafter filed an amended objection that responded to the *Chaite Filed Motion* and the *Best Motion*. (*See (I) Amended Objection of the City of New York ("City") to Chaite's Pro Se Motion(s) to Dismiss the City's Claims, and (II) City's Objection to Debtor's Motion to Deny the City's Claims for Fines*, dated July 3, 2014 ("*City Amended Response*") (ECF Doc. # 892).) The City expressly acknowledged arguments made by Chaite that its administrative claim should be stricken because it was a prepetition claim and that the service of the Postpetition NOV's violated the automatic stay. (*Id.* at 4.) The amended response incorporated the *City Response* by reference, and reiterated its jurisdictional objection and its argument that Chaite's and Best's "Motions are

---

[2]        The *Chaite Unfiled Motion* was attached as Exhibit A to the *City Response*.

barred by (a) the law of the case doctrine (*see* City's Objection at pp. 17-22); (b)

the collateral estoppel doctrine and/or *res judicata* (*see* City's Objection at pp.

23-25); (c) the judicial estoppel doctrine (*see* City's Objection at pp. 26-29) and,

with respect to Chaite, lack of standing to litigate Best's objections to claims

(*see* City's Objection at pp. 30)." (*Id.* at 2-3.)  The *City Amended Response* did

not mention waiver or laches.

The City also cross-moved for the entry of a final decree.  (*Cross-Motion of

the City of New York and its Agencies for an Order Directing Entry of Final

Decree*, dated May 15, 2014 ("*Cross-Motion*") (ECF Doc. # 884).)

## B.    The Hearing on the 2014 Objections

In July 2014, the Court received a series of letters in which the parties

argued over adjournment requests and adjournment dates.  Concluding that

oral argument would not assist the Court, I issued an order on July 15, 2014,

stating that the pending motions were fully briefed, and there would be no oral

argument.  (*Order Regarding Pending Motions*, dated July 15, 2014 ("*July 15

Order*") (ECF Doc. # 896).)  In fact, neither Best nor Chaite had filed a reply to

the *City Response* or the *City Amended Response*.  Best moved for

reconsideration of the *July 15 Order*, explaining that it had always intended to

oppose the *Cross-Motion* and file a reply in connection with its objection to the

City's claim.  (*Declaration of George M. Gilmer*, dated July 29, 2014, at ¶ 3 (ECF

Doc. # 906).)

One threshold issue raised by the City in its responses suggested that the Court lacked post-confirmation jurisdiction to determine the 2014 Objections.  Chaite and Best had styled their pleadings as motions to dismiss the City's claims.  Art. VIII(e) limited the Court's post-confirmation jurisdiction "to determine all applications and adversary proceedings pending on the Effective Date or filed or commenced within 60 days thereafter."  The 2014 Objections were filed more than sixty days after the Effective Date, and Art. VIII(e) appeared to deprive the Court of jurisdiction.  Believing that oral argument might assist the Court on this *narrow* issue, the Court issued an order scheduling oral argument limited to two questions:

> 1. Does this Court have subject matter jurisdiction to determine the Motions in light of the provision of the debtor's confirmed plan under which the Court retained jurisdiction "to determine all applications and adversary proceedings pending on the Effective Date or filed or commenced within 60 days thereafter"?
>
> 2. If the Court denies the Motions for any reason, on what basis should the Court decline to grant the Cross-Motion?

(*Order Scheduling Oral Argument*, dated Aug. 4, 2014 ("*August 4 Order*") (ECF Doc. # 908).)

Oral argument was scheduled for August 19, 2014.  By letter dated August 12, 2014, Chaite asked for an adjournment, explaining that the argument date conflicted with his travel plans.  (*Letter from Michael Chaite to the Court*, dated Aug. 12, 2014 (ECF Doc. # 909).)  The Court denied the request for the reasons stated in a memorandum endorsement.  (*Id.*)  One day later, George Gilmer, Esq., Best's attorney, also asked for an adjournment.

8

(*Letter from George M. Gilmer, Esq. to the Court*, dated Aug. 15, 2014 (ECF Doc. # 910).)  His letter referred to a "medical issue" that rendered him unable to appear and stated that documentation of his illness would be provided, upon my request, for *in camera* review.  (*Id.*)  The Court denied Gilmer's request in a memorandum endorsement based on the absence of credible medical evidence explaining why he could not attend the hearing or an explanation as to why he had not requested an adjournment until after the Court denied Chaite's adjournment request.  (*Memorandum Endorsement and Order*, dated Aug. 18, 2014 (ECF Doc. # 911).)  The Court heard nothing further from either Chaite or Gilmer regarding an adjournment.

The Court heard oral argument on August 19, 2014.  The City's attorney appeared in person and Chaite appeared by telephone.  Gilmer did not participate.  The Court stated that Gilmer had not provided the medical evidence referred to in the memorandum endorsement denying his adjournment request and would proceed without him.  (Transcript of 8/19/14 Hrg. ("Tr."), at 3:20-25 (ECF Doc. # 931).)

During the argument, Chaite mentioned that he had emailed a reply brief.[3]  (Tr. at 4:22-24.)  The Court advised Chaite that it had not requested additional briefing and would not consider it.  (*Id.* at 4:24-5:5.)  Chaite also

---

[3]       *See Reply of Michael Chaite to Objection and Amended Objection of The City of New York and Its Agencies to Motions of Michael Chaite and Best Payphones, Inc. to Dismiss DoITT'S Claims*, dated Aug. 18, 2014 ("*Chaite August 18 Reply*") (ECF Doc. # 913).

tried to argue the merits of the Postpetition NOV Issues but was steered back to the issues identified in the *August 4 Order*.  (*See id.* at 6:9-8:12.)  At the conclusion of oral argument, the Court reserved decision.

Following the hearing, the Court received more pleadings and letters from the parties.  In an August 27, 2014 letter to the Court, Gilmer sought leave to file Best's reply to the City's opposition to the claim objections,[4] explaining that he had been ill and under a doctor's care and could not file the reply by August 18, 2014.  (*Letter from George M. Gilmer, Esq. to the Court*, dated Aug. 27, 2014 (ECF Doc. # 915).)  The City did not file opposition to Best's motion for reconsideration or its request for leave to file a reply, and the Court ultimately accepted Best's (and Chaite's) reply in the interest of a complete record on the underlying claims objections.  *Decision*, 523 B.R. at 67 n. 12.

In addition, Chaite filed yet another claims disallowance motion on October 20, 2014, invoking a different subparagraph of Art. VIII of the *Plan*. Art. VIII(c) authorized the Court "to determine all Administrative Claims including, without limitation, applications for the allowance of compensation and reimbursement of expenses, provided that applications for allowance of compensation and reimbursement of expenses shall be filed within 60 days

---

[4]    *See Reply of Debtor Best Payphones, Inc. to Objections of the City of New York to Debtor's Motion Denying the City's Pre-Petition and Administrative Claims*, dated Aug. 27, 2014 ("*Best August 27 Reply*") (ECF Doc. # 916).

after the Confirmation Date." Chaite contended that the City had failed to file

an application for payment of its administrative claim within sixty days of the

Confirmation Date. (*Memorandum of Law in Support of Motion to Disallow the*

*Pre-Petition and Administrative Claims of Claimant City of New York and*

*Permitting the Release of Funds Held in Escrow by Debtor's Attorney*, dated Oct.

16, 2014, at 4 (ECF Doc. # 918).) Consequently, the Court had no jurisdiction

to allow the City's claims, and the escrow funds should be released,

presumably to Chaite. (*Id*.) The City opposed the new motion on several

grounds and requested that the funds be transferred to the City to be held in

escrow. (*See Response of the City of New York (the "City") to Pro Se Motion Filed*

*by Michael Chaite to Disallow the City's Claims and Release the Funds Held by*

*Best's Counsel in Escrow on Account of the City's Disputed Claims and City's*

*Motion to Transfer Escrow Funds to City's Counsel as Escrow Agent Under the*

*Plan*, dated Oct. 23, 2014, at ¶ 24 (ECF Doc. # 919).) The Court denied

Chaite's new motion, *In re Best Payphones Inc.*, No. 01-15472, 2014 WL

5507618, at *2-3 (Bankr. S.D.N.Y. Oct. 31, 2014), and rejected the City's

request regarding the transfer of the escrow funds. *Id.* at *3.

## C.    The *Decision*

The Court issued its 44-page *Decision* on January 15, 2015. The

*Decision* first recounted the long and complex history of the case and the

various litigations between the parties. 523 B.R. at 57-67. Deciding the issue

argued on August 19, 2014, the Court then concluded that it had subject

matter jurisdiction because neither Art. VIII(c) nor (e) controlled.

11

Notwithstanding their assigned titles, the 2014 Objections were claims

objections, and Art. VIII(a) of the *Plan* retained post-confirmation to determine

objections to claims without regard to when they were filed.  *Decision*, 523 B.R.

at 68-69.

To the extent relevant to the City's motion for reconsideration, the Court

also rejected the City's argument that the doctrines of waiver and laches barred

consideration of the Postpetition NOV Issues.  The City contended that Best

had filed the amended objection to its claim for fines in 2003, sought to

relitigate the same objections in its unsuccessful motion to withdraw the

reference in 2005, all of the litigation between the City and Best had taken

place in the Brooklyn Court since 2008, and finally, Best conceded in 2013

that there were no remaining disputes pending in this Court.  (*City Response* at

¶ 43.)  The laches and waiver arguments were contained in this one paragraph.

The *Decision* concluded that the City had failed to demonstrate laches or

waiver.  "The party asserting the defense of laches must establish unreasonable

delay or lack of diligence by the other party and show that it has suffered

prejudice as a result of the delay." 523 B.R. at 69 (citations omitted).  Although

the City had satisfied the first prong, it had failed to show legal prejudice.  *Id.*

at 69-70.  It did not point to any change in its position or loss of evidence or

indicate how the delay would affect its ability to defend the claims objections

on the merits.  In addition, the delay did not affect the City's ability to receive

payment because the money required to pay its claims, should they be allowed,

12

was held in escrow, and the claims could not be allowed and paid, if ever, until

the completion of the litigation in the Brooklyn Court.  *Id.* at 70.  In fact, the

City had represented that it would not attempt to collect its claims until the

completion of that litigation.  *Id.*

The Court also concluded that the City had failed to support its claim of

waiver.  The party asserting waiver must demonstrate a clear manifestation of

an intent to relinquish and abandon a known right.  *Id.*  A waiver could not be

lightly presumed and did not result from negligence, oversight or carelessness.

*Id.*  The Court recounted the evidence supporting a claim of waiver:

> [T]he defense to the City's claims was never formally asserted in
> any of Best's objections, and when pressed at the June 2005
> hearing, Best's counsel did not identify the automatic stay or late
> claim issues as issues that the Bankruptcy Court must decide.  In
> fact, he stated that the only remaining bankruptcy issue concerned
> the failure to attach the NOVs to the claims.  The absence of an
> automatic stay or late claim objection in Best's *Administrative
> Objection* or *Amended Objection* and counsel's concession led the
> Court to conclude in the *2005 Abstention Order* that the only
> remaining bankruptcy issue involved the failure to attach the
> NOVs to the claims.  Furthermore, Best never sought
> reconsideration to argue that I had overlooked its other objections.

*Id.*

Other evidence, however, showed that Best and/or Chaite had raised the

Postpetition NOV Issues at various times over the years:

> Nevertheless, Best had raised these issues in pleadings filed prior
> to the hearing on the abstention motion in 2005.  (See *Best
> Abstention Reply* at 4; *Chaite Abstention Declaration* at ¶ 15.)  It
> also reiterated these arguments after the June 2005 hearing and
> prior to the issuance of the *2005 Abstention Order.* (*Letter from
> Charles H. Ryans, Esq. to the Court,* dated Nov. 15, 2005, at 3).)  In
> fact, the City replied to these specific contentions, and argued that
> the service of the Postpetition NOVs was excepted from the

automatic stay under 11 U.S.C. § 362(b)(4).  *Letter from Gabriela P. Cacuci, Esq. to the Court,* dated Nov. 18, 2005, at 3.)

*Id.* at 71.  The Court concluded in light of this evidence that the City had failed to establish a *clear* manifestation of Best's or Chaite's intention to waive the Postpetition NOV Issues.  *Id.*

The Court then turned to the merits.  It rejected Best's and Chaite's argument that the City had failed to prove that Best operated the PPT's in violation of the City's regulations or that the City had violated the Confirmation Order by trying to collect its administrative claim.  *Id.* at 71-72.  The Court also identified several questions relating to the Postpetition NOV Issues, and concluded that it could not decide those issues on the present state of the record.  *Id.* at 73-76.  Finally, given Best's and Chaite's penchant for piecemeal litigation over the years, the Court imposed a thirty day deadline to submit any additional objections to the City's claims that were not pending before the Brooklyn Court.  *Id.* at 76.  In light of the disposition and the need for further proceedings, the Court denied the *Cross-Motion* without prejudice.  *Id.*

**D.    The City Reconsideration Motion**

The *City Reconsideration Motion* identifies three reasons to reconsider the *Decision.*  First, it contends that it was blindsided by the Court's consideration of the *Chaite August 18 Reply* and the *Best August 27 Reply* and denied due process.  (*See City Reconsideration Motion* at 2-6.)  It argues that the *July 15 Order* stated that the matter was fully briefed and decision was reserved, but the Court then "reversed itself" and scheduled oral argument for August 19,

14

2014 on the two limited questions described earlier.  Despite the *July 15 Order*,
Chaite sent the *Chaite August 18 Reply* to chambers in the earlier hours of
August 19, 2014.  As a result, "[t]he City appeared at oral argument without
knowledge of, or an opportunity to review or respond to Chaite's Reply." (*City
Reconsideration Motion* at 4.)  In addition, although the Court told Chaite it
would not consider Chaite's reply and rejected Gilmer's excuse for not
appearing at the argument,[5] (*id.*; *see also* Tr. at 3:20-25), it nevertheless heard
Chaite's argument on the merits, and "*the City did not have an opportunity to
respond.*" (*City Reconsideration Motion* at 5) (emphasis in original).)  Moreover,
the *Chaite August 18 Reply* and the *Best August 27 Reply* "became central to
the Decision," (*id.*), and in fact, the Court never would have focused on the
Postpetition NOV Issues but for the *Chaite August 18 Reply*. (*Id.* at 20 ("It was
this Reply, emailed to Chambers in the morning of the argument, that made
the Court focus on the Issues of late filed claim and violation of the automatic
stay and go beyond the limited scope of the argument (of subject matter
jurisdiction) outlined in its August 4, 2014 Order.").)  The consideration of the
replies as well as any documents filed in violation of the *July 15 Order* and the
*August 4 Order* was error, but at a minimum, if the Court was going to consider
these documents, the City should have been informed of the Court's intention
and given the opportunity to respond.  (*Id.* at 5-6.)

---

[5]     Oddly, only one page earlier the City complained that "Mr. Gilmer did not appear at oral
argument but the Court made no mention of this fact, nor chastised counsel in any way." (*City
Reconsideration Motion* at 3; *see also id. at 11.*)

Second, the *City Reconsideration Motion* challenges the Court's
conclusion that the City failed to show a clear manifestation of Best's and
Chaite's intention to abandon the Postpetition NOV Issues.  (*Id.* at 6-20.)  It
contends that the Court overlooked certain facts that supported the City's
waiver argument.  Most of the "overlooked facts" recount the history that was
set forth in the *Decision*, including instances in 2003, 2005, 2007 and 2008
when Best failed to raise the Postpetition NOV Issues in its original or amended
claims objections, its representations to the Court that omitted the Postpetition
NOV Issues as issues that remained to be decided, and the long delay in
asserting the objections formally despite the Court's "invitation" years earlier to
do so.

The *City Reconsideration Motion* also identified two facts that the *Decision*
did not mention.  During a hearing on July 24, 2003, Best's counsel asserted
that the City's administrative claim was really a prepetition claim that should
be expunged as a late claim.  (*City Reconsideration Motion*, Ex. D, at p. 20 of
48.)  The Court asked why Best had not made that motion, and an unidentified
speaker (possibly Chaite) responded, "I believe that it is part of our objection."
(*Id.*, Ex. D, at p. 21 of 48.)  The Court expressed frustration with the opacity of
Best's lengthy claims objections, and another Best attorney stated that this
was why Best wanted to "redo" its objections to the later claims.  (*Id.*)  The City
argues that Best never accepted the Court's "invitation" to file an amended
objection to the administrative claim on the ground that the claim was filed
after the bar date.

The City also argues that the *Decision* failed to consider that Best's appeal from the *Opinion and Order Regarding Motion for Discretionary Abstention,* dated Nov. 29, 2005 ("*2005 Abstention Order*") (ECF # 466)) was dismissed by the District Court for failure to prosecute. The events leading up to the *2005 Abstention Order* are discussed at length in the *Decision. See* 523 B.R. at 62-65. The order resulted from the Court's effort to identify the remaining claims objections that were not the subject of litigation in the Brooklyn Court. The City argued that all of the issues were pending there save one: Best's contention that the City's claims should be expunged because the City had not attached the corresponding NOVs to the claims. *Id.* at 62-63. Best responded, identifying, among other issues, that "the Bankruptcy Court is the proper forum for determination of DoITT's violation of the automatic stay by prosecuting prepetition NOVs after the filing date of Best's bankruptcy petition, an issue raised in no other proceeding." *Id.* at 63 (quoting *Reply to the Response of the New York City Department of Information Technology and Telecommunications ("DoITT") and the New York City Department of Transportation ("DOT") to the Debtor's Objections to DoITT's and DOT's Proofs of Claim,* dated Mar. 30, 2005, at 4 (ECF Doc. # 394).)

During a June 21, 2005 hearing, the Court identified what it understood to be Best's list of issues that were not the subject of litigation in other courts. The list did not include the Postpetition NOV Issues. I asked Best's counsel if I had missed anything, and he responded that the list was complete. The parties traded more correspondence following the hearing, and Best again raised the

17

Postpetition NOV Issues as specific bankruptcy issues pending before the

Court.  Focusing on counsel's concession at the hearing and observing that "it

was not the Court's job to search through the substantial amount of paper in

the case to identify other issues," the Court concluded in the *2005 Abstention*

*Order* that the only remaining issue for the Court related to the failure to

attach the NOVs to the claims and abstained as to the other issues discussed

at the hearing.  *Id.* at 64.

The *Decision* did not mention that Best had appealed from the *2005*

*Abstention Order* or that its appeal had been dismissed for failure to prosecute.

The *City Reconsideration Motion* argues that the dismissal of the appeal (as well

as the July 24, 2003 "invitation" that Best ignored) mandated a finding of

waiver.[6]

Third, the *City Reconsideration Motion* challenges the Court's conclusion

that it was unnecessary to decide Chaite's standing at that time.  (*Id.* at 20-21.)

This issue is discussed in more detail below.

---

[6]      *See City Reconsideration Motion* at 14 ("The City contends that Best's failure to perfect
this appeal of the 2005 Abstention Order, which order failed to identify the Issues it now claims
have survived, constitutes a knowing waiver and abandonment of those two Issues."); 15 ("The
Court's 2005 Abstention Order makes no mention of the Issues yet Best and Chaite made the
decision not to perfect the appeal from the 2005 Abstention Order.  This was a deliberate act. .
. ."); 15 ("The Court did not consider the July 24, 2003 transcript of proceedings, nor Best's
appeal and failure to prosecute the appeal from the 2005 Abstention Order."); 19 ("[Best,] most
importantly, failed to perfect the 2006 Appeal from that order, in which Best could have fully
litigated the Issues. This certainly shows lack of due diligence.").

## DISCUSSION

Local Bankruptcy Rule 9023-1(a), Bankr. S.D.N.Y.R. 9023-1(a), governs

motions for reargument,[7] and imposes the same standards as motions to alter

or amend judgments under FED. R. CIV. P. 59(e).  *See In re Bressler*, No. 06-

11897, 2007 WL 951661, at *1 (Bankr. S.D.N.Y. Mar. 27, 2007); *cf. Greenwald*

*v. Orb Commc'ns & Mktg., Inc.*, No. 00 Civ. 1939 (LTS), 2003 WL 660844, at *1

(S.D.N.Y. Feb. 27, 2003) ("The standards governing motions to alter or amend

judgments pursuant to Rule 59(e) and motions for reconsideration or

reargument pursuant to Local Rule 6.3 are the same.").[8]  "[T]he movant must

show that the court overlooked controlling decisions or factual matters 'that

might materially have influenced its earlier decision.'"  *In re Best Payphones,*

*Inc.*, No. 01-15472 (SMB), 2008 WL 2705472, at *3 (Bankr. S.D.N.Y. July 3,

2008) (quoting *Anglo Am. Ins. Grp., P.L.C. v. CalFed Inc.*, 940 F. Supp. 554, 557

(S.D.N.Y. 1996)); *accord Banco de Seguros del Estado v. Mut. Marine Offices,*

*Inc.*, 230 F. Supp. 2d 427, 428 (S.D.N.Y. 2002), *aff'd*, 344 F.3d 255 (2d Cir.

---

[7]     Local Bankruptcy Rule 9023-1(a) states:

        A motion for reargument of a court order determining a motion shall be
served within fourteen (14) days after the entry of the Court's order determining
the original motion, or in the case of a court order resulting in a judgment,
within fourteen (14) days after the entry of the judgment, and, unless the Court
orders otherwise, shall be made returnable within the same amount of time as
required for the original motion.  The motion shall set forth concisely the
matters or controlling decisions which counsel believes the Court has not
considered.  No oral argument shall be heard unless the Court grants the
motion and specifically orders that the matter be re-argued orally.

[8]     Local Bankruptcy Rule 9023-1(a) is an adaptation of District Court's Civil Rule 6.3.  *See*
*In re Interbank Funding Corp.*, No. 07-1482 (BRL), 2007 WL 2080512, at *2 n.5 (Bankr.
S.D.N.Y. July 19, 2007); *Family Golf Ctrs., Inc. v. Acushnet Co. (In re Randall's Island Family*
*Golf Ctrs., Inc.)*, 290 B.R. 55, 61 n.4 (Bankr. S.D.N.Y. 2003); *see also* Local Bankruptcy Rule
9023-1 cmt.

2003); *Griffin Indus., Inc. v. Petrojam, Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999); *Farkas v. Ellis*, 783 F. Supp. 830, 832–33 (S.D.N.Y. 1992), *aff'd,* 979 F.2d 845 (2d Cir. 1992). "Alternatively, the movant must demonstrate the need to correct a clear error or prevent manifest injustice." *Griffin Indus.*, 72 F. Supp. 2d at 368 (internal quotation marks and citations omitted); *accord Banco de Seguros del Estado*, 230 F. Supp. 2d at 428.

"The rule permitting reargument is strictly construed to avoid repetitive arguments on issues that the court has already fully considered." *Best Payphones, Inc.*, 2008 WL 2705472, at *3; *accord Griffin Indus.*, 72 F. Supp. 2d at 368; *Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 65 (S.D.N.Y. 1994); *Farkas*, 783 F. Supp. at 832. "Reconsideration should not be granted where the moving party seeks solely to relitigate an issue already decided; in addition, the moving party may not 'advance new facts, issues or arguments not previously presented to the Court.'" *Reich v. Lopez*, No. 13–CV–5307 (JPO), 2015 WL 1632332, at *1 (S.D.N.Y. Apr. 13, 2015); *Christoforou v. Cadman Plaza N., Inc.,* No. 04 Civ. 8403 (KMW), 2009 WL 723003, at *7 (S.D.N.Y. Mar.19, 2009) (quoting *Shamis v. Ambassador Factors Corp.,* 187 F.R.D. 148, 151 (S.D.N.Y. 1999)). The decision to grant or deny reargument lies within the sound discretion of the court. *Reich*, 2015 WL 1632332, at *1; *SEC v. Treadway*, 354 F. Supp. 2d 311, 313 (S.D.N.Y. 2005); *Shamis*, 187 F.R.D. at 151.

**A.     The Due Process/Fairness Claim**

The City's due process argument centers on Court's consideration of the *Chaite August 18 Reply* and the *Best August 27 Reply* despite the *July 15 Order*, which said that the record was complete and decision was reserved, and the Court's statement at the August 19 hearing that it would not consider the *Chaite August 18 Reply*. According to the City, the Chaite reply in particular focused the Court on the Postpetition NOV Issues, yet the City never had the opportunity to respond. The argument mischaracterizes the record and ignores the City's own submissions.

To begin with, the August 19 hearing was scheduled to hear argument on a limited threshold issue of whether the objections were filed too late under Art. VIII(e) of the *Plan*. It was not an argument on the other issues which were decided on submission per the *July 15 Order*, and when Chaite tried to argue the merits of the Postpetition NOV Issues, the Court refocused him on the jurisdictional issue that it had identified in the *August 4 Order*. The jurisdictional issue was the reason for the hearing but was not the only issue raised by the 2014 Objections.

Furthermore, the Court did not consider or credit the *Chaite August 18 Reply* on the jurisdictional issue. Chaite argued without elaboration that the Court had subject matter jurisdiction over the motions to disallow the City's claims and cited to several subparagraphs in Art. VIII of the *Plan*, including subparagraph (a). (*Chaite August 18 Reply* at 2-3.) He then argued that each

21

subparagraph in Art. VIII was distinct, the sixty day limitation appeared in only two subparagraphs ((c) and (e)), and accordingly, the other subparagraphs (Chaite referred to (h), (j), (k) and (l)) were not subject to a sixty day limitation. (*Id.* at 3-4.)  He did not, however, identify which of the distinct subparagraphs of Art. VIII governed the 2014 Objections.  In rejecting the City's subject matter jurisdiction objection, the Court concluded that Art. VIII(a) granted the Court post-confirmation jurisdiction to determine claims objections without regard to when they were filed.  *Decision,* 523 B.R. at 68.

More troubling, the City completely ignores the record when it argues that the Postpetition NOV Issues were first raised in the *Chaite August 18 Reply* and thereafter in the *Best August 27 Reply*,[9] and the *Chaite August 18 Reply* focused the Court "on the Issues of the late filed claim and violation of the automatic stay."  (*City Reconsideration Motion* at 20.)  As noted, the Postpetition NOV Issues were raised in the initial papers submitted by Best and Chaite. (*See Chaite Unfiled Motion*, at 2 and 5*; Chaite Filed Motion*, at ¶¶ 3, 4, 9 and 14; *Best Motion*, at ¶¶ 6, 14 and 19-20.)  The *Best Motion* succinctly summarized the Postpetition NOV Issue in the following manner:

> DoITT's Administrative Claim should be dismissed because: 1) the Administrative Claim is not an administrative claim as it arose prior to the October 23, 2001 Petition and is merely an attempt to

---

[9]      *See City Reconsideration Motion* at 7 n.2 (stating that the Postpetition NOV issues "resurfaced after years on the date of the argument"); 19 ("Moreover, the Court (as noted above in part I) failed to consider that Chaite and Best revisited these old Issues *for the first time in six years in the Chaite Reply (ecf # 913) emailed to Chambers **the morning of** the August 19. 2014 argument, without notice to the City and an opportunity to be heard, and in the Best filed dated August 27, 2014 **after** oral argument.*" (Boldface and emphasis in the original).

circumvent the pre-petition claim bar; . . . and 3) the service of the
Pre-Petition Date August 2001 NOVs, assuming service was good,
which it was not, was in violation of the automatic stay, as is the
continued attempt to collect the Administrative Claim.

(*Best Motion* at ¶ 6.)

The City acknowledged in its response that the 2014 Objections raised

the Postpetition NOV Issues:

The Chaite Motion makes three arguments:

A.    DoITT's administrative claim should be stricken because it is
not really an administrative claim because it allegedly arose prior
to the October 23, 2001 Petition Date (see Chaite Memorandum of
Law at ¶ 4 and Argument, point I);
. . . . and

C.    The service of the August 2001 NOVs, assuming service was
good, which Chaite claims it was not, violated the automatic stay
(see Chaite Memorandum of Law at ¶ 4 and Argument, point III).

(*City Amended Response* at 4.)

In light of the City's own pre-argument submissions, it is irresponsible to

argue that the Postpetition NOV Issues were first raised in the reply papers, or

that the replies (which aggregated nine pages of argument on the jurisdictional

and collateral estoppel issues) were central to the *Decision* or focused the Court

on the Postpetition NOV Issues; these issues were front and center from the

beginning.  Furthermore, except for the limited jurisdictional issue addressed

at the August 19 argument, the Court decided the 2014 Objections on

submission.  The Court accepted the replies to ensure a complete record, and

even if they had been filed before the August 19 hearing, the City would not

have had a right to file a sur-reply.

23

In the end, the City submitted a weak waiver and laches argument, but not because it lacked adequate notice of the Postpetition NOV Issues or the opportunity to respond.  Instead, it relied on its jurisdictional objections and other doctrines of preclusion, and gave cursory attention to the doctrines of waiver (and laches) that it now discusses for twenty pages in the *City Reconsideration Motion.*

The City also contends that it received "disparate treatment" from the Court.  It notes that the Court accepted the replies notwithstanding the *July 15 Order* but *twelve years earlier,* rejected the City's automatic stay defense under 11 U.S.C. § 362(b)(4) because the City had not submitted a supporting memorandum of law which was required by the Court's Local Bankruptcy Rules at the time.  (*City Reconsideration Motion* at 11.)  The City also implies that the Court unfairly placed the burden of pleading and proving the automatic stay exception on the City, and instead, should have placed it on Best because it obviously applies.  (*City Reconsideration Motion* at 17 n. 9.)

The Court accepted the replies in the exercise of its discretion and without formal objection to ensure a complete record.  The City's invocation of the exception to the automatic stay regarding the exercise of police and regulatory powers, 11 U.S.C. § 362(b)(4), is a different matter that raises complex questions.  When the City raised the same exception in opposition to the 2014 Objections, the Court noted several difficult automatic stay issues: (1) was the operation of the PPTs without the appropriate authority a continuing

24

violation of the City's regulations that crossed over into the postpetition period, *Decision*, 523 B.R. at 72-73, 75; (2) since the operation of an unauthorized PPT on New York City property is a misdemeanor under New York City Administrative Code § 23-408(a), if unauthorized PPTs are subject to removal conditioned on the issuance of an NOV, did the service of the Postpetition NOVs fall within the automatic stay exception under 11 U.S.C. § 362(b)(4), *Decision*, 523 B.R. at 75; and (3) since the City's remedies for the unauthorized operation of PPTs are cumulative, was the service of the Postpetition NOVs even necessary to recover a fine? *Id.*[10]

The party asserting an exception to the automatic stay bears the burden of proving that the exception applies. *Speth v. 21st Mortg. Corp.* (*In re Nulik*), Adv. No. 08–5257, 2010 WL 5114734, at *4 (Bankr. D. Kan. Dec. 8, 2010); *Pearce v. E.L.W. Corp.* (*In re Pearce*), 400 B.R. 126, (Bankr. N.D. Iowa 2009); *In re Reisen*, No. 03–01999, 2004 WL 764628, at *3 (Bankr. N.D. Iowa Mar. 4, 2004); *Westman v. Andersohn* (*In re Westman*)*,* 300 B.R. 338, 342 (Bankr. D. Minn. 2003). In addition, a party asserting an administrative claim must demonstrate by a preponderance of the evidence that its administrative claim should be allowed. *In re Appalachian Fuels, Inc.*, 493 B.R. 1, 14 (B.A.P. 6th Cir. 2013). The City's mere incantation of 11 U.S.C. § 362(b)(4) or its "police and

---

[10] The Court also questioned whether the disallowance of the City's administrative claim and resulting payment of the escrow to Chaite would violate the best interest of creditors test under 11 U.S.C. § 1129(a)(7). *Decision*, 523 B.R. at 75-76.

regulatory powers," (*see City Reconsideration Motion* at 16-17 & n.9), does not carry that burden.  Furthermore, even if the exception to the automatic stay applies in this case, the City must also show that its claim is a timely administrative claim or a late prepetition claim that is nonetheless entitled to allowance and payment.

In short, the 2014 Objections gave the City notice of the Postpetition NOV Issues, the City had an adequate opportunity to respond to the 2014 Objections, the Court exercised its discretion to consider Best's and Chaite's replies and the City had no right to submit a sur-reply.

**B.      The Merits**

The City spends most of the *City Reconsideration Motion* arguing with the Court's conclusion that it failed to show a clear manifestation of Best's intention to waive or abandon the Postpetition NOV Issues.  However, the *City Response* limited its waiver and laches arguments to one paragraph in which it contended that (1) Best filed its amended objections to the City's claims for fines in 2003, (2) it attempted to "relitigate" the same objections in its unsuccessful motion in 2005 to withdraw the reference, (3) from 2008 until 2014, it never took the position that other "bankruptcy law" issues remained to be decided, (4) after 2008, it litigated exclusively in the Brooklyn Court, (5) it conceded in 2013 that the City was the only unpaid creditor, and (6) it conceded that there was no matter pending before this Court that it had not

26

decided or abstained from deciding in favor of the Brooklyn Court.  (*City Response* at ¶ 43.)

The Court considered these arguments, concluded that the Postpetition NOV Issues had never been decided (although the City insisted that they had been decided by the ECB) and the evidence did not show a clear manifestation of Best's intent to abandon the issues.  Although Best had represented, implicitly and explicitly, that there was nothing left for this Court to decide, at the same time, it raised the Postpetition NOV Issues in pleadings and letters to the Court.  In addition, although it had failed to pursue these objections diligently, the City had not shown prejudice to support a defense of laches.

The *City Reconsideration Motion* attempts to marshal evidence that its prior submissions ignored or mentioned in only a cursory fashion.  The *Decision* acknowledged that many of the facts supported a finding of a waiver but others supported a finding that Best did not intend to waive the Postpetition NOV Issues.  Because a waiver "cannot be lightly presumed," "requires a clear manifestation of intent" and "cannot be created through negligence, oversight or thoughtlessness," *Decision*, 523 B.R. at 70, the Court concluded that the City had failed to demonstrate a waiver.  In short, the Court did not overlook the facts mentioned by the City

The City also contends that the Court "overlooked" two facts that were mentioned for the first time in the *City Reconsideration Motion*.  Specifically, the "Court did not consider the July 24, 2003 transcript of proceedings," (*City*

27

*Reconsideration Motion* at 15), or "Best's appeal and failure to prosecute the appeal from the 2005 Abstention Order." (*Id.*)  The City did not mention these facts in the *City Response* or the *City Amended Response*, and the Court cannot overlook facts that the City never brought to its attention.

## C.    Chaite's Standing

Lastly, the City contends that the Court erred in concluding that it was not necessary to decide whether Chaite lacked standing to pursue his own claim objection.  The City did not contend that Chaite lacked Article III standing; Chaite will be entitled to the balance of the escrow if the City's claims are expunged.  Instead, the City argues that Chaite lacks standing because he is bound by the rejection of Best's claim objection.  (*See City Reconsideration Motion* at 20-21 ("If, *arguend*o, [Best's] failure to perfect this appeal and all the other facts set forth above, in their totality, amount to a waiver of the Issues, what right does Chaite have, to revisit these issues in 2014, in his Reply? . . . The City respectfully requests the Court to address the issue whether Chaite even had standing to raise the Issues, in light of Best's waiver and abandonment of those Issues, years before.").  In other words, Chaite should be collaterally estopped by virtue of the denial of Best's objection.

The argument assumes that Best has lost.  Whether Chaite is collaterally estopped by Best's loss is an issue that the Court did not have to reach because the Court concluded that Best (and Chaite) could pursue their objections based on the Postpetition NOV Issues.

For all of the foregoing reasons, the *City Reconsideration Motion* is denied.

### D.    Best's and Chaite's Reconsideration Motions

Best also moved for reconsideration of so much of the *Decision* as imposed a thirty day deadline to file any additional bankruptcy-related objections.  It argued that it had pending requests for relief in the Brooklyn Court, including claims that a prior decision of the New York Appellate Division was pre-empted by the TCA and violated Best's rights under the Fourteenth Amendment.  In addition, it had submitted pre-motion letters to the Brooklyn Court seeking permission to file a new adversary proceeding in this Court and a new complaint in the Brooklyn Court.  (*Declaration of George S. Gilmer*, dated Jan. 28, 2015, at ¶ 4.)  In the alternative, Best requested that the thirty day deadline start running from the decision on Chaite's appeal from the *Decision*, (*id.* at ¶ 5), or at the earliest, from the decision on the *City Reconsideration Motion*.  (*Id.* at ¶ 6.)

Before the City even responded, Best's counsel wrote to the Court asking for the same relief sought in the reconsideration motion.  (*See Letter from George S. Gilmer, Esq. to the Court*, dated Feb. 6, 2015 (ECF Doc. # 932).)  The City opposed the request, (*Letter from Gabriela P. Cacuci, Esq. to the Court*, dated Feb. 9, 2015 (ECF Doc. # 934)), and the Court denied it in the *February 10 Order* for two reasons.  First, the Court would not grant contested relief sought by letter rather than by motion.  Second, the statutory and

Constitutional issues that Best was seeking to raise had to be asserted in the

Brooklyn Court, where Best was already litigating Constitutional and non-

bankruptcy federal issues.  The Court had previously abstained from hearing

such issues under the *2005 Abstention Order* and would only entertain

"bankruptcy-related objections."  Three days later, Best and Chaite filed timely

supplemental objections pursuant to the *Decision.*  (*See Supplemental Objection*

*of Debtor Best Payphones, Inc. to: (1) Administrative Proof of Claim Filed by New*

*York City Department of Information Technology and Telecommunications; and*

*(2) Proof of Claim of New York City Department of Information Technology And*

*Telecommunications*, dated Feb. 13, 2015 (ECF Doc. # 939); *Objection of*

*Michael Chaite, Co-Proponent of the Reorganization Plan of Debtor Best*

*Payphones, Inc., to: (1) Administrative Proof of Claim Filed by New York City*

*Department of Information Technology and Telecommunications; and (2) Proof of*

*Claim of New York City Department of Information Technology and*

*Telecommunications*, dated Feb. 13, 2015 (ECF Doc. # 941).)

Despite their timely supplemental objections, Best and Chaite moved for

reconsideration of the *February 10 Order.*  (*Declaration of George S. Gilmer*,

dated Feb. 24, 2015 (*"Best Feb. Reconsideration Motion"*) (ECF Doc. # 940);

*Declaration of Michael Chaite*, dated Feb. 24, 2015 (ECF Doc. # 942).)  They

made an argument that struck the Court as odd.  The *February 10 Order* had

stated that Best's Constitutional and non-bankruptcy claims should be

asserted in the Brooklyn Court.  In the interim, Magistrate Judge Scanlon of

the Brooklyn Court had issued a Report and Recommendation, dated Feb. 17,

30

2015 ("*R&R*").[11]  According to Best and Chaite, Judge Scanlon had

recommended to Judge Gleeson that he deny Best's request to amend its

complaint to assert that the Appellate Division's decision was pre-empted by

the TCA and violated Best's Fourteenth Amendment rights.[12]  Best and Chaite

contended that if the *R&R* were adopted, "and unless Best is permitted to raise

these issues in this Court in response to the City's proof of claim, Best could be

left without a forum in which to have its objections heard." (*Best Feb.

Reconsideration Motion* at ¶ 6; *Declaration of Michael Chaite*, dated Feb. 24,

2015, at ¶ 6.)[13]

       If Best lacks standing to assert its TCA or Constitutional claims in

Brooklyn, as the Brooklyn Court has now concluded, or the claims are moot or

futile, as the Brooklyn Court has also concluded, it also lacks standing to

assert the same moot, futile claims in this Court.  In any event, because both

Chaite and Best filed timely supplemental objections (in which they raised TCA

---

[11]     A copy of the *R&R* is annexed to the *Letter from Gabriela P. Cacuci, Esq. to the Court*, dated March 3, 2015 (ECF Doc. 943).)

[12]     Judge Scanlon's recommendation appears to be limited to the TCA issues.  (*See R&R* at 1-2.)  Based in part on an earlier report and recommendation of then-Magistrate Judge Matsumoto that was adopted by the Brooklyn Court, Judge Scanlon concluded that Best's TCA claims for declaratory and injunctive relief were moot because Best had sold its PPTs, (*id.* at 17), the relevant provisions in the TCA did not provide a private right of damages, (*id.* at 19), Best lacked standing to bring its proposed TCA, (*id.* at 47), and its TCA claims were futile.  (*Id.*)

[13]     Judge Gleeson subsequently adopted the *R&R* in its entirety and denied Best's motion to file a fourth amended complaint.  (*See Order Adopting Report and Recommendations*, dated Sept. 18, 2015 (Docket Entry), *Best Payphones v. City of New York*, Nos. 01-CV-3934, 01-CV-8506, 03-CV-0192 (E.D.N.Y.).)

and Fourteenth Amendment claims) their motions for reconsideration of the

*Decision* and the *February 10 Order* are denied as moot.

The parties are directed to contact chambers to schedule a status

conference.

So ordered.

Dated:        New York, New York
              January 13, 2016

                              /s/ *Stuart M. Bernstein*
                          STUART M. BERNSTEIN
                       United States Bankruptcy Judge